```
1   EDWARD J. WYNNE (165819)
    ewynne@wynnelawfirm.com
2   GEORGE R. NEMIROFF (262058)
    gnemiroff@wynnelawfirm.com
3   WYNNE LAW FIRM
    80 E. Sir Francis Drake Blvd., Ste. 3G
4   Larkspur, CA 94939
5   Telephone:  (415) 461-6400
    Facsimile:  (415)461-3900
6
7   Attorneys for Plaintiff
```

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICK BALESTRIERI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SPORTSEDTV, INC., and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.<br><br>**COMPLAINT**<br><br>**[CLASS ACTION}**<br><br>Jury Trial Demanded |

COMPLAINT

Plaintiff Nick Balestrieri ("Plaintiff") brings this Class Action Complaint against defendant SportsEdTV, Inc. ("Defendant") on behalf of himself and all others similarly situated (the "Class Members"):

**INTRODUCTION**

1. This is a consumer digital privacy class action. Plaintiff alleges Defendant violated the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA") as well as California law by knowingly disclosing to a third party, Meta Platforms, Inc. ("Facebook"), the personally identifiable information and video-watching history of users of its SportsEdTV.com website (the "Website"), including Plaintiff and the Class Members, without their knowledge or consent.

2. The VPPA prohibits "video tape service providers," such as Defendant, from knowingly disclosing consumers' personally identifiable information, including "information which identifies a person as having requested or obtained specific video materials or services from a video tape provider," without their express consent in a stand-alone consent form.

3. Defendant collects and shares the personal information of its Website users through the use of the Facebook "pixel." The Facebook pixel is a piece of code Defendant installed on the Website that tracks the behavior of Website users. In this case, the Facebook pixel collects the user's Facebook ID and the title of each video the user watches and sends that information to Facebook.

4. Thus, without telling Plaintiff or the Class Members, Defendant violated their privacy rights under the VPPA and state law.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 over the claims that arise under the VPPA. The Court has supplemental jurisdiction over the California claim under 28 U.S.C. § 1367(a) because the California claim is so related to the VPPA claim that they form part of the same case or controversy.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant does business in and is subject to personal jurisdiction in this District. Venue is also proper because a substantial part of the events or omissions giving rise to the claim occurred in or

emanated from this District.

## PARTIES

7. Plaintiff is a citizen of the State of California and resides in this District. Plaintiff is a subscriber to Defendant's website, SportsEdTV.com. Plaintiff also has a Facebook account and a Facebook ID. During the limitations period, Plaintiff used his SportsEdTV subscription to watch videos while logged into his Facebook account. On each of these occasions, without Plaintiff's knowledge or consent, Defendant transmitted Plaintiff's Facebook ID and video-watching history to Facebook. As a result, Plaintiff suffered a concrete invasion of his legally protected privacy rights, including the right to control the disclosure of his video viewing history. Plaintiff was further injured by the unauthorized tracking of his online activity, loss of control over his personal information, and the risk of future misuse or profiling based on his viewing habits. These injuries are directly traceable to Defendant's conduct and are redressable by an award of statutory and actual damages, as well as injunctive relief.

8. Plaintiff alleges on information and belief that Defendant is a Florida corporation with its principal place of business in Miami, Florida. Defendant owns and operates the Website. The Website contains instructional and informational videos concerning various sports, including golf, tennis, basketball, and pickleball.

## FACTUAL ALLEGATIONS

9. The Facebook pixel is an invisible piece of JavaScript code that, when installed on a website, tracks the identity and behavior of the website's users and transmits that information to Facebook. Plaintiff alleges on information and belief that Facebook uses the information transmitted by the Facebook pixel to deliver targeted ads to the user, thereby generating revenue for Facebook.

10. Defendant knowingly installed the Facebook pixel on the Website. Plaintiff alleges on information and belief that Defendant did so in exchange for receiving valuable information from Facebook about the users of the Website, including without limitation the number of unique visitors, which videos are the most popular, and demographic information about the users (e.g., age range, gender breakdown, geographic location, device used to access

the site, etc.). Plaintiff further alleges on information and belief that Defendant uses the information received from Facebook for various revenue-generating purposes, including sending targeted ads to potential subscribers and creating additional content to meet user demand.

11. One piece of information the Facebook pixel collects about Website users is their Facebook ID. The Facebook ID is a unique identifier that Facebook assigns to each user. With it, any ordinary person can look up the user's Facebook profile and name. When a Facebook user is logged into Facebook and accesses videos on the Website, the Facebook pixel collects the user's Facebook ID (by reading a cookie on the user's computer labeled "c_user") and transmits that information to Facebook.

12. The other information the Facebook pixel collects about Website users is the title of each video the user watches. For example, if a Website user who is interested in basketball watches the SportsEdTV video entitled "Signature Move Series—Tim Hardaway's Killer Crossover," the Facebook pixel transmits that video title along with the user's Facebook ID to Facebook.

13. Defendant does not obtain its users' prior written consent to disclosure of their Facebook ID and video-watching history to Facebook, and users are unaware such disclosures occur. Defendant's privacy policy, available at www.SportsEdTV.com/privacy-policy, makes no mention of the fact that the Website shares the user's Facebook ID and the video titles the user has watched with Facebook.

14. To obtain valid consent under the VPPA, Defendant must tell the user what data is being disclosed, to whom, and for what purpose. Defendant must then obtain the user's express written consent to the disclosure, separate and apart from any general consent terms. Defendant never obtained consent from Plaintiff or the Class Members in a form that complies with the VPPA.

15. The statute of limitations on a VPPA claim is two years from the date of discovery of the violation. In this case, the technical nature of the Facebook pixel and its opaque design made it impossible for a reasonable user, exercising ordinary diligence, to discover the unlawful disclosure of the user's private information. Accordingly, for all users of the Website, the statute

of limitations commenced on the date this Complaint was filed.

**CLASS ACTION ALLEGATIONS**

16. Plaintiff brings this action individually and on behalf of all others similarly situated as a class action under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following class (the "Class"): "All persons in the United States with a subscription to SportEdTV.com for whom Defendant, during the applicable statute of limitations, disclosed their personally identifiable information (such as their Facebook ID) along with their video-watching history to a third party without their express written consent."

17. The "Subclass" is defined as "All members of the Class who resided in the State of California on the date Defendant disclosed their personally identifiable information and video-watching history to a third party without their express written consent."

18. Excluded from the Class and Subclass are Defendant, their past or current officers, directors, affiliates, legal representatives, predecessors, successors, assigns and any entity in which any of them have a controlling interest, as well as all judicial officers assigned to this case as defined in 28 U.S.C. § 455(b) and their immediate families.

19. The members of the Class and Subclass are so numerous that joinder of all members is impracticable. Plaintiff is informed and believes that each of the Class and Subclass consists of thousands of members.

20. Class and Subclass members can be identified from Defendant's records and from the records of the third parties to whom Defendant disclosed the private information of its users.

21. Plaintiff's claims are typical of the claims of members of the Class and Subclass. Plaintiff and the members of the Class and Subclass harmed by the same wrongful conduct by Defendant. Plaintiff's claims are based on the same legal theories as the claims of other Class and Subclass members.

22. Plaintiff will fairly and adequately protect and represent the interests of the members of the Class and Subclass. Plaintiff's interests are not antagonistic to the interests of other Class or Subclass members. Plaintiff is represented by counsel with experience in the prosecution of class action litigation generally and in the field of digital privacy litigation

specifically.

23. Questions of law and fact common to the Class and Subclass predominate over individualized questions. Such common questions include:

    a. whether Defendant knowingly disclosed Class and Subclass members' private information to third parties;

    b. whether the private information disclosed to third parties is protectable under the VPPA and/or California law;

    c. whether Class and Subclass members consented to Defendant's disclosure of their private information to third parties; and

    d. whether the Class and Subclass are entitled to damages as a result of Defendant's conduct.

24. Class action treatment is a superior method for the fair and efficient adjudication of the controversy. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweigh potential difficulties in management of this class action.

## FIRST CLAIM FOR RELIEF

(Violation of the Video Privacy Protection Act—By the Class)

25. Plaintiff incorporates the preceding paragraphs by reference.

26. The VPPA prohibits a "video tape service provider" from knowingly disclosing "personally-identifying information" concerning any consumer to a third-party without the "informed, written consent (including through an electronic means using the Internet) of the consumer." 18 U.S.C § 2710.

27. As defined in 18 U.S.C. § 2710(a)(4), a "video tape service provider" is "any person, engaged in the business, in or affecting interstate commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials."

28. Defendant is a "video tape service provider" as defined in 18 U.S.C. § 2710(a)(4) because it engaged in the business of delivering audiovisual materials that are similar to prerecorded video cassette tapes and those sales affect interstate or foreign commerce.

29. As defined in 18 U.S.C. § 2710(a)(3), "personally-identifiable information" is defined to include "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."

30. Defendant knowingly caused the Facebook IDs of Plaintiff and the Class Members to be disclosed to Facebook. This information constitutes personally identifiable information under 18 U.S.C. § 2710(a)(3) because it identified each Plaintiff and Class Member to Facebook as an individual who viewed SportsEdTV media, including the specific video titles requested from the Website, and permitted such information to be linked to the user's real identity.

31. As defined in 18 U.S.C. § 2710(a)(1), a "consumer" means "any renter, purchaser, or subscriber of goods or services from a video tape service provider." Plaintiff subscribed to the Website.

32. As set forth in 18 U.S.C. § 2710(b)(2)(B), "informed, written consent" must be: (1) in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; and (2) at the election of the consumer, is either given at the time the disclosure is sought or given in advance for a set period of time not to exceed two years or until consent is withdrawn by the consumer, whichever is sooner. Defendant failed to obtain informed, written consent under this definition.

33. In addition, the VPPA creates an opt-out right for consumers in 18 U.S.C. § 2710(b)(2)(B)(iii). It requires video tape service providers to also "provide[] an opportunity for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election." Defendant failed to provide an opportunity to opt out as required by the VPPA.

34. By disclosing Plaintiff's and the Class Members' Facebook ID and video-watching history, Defendant violated Plaintiff's and the Class Members' statutorily protected right to privacy in their video-watching habits.

35. As a result of the above violations, Defendant is liable to the Plaintiff and the Class for actual damages related to their loss of privacy in an amount to be determined at trial or alternatively for "liquidated damages not less than $2,500 per plaintiff." Under the statute, Defendant is also liable for reasonable attorney's fees, and other litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined at trial, but sufficient to prevent the same or similar conduct by the Defendant in the future.

### SECOND CLAIM FOR RELIEF

(Violation of the California Invasion of Privacy Protection Act—By the Subclass)

36. Plaintiff incorporates the preceding paragraphs by reference.

37. California Penal Code § 631(a) makes unlawful any attempt "by means of any machine, instrument, contrivance, or in any other manner" any of the following: (1) intentionally tapping, or making any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument; (2) willfully and without the consent of all parties to the communication, or in any unauthorized manner, reading or attempting to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state; or (3) using, or attempting to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained; or (4) aiding, agreeing with, employing, or conspiring with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above.

38. The Facebook pixel is a "machine, instrument, contrivance, or … other manner" used to read or learn the contents or meaning of messages, reports, or communications between the Subclass members and Defendant.

39. By means of the Facebook pixel, Facebook willfully and without the consent of all parties to the communication, read, attempted to read, and/or learned the contents or meaning of electronic communications between the Subclass members and Defendant while the communications were in transit or were being sent from or received at a place in California.

40. Defendant aided, agreed with, employed, permitted, or otherwise enabled

Facebook to wiretap the Subclass members using the Facebook pixel. Defendant knew that the Facebook pixel it installed on the Website would result in the disclosure of user communications to Facebook.

41. The Subclass members did not know of, or consent to, Facebook's access, interception, reading, learning, recording, collection, and usage of their electronic communication with Defendant, nor did the Subclass members consent to Defendant aiding, agreeing with, employing, permitting, or otherwise enabling Facebook's conduct.

42. The Subclass members accessed the Website in California.

43. Pursuant to Cal. Penal Code § 637.2, Plaintiff and the Subclass members have been injured by Defendant's violations of section 631(a) and are entitled to statutory damages of $5,000 per violation.

## PRAYER

Plaintiff, individually and on behalf of the Class and Subclass, requests the following relief against Defendant:

1. An order certifying the Class and Subclass and appointing Plaintiff class representative and his attorneys as Class Counsel;

2. Actual and statutory damages according to proof;

3. Punitive damages according to proof.

4. Reasonable attorneys' fees and costs;

5. An order enjoining Defendant from engaging in the unlawful conduct alleged herein; and

6. Such further relief that the Court deems proper.

## JURY DEMAND

Plaintiff demands trial by jury on all matters so triable.

| | |
|---|---|
| Dated: May 9, 2025 | WYNNE LAW FIRM |
| | |
| | _____ |
| | EDWARD J. WYNNE |
| | |
| | Attorneys for Plaintiff |
| | Nick Balestrieri |