Peter K. Chu (SBN 251705)
*Peter.Chu@wilsonelser.com*
Jura C. Zibas (SBN 217864)
*Jura.Zibas@wilsonelser.com*
**WILSON, ELSER, MOSKOWITZ,**
 **EDELMAN & DICKER LLP**
555 South Flower Street, Suite 2900
Los Angeles, California 90071
Telephone:   (213) 443-5100
Facsimile:    (213) 443-5101

Attorneys for Defendant
SPORTSEDTV, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICK BALESTRIERI, individually and on behalf of all others similarly situated,<br><br>                                        Plaintiff,<br><br>v.<br><br>SPORTSEDTV, INC., and DOES 1 through 10, inclusive,<br><br>                                        Defendants. | Case No.: 3:25-cv-04046-SK<br>Hon. Sallie Kim, presiding<br>Courtroom C – 15th Floor,<br>San Francisco Courthouse<br><br>Complaint filed: May 9, 2025<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS:**<br>**1. VIOLATION OF VIDEO PRIVACY PROTECTION ACT [FED. R. CIV. P. 12(b)(2) AND 12(b)(6)]; AND**<br>**2. VIOLATION OF CALIFORNIA INVASION OF PRIVACY ACT [FED. R. CIV. P. 12(b)(6)]**<br><br>**REQUEST FOR JUDICIAL NOTICE AND DECLARATIONS OF VICTOR BERGONZOLI, LOU MAZZUCCHELLI, AND PETER K. CHU** *filed concurrently herewith*<br><br>**[PROPOSED] ORDER** *filed concurrently herewith*<br><br>Date:  August 18, 2025<br>Time: 9:30 a.m.<br>Courtroom: Courtroom C – 15th Floor via Zoom |

DEFENDANT'S MOTION TO DISMISS [FRCP 12(b)(1) AND 12(b)(6)] (3:25-cv-04046-SK)

**TO THIS COURT AND ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT, on August 18, 2025, at 9:30 a.m. or soon thereafter, via Zoom, before Honorable Sallie Kim, in Courtroom C of the above entitled court, Defendant SPORTSEDTV.INC. ("Defendant") will move, and does move, this Court for an order dismissing Plaintiff's First Claim for Violation of the Video Privacy Protection Act (18 U.S.C § 2710) ("VPPA") and Second Claim for Violation of California Invasion of Privacy Act (Cal. Pen. Code §631(a)) ("CIPA"), thereby dismissing the entire Complaint in its entirety.

Defendant respectfully requests this Court dismiss Plaintiff's First Claim for Violation of VPPA (the "VPPA Claim") because this court lacks subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and as Plaintiff fails to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). Defendant also requests that this Court dismiss Plaintiff's Second Claim for Violation of CIPA (the "CIPA Claim") for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). Upon dismissal of both claims, the Complaint in its entirety should be dismissed as there are no other claims pled in this Complaint.

This Motion is based on the files, records, declarations, and proceedings in this action; this Notice of Motion and the Motion; Request for Judicial Notice, if any; further briefing in the case; any argument of counsel permitted by the Court; and such other matters as may be presented at the hearing on this Motion or prior to the Court's decision.

Dated:  July 11, 2025

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

By:/s/Peter K. Chu
Peter K. Chu
Jura C. Zibas
Attorney for Defendant
SPORTSEDTV, INC.

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF FACTS ................................................................................. 1

      A.    Defendant's Terms and Conditions and PRIVACY POLICY. ............................. 2

      B.    Defendant Did Not Configure the Facebook Pixel to Transmit the Username
            Or The Video Titles Viewed By The Users. ........................................................ 3

      C.    Relevant Allegations in the Plaintiff's Complaint ............................................... 3

            1.    PLAINTIFF'S ALLEGATIONS ON THE VPPA CLAIM. ....................... 4

            2.    PLAINTIFF'S ALLEGATION OF CIPA CLAIM ................................... 5

III.  LEGAL STANDARD. ...................................................................................... 5

      A.    Rule 12(b)(1) Motion to Dismiss .......................................................................... 5

      B.    Rule 12(b)(6) Motion to Dismiss .......................................................................... 6

IV.   UNDER RULE 12(B)(1), PLAINTIFF'S COMPLAINT SHOULD BE
      DISMISSED FOR FAILURE TO MEET ARTICLE III STANDING FOR THE
      VPPA CLAIM. .................................................................................................. 7

      A.    Plaintiff Fails to Allege Any Facts to Support He Suffered an Injury-in-Fact.
            ................................................................................................................................ 8

      B.    There Was No Disclosure of Plaintiff's PII for the Injury-in-Fact to Occur. ......... 9

      C.    A Lack of a Causal Connection between Plaintiff's Harm and Defendant's

            Conduct Negates Plaintiff's Article III Standing……………………………11

V.    THE VPPA CLAIM IS SUBJECT TO DISMISSAL UNDER RULE 12(B)(6). ............. 12

      A.    Plaintiff Fails to State Sufficient Facts to Show that Defendant Disclosed
            His PII. ................................................................................................................. 13

      B.    Plaintiff Cannot State Plausible Facts That Defendant Knowingly Disclosed
            His PII. ................................................................................................................. 13

VI.   UNDER RULE 12(B)(6), PLAINTIFF'S CIPA CLAIM SHOULD BE
      DISMISSED. ...................................................................................................... 14

III.  CONCLUSION. ................................................................................................. 15

DEFENDANT'S MOTION TO DISMISS [FRCP 12(b)(1) AND 12(b)(6)] (3:25-cv-04046-SK)

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta v. Perez*
(E.D.Cal. May 6, 2020, No. 1:19-cv-01224-AWI-EPG) 2020 U.S.Dist.LEXIS
80096...............................................................................................................................7

*In re Ambry Genetics Data Breach Litig.* (C.D.Cal. 2021)
567 F. Supp. 3d 1130 ...........................................................................................11, 12

*Ashcroft v. Iqbal* (2009)
556 U.S. 662 ..............................................................................................6, 7, 12, 13

*Bell Atl. Corp. v. Twombly* (2007)
550 U.S. 544 ....................................................................................................6, 7, 12

*Cetacean Cmty. v. Bush*,
386 F.3d 1169 (9th Cir. 2004) ......................................................................................7

*Chandler v. State Farm Mut. Auto. Ins. Co.* (9th Cir. 2010)
598 F.3d 1115 ................................................................................................................6

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.* (9th Cir. 2008)
546 F.3d 981 .................................................................................................................6

*Eichenberger v. ESPN, Inc.* (9th Cir. 2017)
876 F.3d 979 ............................................................................................................9, 14

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d at 607 ..........................................................................................................15

*Heiting v. Taro Pharms. United States, Inc.* (C.D.Cal. 2023)
709 F. Supp. 3d 1007 .................................................................................................14

*In re Hulu Privacy Litig.* (N.D.Cal. 2015)
86 F. Supp. 3d 1090 ...............................................................................................9, 10

*In re Hulu Privacy Litigation* (N.D.Cal., 2012)
2012 U.S. Dist. LEXIS 80601, 2012 WL 2119193 .............................................8, 9, 10

*Jewel v. National Security Agency* (9th Cir. 2011)
673 F.3d 902 .................................................................................................................8

*Lujan v. Defenders of Wildlife* (1992)
504 U.S. 555 ...........................................................................................................8, 11

ii

*Maya v. Centex Corp*. (9th Cir. 2011)
658 F.3d 1060 ...........................................................................................................................6

*McCarthy v. United States* (9th Cir. 1988)
850 F.2d 558 .............................................................................................................................6

*Mendoza v. Microsoft Inc.*
(W.D.Wash. Sep. 11, 2014, No. C14-316-MJP) 2014 U.S.Dist.LEXIS 127736 .....................8

*Mollett v. Netflix, Inc.* (9th Cir. 2015)
795 F.3d 1062 ......................................................................................................................7, 12

*Papasan v. Allain* (1986)
478 U.S. 265 .............................................................................................................................6

*Pritikin v. Department of Energy* (9th Cir. 2001)
254 F.3d 791 .............................................................................................................................7

*Rodriguez v. Ford Motor Co.* (S.D.Cal. 2024)
722 F. Supp. 3d 1104 .........................................................................................................14, 15

*Rogers v. Ulrich* (1975)
52 Cal.App.3d 894 ...................................................................................................................15

*Solomon v. Flipps Media, Inc*. (2d Cir. 2025)
136 F.4th 41 ..................................................................................................................4, 10, 13

*Sprewell v. Golden State Warriors* (9th Cir. 2001)
266 F.3d 979 .............................................................................................................................6

*Warden v. Kahn* (1979)
Cal. App. 3d 805, 811,811 .......................................................................................................15

**Constitutions**

Article III of the United States Constitution ................................................1, 6, 7, 8, 9, 11, 12, 15

**Statutes**

18 U.S.C § 2710 (Video Privacy Protection Act) ("VPPA")
.....................................................................1, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15

18 U.S.C. § 2710(a)(3)................................................................................................................9

18 U.S.C. § 2710(b)(2) ..............................................................................................................7

18 U.S.C § 2710(c)(2)...............................................................................................................11

Cal. Pen. Code §631(a) (California Invasion of Privacy Act) ("CIPA").................1, 3, 5, 7, 14, 15

Cal. Pen. Code § 631(a)(4) .........................................................................................................5

iii

DEFENDANT'S MOTION TO DISMISS [FRCP 12(b)(1) AND 12(b)(6)] (3:25-cv-04046-SK)

**Court Rules**

Fed. R. Civ. P. 12(b)(1)..................................................................................1, 5, 6, 7, 12, 15

Fed. R. Civ. P. 12(b)(6)...........................................................................1, 6, 7, 9, 12, 13, 14, 16

DEFENDANT'S MOTION TO DISMISS [FRCP 12(b)(1) AND 12(b)(6)] (3:25-cv-04046-SK)

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

SportsEdTV, Inc. ("Defendant"), is a Florida corporation. Defendant makes available instructional videos on various sports for free on its website SportsEdTV.com (the "Website"). Defendant makes these videos available for free to the public, especially to benefit those who cannot afford personal trainers or coaches – anyone with Internet access can view the videos on the Website without having to become a subscriber. A free and paid subscription to membership is available if the user wants more than to watch the free videos but to contribute to the blogs or wants to receive email communications, for example of availability of new videos. Against this backdrop, Plaintiff Nick Balestrieri ("Plaintiff"), allegedly a citizen of California, brings this copycat purported class action Complaint against Defendant for a VPPA Claim and a CIPA Claim.

This Court should dismiss Plaintiff's Complaint in its entirety as both the VPPA Claim and CIPA Claim fail and should be dismissed for the following reasons:

1. The VPPA Claim fails under Rule 12(b)(1) because Plaintiff does not have Article III standing as he did not suffer injury-in-fact.

2. The VPPA Claim also should be dismissed under Rule 12(b)(6) because Plaintiff cannot show Defendant "knowingly disclosed" personally identifiable information (PII).

3. Plaintiff fails to allege sufficient facts to state the CIPA Claim pursuant to Rule 12(b)(6) because Defendant did not have knowledge of aiding and abetting Facebook of its alleged wrongful conduct.

Accordingly, Defendant respectfully requests that this Court dismiss Plaintiff's purported class-action Complaint in its entirety by granting Defendant's motion to dismiss both the VPPA and CIPA Claims.

## II.    STATEMENT OF FACTS

Defendant SportsEdTV, Inc. is a sports education media company organized under the laws of Florida, with its principal place of business in Miami, Florida. (Complaint, ¶7.) Defendant provides "**FREE** video and blog content [ ] available to anyone in the world with an internet

1

connection." (Declaration of Victor Bergonzoli ("Bergonzoli Decl."), ¶ 3, Exh. A [emphasis added].)

### A.    Defendant's Terms and Conditions and PRIVACY POLICY.

On the Defendant's Website, Defendant provides a link to "Terms & Conditions" and "Privacy" on the homepage, on the same page where a user signs up for a subscription ("the Sign-Up Page"), and on all the other pages to view the videos. (Bergonzoli Decl., ¶¶ 5 – 8, Exh. A.) Terms and Conditions and Privacy Policy together require the user to agree to the data collection and sharing with Facebook to use Defendant's service. (See Bergonzoli Decl., ¶¶ 5 – 8, Exh. B.1-5, C, and D;)  The Terms and Condition, last updated on November 15, 2021, advises that anyone who wishes to access or use Defendant's Service must accept the Terms in Terms and Condition. It also warns that if the user disagrees with any part of the Terms, then he/she does not have permission to use Defendant's Service. (Bergonzoli Decl., ¶6, Exh. C.)

Defendant's Privacy Policy, effective as of July 17, 2018, is also available on the homepage and the Sign-Up Page. The Privacy Policy provides, in pertinent part "'by using the Service, you agree to the collection and use of information in accordance with this policy. (Bergonzoli Decl., ¶¶6-7, Exh. C.) It defines Service as "the https://sportsedtv.com website operated by Techne Sports Network LLC dba SportsEdTV."  (Id.) The Privacy Policy notifies its users that Defendant collects Personal Data, including  "Email address" and First name and last name," "Cookies and Usage Data,"(Id.) The Privacy Policy also informs the user that Defendant may use third party companies to facilitate its service, who have access to the user's Personal Data but only on behalf of Defendant and "are obligated not to disclose or use it for any other purpose." (Id.) Facebook is a third party company to facilitate Defendant's service. (Id., at 8, Exh. C.) However, the Personal Data transmitted to Facebook did not include the username or the video title.[1] (Declaration of Defendant's CTO Lou Mazzucchelli ("Mazzucchelli Decl."), ¶8.)

///

///

---

[1] Defendant disabled the subject Facebook Pixel when it received a demand letter from Plaintiff.

2

DEFENDANT'S MOTION TO DISMISS [FRCP 12(b)(1) AND 12(b)(6)] (3:25-cv-04046-SK)

**B.     Defendant Did Not Configure the Facebook Pixel to Transmit the Username Or The Video Titles Viewed By The Users.**

To facilitate its service to the users, as stated in the Privacy Policy, Defendant had used the Facebook pixel to track the pages its users visited or viewed. However, Defendant did not configure the Facebook pixel to track the actual title of the video viewed by its user. (Mazzucchelli Decl., ¶¶7 and 8.)

The Facebook pixel, which is also called the Meta Pixel, available from Meta Platform, Inc. ("Facebook" or "Meta"), "is a snippet of JavaScript code that can be installed on a website." (Complaint, ¶9.) Meta explains once installed on the website, the Meta Pixel then "**allows** [the website owner] to track visitor activity on [its] website." (See Declaration of Peter K. Chu "Chu Decl., Exh. F https://developers.facebook.com/docs/meta-pixel/, last viewed on July 10, 2025.) Meta adds that the Facebook pixel works by loading a small library of functions which the website owner can use whenever a site visitor takes an action (called an event) that you **want** to track." (Id.) In other words, it states that Defendant can configure what it wants to track using the Facebook pixel.

Defendant did not configure the Facebook pixel to transmit the name of the video viewed by Plaintiff. (Mazzucchelli Decl., ¶8.) Instead, Defendant configured the Facebook simply to transmit the PageView, which means the loading of a particular webpage on the Website. (Id., ¶¶7-8.) More specifically, Defendant used the "fbq" function available with the Facebook pixel to record only the "referrer URL, which is the URL of the page from which the visitor arrived," but not the URL of the page the visitor arrived. (Id.) (Chu Decl., Exh. G, https://developers.facebook.com/docs/meta-pixel/implementation/conversion-tracking/, last viewed on July 10, 2025.) On Defendant's website, the Facebook pixel tracked the URL of the referrer page, which includes the links for the videos Plaintiff alleges to have watched, but not the URL of the video itself. (Mazzucchelli Decl., ¶8.) The URL of the referrer page tracked by the Facebook pixel on Defendant's Website did not include the title of the videos. (Id.)

**C.     Relevant Allegations in the Plaintiff's Complaint**

In the Complaint, Plaintiff alleges that Defendant violated the VPPA and CIPA by

3

knowingly disclosing to Meta, the personally identifiable information and video-watching history of Plaintiff and the Class Members of the Website without their knowledge or consent. (Complaint, ¶1.)

### 1.        Plaintiff's Allegations on the VPPA Claim

Plaintiff alleges that the violation of VPPA occurs when Defendant collects and shares the personal information of its Website users using the Facebook pixel. (Complaint, ¶3.) Plaintiff claims that the Facebook pixel collects the user's Facebook ID and the title of each video the user watches and sends that information to Facebook. (Id.) More specifically, Plaintiff alleges that the violation occurred when he watched videos while he was logged into his Facebook account. (Id., ¶7.)

Plaintiff alleges that  Facebook collects two categories of information, namely the Facebook ID and the title of each video the user watches. (Complaint §§ 11 and 12.) Plaintiff claims that when a Facebook user is logged into Facebook and accesses videos on the Website, the Facebook collects the user's Facebook ID by reading a cookie labeled "c_user" and transmits the user's Facebook ID, not his user ID on the Defendant's Website, to Facebook. (Id., ¶11.) Plaintiff also does not allege Defendant placed the "c_user" cookie on the Plaintiff's device. In fact, it is Facebook that places c_user cookie on the Plaintiff's device. (See Mazzucchelli Decl., ¶9; see also *Solomon v. Flipps Media, Inc*. (2d Cir. 2025) 136 F.4th 41, 45.) In addition to the Facebook ID, Plaintiff further alleges that the Facebook pixel also transmits the title of the video the user watches on the Website. (Complaint, ¶12.) Plaintiff claims that when the user watches "SportsEdTV video entitled "Signature Move Series—Tim Hardaway's Killer Crossover," the Facebook pixel transmits the tile of the video along with the user's Facebook ID, again not his user ID on Defendant's Website, to Facebook. (Id.) Plaintiff does not explain how the video title is disclosed to Facebook. (See generally, Complaint.)

Plaintiff does recognize that Defendant's Privacy Policy is available at www.SportsEdTV.com/privacy-policy; however, he claims that the Privacy Policy "makes no mention of the fact that the Website shares the user's Facebook ID and the video titles the user has watched with Facebook," and Defendant did not obtain consent from Plaintiff in a form that

4

complies with VPPA. (Complaint, ¶13.) Plaintiff alleges that Defendant violated VPPA by disclosing Plaintiff's Facebook ID and video watching history. (Complaint, ¶7.)

Nevertheless, Plaintiff does not allege any facts to support his allegations. Plaintiff does not explain how many times or why he watched the videos on the Website **while** he simultaneously logged into his Facebook account. (See generally, Complaint.) He does not allege how he discovered that Facebook has the history of the videos he watched or whether he even checked his Facebook account to see if Facebook was collecting any information about his viewing history of the Website. (Id.) More significantly, in alleging harms, Plaintiff borrows the word "concrete" from the statute and alleges that he "suffered a **concrete** invasion of his legally protected privacy rights, including the right to control the disclosure of his video viewing history." (Id., ¶7 [emphasis added].) Plaintiff also alleges he "was further injured by the unauthorized tracking of his online activity, loss of control over his personal information, and the risk of **future** misuse or profiling based on his viewing habits. (Id. [emphasis added].) However, Plaintiff does not allege that he has been targeted for profiling or unwanted advertising (Id.), even though he alleges "Facebook uses the information transmitted by the Facebook pixel to deliver targeted ads to the user. (Id., ¶9.)

### 2.     Plaintiff's allegation of CIPA Claim

For his CIPA Claim, Plaintiff alleges that:

> "By means of the Facebook pixel, Facebook willfully and without the consent of all parties to the communication, read, attempted to read, and/or learned the contents or meaning of electronic communications between the Subclass members and Defendant while the communications were in transit or were being sent from or received at a place  in California." (Complaint, ¶39.)

Plaintiff then alleges that Defendant violated Cal. Pen. Code § 631(a)(4) because Defendant "aided, agreed with, employed, permitted, or otherwise enabled Facebook to wiretap the Subclass members using the Facebook pixel, without Subclass members' consent. (Id., ¶40.)

## III.     LEGAL STANDARD

### A.     Rule 12(b)(1) Motion to Dismiss

Rule 12(b)(1) authorizes the dismissal of an action for lack of subject matter jurisdiction "if the complaint, considered in its entirety, on its face fails to allege facts sufficient to establish

5

subject matter jurisdiction." (*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.* (9th Cir. 2008) 546 F.3d 981, 984-85.) The burden of proving subject matter jurisdiction is imposed on the party asserting subject matter jurisdiction. (*Chandler v. State Farm Mut. Auto. Ins. Co.* (9th Cir. 2010) 598 F.3d 1115, 1122.) In fact, "plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought" to avoid a dismissal for lack of standing. (*Maya v. Centex Corp.* (9th Cir. 2011) 658 F.3d 1060, 1068-69.) Furthermore, in ruling on Rule 12(b)(1) motion to dismiss ("Rule 12(b)(1) Motion"), the Court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." (*McCarthy v. United States* (9th Cir. 1988) 850 F.2d 558, 560.) Under this standard, the VPPA Claim should be dismissed as the Complaint fails to confer Plaintiff with Article III standing for subject matter jurisdiction.

### B.    Rule 12(b)(6) Motion to Dismiss

Under Rule 12(b)(6), the district court has authority to dismiss a complaint for "failure to state a claim upon which relief can be granted." (Fed. R. Civ. P. 12(b)(6).) For a motion brought under Rule 12(b)(6) ("Rule 12(b)(6) Motion"), the court must accept as true all "well-pleaded factual allegations" in a complaint. (*Ashcroft v. Iqbal* (2009) 556 U.S. 662, 679). However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" (*Bell Atl. Corp. v. Twombly* (2007) 550 U.S. 544, 555 [quoting *Papasan v. Allain* (1986) 478 U.S. 265, 286].) Further, the court may disregard allegations that are contradicted by matters properly subject to judicial notice or by exhibit. (*Sprewell v. Golden State Warriors* (9th Cir. 2001) 266 F.3d 979, 988.) The court may also disregard allegations that are "conclusory" or are the product of unreasonable deductions and inferences. (Id.)

A plaintiff must state sufficient factual matter, if accepted as true, to "state a claim to relief that must be plausible on its face" to survive a motion to dismiss. (*Iqbal*, 556 U.S. at 678 [quoting *Twombly*, 550 U.S. at 570].) Further, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (Id. [citing *Twombly*, 550 U.S. at 556].)

6

Here, Plaintiff has failed to allege facts for the VPPA and CIPA Claims to survive a Rule12(b)(6) Motion.

**IV.      UNDER RULE 12(b)(1), PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO MEET ARTICLE III STANDING FOR THE VPPA CLAIM.**

This Court should dismiss Plaintiff's VPPA Claim because Plaintiff fails to allege facts to support that he has Article III standing for this Court to exercise a subject matter jurisdiction over his VPPA Claim.

A plaintiff in a VPPA action must allege that: (1) a defendant is a "video tape service provider," (2) the defendant disclosed "personally identifiable information" concerning any customer" to any person (3) the disclosure was made **knowingly**, and (4) the disclosure was not authorized by section 2710(b)(2)." (*Mollett v. Netflix, Inc.* (9th Cir. 2015) 795 F.3d 1062, 1066 [emphasis added].)

With respect to standing to bring a VPPA claim, courts recognize that standing is an essential part of the case-or-controversy requirement of Article III of the Constitution. (*Pritikin v. Department of Energy* (9th Cir. 2001) 254 F.3d 791, 796.) Accordingly, Article III standing is a constitutional limitation on a federal court's subject-matter jurisdiction. (*Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).) Therefore, a  motion to dismiss for lack of standing under Rule 12(b)(1) is the proper procedural avenue by which a party asserts the defense that the federal court lacks subject-matter jurisdiction over the lawsuit. (See Fed. R. Civ. P. 12(b)(1); *Acosta v. Perez* (E.D.Cal. May 6, 2020, No. 1:19-cv-01224-AWI-EPG) 2020 U.S.Dist.LEXIS 80096, at *10).)

Article III standing requires the following three elements:

(1)      an "injury in fact"— an invasion of a legally protected interest which must be (a) concrete and particularized and (b) actual or imminent, not  conjectural or hypothetical.

(2)      "a causal connection between the injury and the conduct complained of — the injury has to be fairly traceable to the challenged action of the defendant**, and not the result of the independent action of some third party not before the court**"

(3)      likelihood of redressability that it not be merely speculative, that the injury will be

7

redressed by a favorable decision.

(*Lujan v. Defenders of Wildlife* (1992) 504 U.S. 555, 560-61 [citations omitted].)

With respect to the first element, the injury must be concrete and also particularized. (Id.) a concrete injury must be "de facto" that is, it must actually exist. (Id., 578.) Also, a concrete injury is one that is "'real" and not "abstract." (Id., at 579.) A particularized injury requires that "the injury must affect the plaintiff in a personal an individual way." (Id., at 560, fn. 1.) Plaintiff here does not satisfy the Article III standing.

A.      **Plaintiff Fails to Allege Any Facts to Support He Suffered an Injury-in-Fact.**

Other than the alleged violation of the statute, Plaintiff fails to allege that he suffered a concrete and particularized injury to meet the Article III standing requirement. The courts in the Ninth Circuit require more than mere allegations of statutory violation. Plaintiff here must show that he himself suffered a concrete and particularized injury when the facts alleged in the Complaint establish that the violations occurred as to the individual plaintiff. (See *Mendoza v. Microsoft Inc.* (W.D.Wash. Sep. 11, 2014, No. C14-316-MJP) 2014 U.S.Dist.LEXIS 127736, at *7 [citing *Jewel v. National Security Agency* (9th Cir. 2011) 673 F.3d 902, 908; *In re Hulu Privacy Litigation* (N.D.Cal., 2012) 2012 U.S. Dist. LEXIS 80601, 2012 WL 2119193, *8].) Furthermore, to survive the Article III standing challenge, as here, it is not sufficient to offer "broad conclusory statements and formulaic recitations of the VPPA statues but must allege facts to support their allegation that Defendant allegedly retained and disclosed personally identifiable information, for example when the disclosures occurred." (Id.)

Here, other than merely repeating the allegations in other copycat complaints of what Facebook does with Facebook pixel and a mere recitation of how a VPPA violation can occur, Plaintiff has no idea when the alleged violation occurred or whether any violation occurred. He merely alleges that "[d]uring the limitations period, he used his SportsEdTV subscription to watch videos," without identifying the titles of the videos, while he was logged into his Facebook account. (Complaint, ¶7.) However, Plaintiff does not know when the violation occurred. Plaintiff simply alleges "the technical nature of the Facebook pixel and its opaque design made it impossible for a reasonable user, exercising ordinary diligence, to discover the

8

unlawful disclosure of the user's private information." (Complaint, ¶15.) This allegation demonstrates that Plaintiff does not even know whether the alleged disclosure of his PII actually occurred. Because he failed to allege facts to support that Defendant retained and disclosed his PII to Facebook to satisfy the Article III standing requirement, this Court should grant this 12(b)(1) Motion and dismiss Plaintiff's VPPA Claim.

**B.      There Was No Disclosure of Plaintiff's PII for the Injury-in-Fact to Occur.**

Plaintiff lacks Article III standing because he could not have suffered a concrete and particularized injury as his PII was not disclosed. The VPPA defines "personally identifiable information" to "include[] information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." (18 U.S.C. § 2710(a)(3).) In the Ninth Circuit, PII "must include more information than that which, by itself, identifies an individual as having watched certain videos." (*Eichenberger v. ESPN, Inc*. (9th Cir. 2017) 876 F.3d 979, 984.) Undertaking the textual analysis of the VPPA and legislative intent and history, the *Eichenberger* court held that PII "means only that information that would 'readily permit' an ordinary person to identify a specific individual's video-watching behavior." (Id.) Applying that definition, the *Eichenberger* court affirmed the lower court's dismissal of the complaint (based on Rule 12(b)(6)) because the alleged information that was disclosed to Adobe, a third party similar to Facebook in this case, cannot identify an individual unless it is combined with other data in Adobe's possession, data that defendant never disclosed or possessed. (Id., at 986.) Further, the court concluded that the VPPA claim fails because "an ordinary person could not use the information that Defendant allegedly disclosed to identify an individual." (Id.)

The court in *In re Hulu Privacy Litig*. also arrived at the same conclusion that defendant did not disclose PII unless Facebook combined the two pieces of information, the Facebook ID and the video viewing history. (*In re Hulu Privacy Litig.,* (N.D.Cal. 2015) 86 F. Supp. 3d 1090, 1096.) The *Hulu* court reasoned that "without Facebook forging that connection there is no 'disclosure' of "personally identifiable information" under the terms of the VPPA. (Id.)

As explained in *Solomon v. Flipps Media, Inc.* a user's Facebook ID "is associated with … a Facebook 'c_user cookie' … Because these c_user cookies are created and placed by

9

Facebook on the Facebook users' browsers, only Facebook's servers can access them." (See *Solomon,* 136 F.4th at 45.) Granting defendant's motion for summary judgment, the court in the Northern District in *In re Hulu Privacy Litig* explained that '[n]either the watch page URL nor the Facebook c_user cookie by itself constitutes pli *[sic]* as defined by the VPPA." (*Hulu,* 86 F. Supp. 3d at 1097.) The court reasoned that "the URL contains no user data at all, let alone identifying information; the URL is the same for every user who requests that same video." (Id.)

Here, no PII of Plaintiff is transmitted for him to show a concrete and particularized harm. First, Defendant does not disclose Plaintiff's user ID for his subscription or the actual URL of the video – Defendant tracks the referrer URL only. (Mazzucchelli Decl., ¶ 8.) The referrer URL Defendant tracks does not include the title of the video, the user ID, or Facebook ID of Plaintiff. (See Mazzucchelli Decl., ¶ 8.) Also, because the URL is the same for all who watches the video, the URL itself cannot identify Plaintiff.  Therefore, the URL, especially the referrer URL, cannot serve as PII as it does not identify or contribute to the identification of any individual.

Next, Defendant could not disclose Plaintiff's Facebook ID as Defendant does not have Plaintiff's Facebook ID. Defendant did not ask for a Facebook ID when he signed up for a subscription. (Bergonzoli Decl., ¶ 4.)  Also, Defendant cannot access the content of the "c_user" cookie to obtain the Facebook ID. As the URL itself is not a PII and Defendant cannot obtain Plaintiff's Facebook ID, Defendant did not have the ability to disclose Plaintiff's PII.

Furthermore, taking Plaintiff's allegations as true, which they are not, the Facebook pixel transmits to Facebook the video title as one element and transmits along with it the user's Facebook ID, as another element. (Complaint, ¶12.) Then, as stated in *Hulu*, Facebook still must forge the connection between the Facebook ID and the URL for allegedly compiling Plaintiff's viewing history of the videos on the Website. As such, absent Facebook forging the connection between the URL and the Facebook ID, even if true, Defendant did not disclose Plaintiff's PII as a matter of law under the terms of the VPPA. (*Hulu*, 86 F. Supp. 3d at 1096.)

It then follows that without Defendant's disclosure of Plaintiff's PII, or his viewing history of videos from Defendant's Website, Plaintiff could not and did not suffer a concrete and

10

DEFENDANT'S MOTION TO DISMISS [FRCP 12(b)(1) AND 12(b)(6)] (3:25-cv-04046-SK)

particularized injury to satisfy Article III standing to bring the VPPA Claim against Defendant. Plaintiff's use of the word "concrete" to describe his injuries is merely conclusory. Plaintiff has no concrete injury as he pled that his injuries are "based on his viewing habits," when there was no disclosure of Plaintiff's PII or his video viewing habits or history by Defendant. Plaintiff does not allege actual damages, and, given there was no disclosure in violation of VPPA, there is no injury-in-fact to warrant any damages, neither actual nor statutory nor any other damages under 18 U.S.C § 2710(c)(2).

Therefore, Plaintiff's VPPA Claim should be dismissed for lack of subject matter jurisdiction in the absence of an injury-in-fact.

**C.      A Lack of a Causal Connection between Plaintiff's Harm and Defendant's Conduct Negates Plaintiff's Article III Standing.**

To satisfy the second requirement of causation for Article III standing requires that "the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." (*In re Ambry Genetics Data Breach Litig.* (C.D.Cal. 2021) 567 F. Supp. 3d 1130, 1140 [citing *Lujan*, 504 U.S. at 560].) Even at the pleading stage, the plaintiff must support its allegations with fact, not merely legal conclusions. (Id.) In *Ambry*, the plaintiffs alleged that because of a data breach of a defendant genetics testing company, their personal information, including names, birth dates, confidential medical information, etc. were disclosed. (Id., at 1138.) To survive a motion to dismiss for lack of standing in *Ambry*, the plaintiffs alleged several additional facts to connect the stolen information and the alleged injuries, including:

> "receiving suspicious telephone calls, emails, and text messages, notifications that a bank conducted a hard inquiry on their credit without authorization, notifications that someone attempted to pass bad checks through use of their identity and other fraudulent bank activity, notifications that an unauthorized party obtained their passwords, and notifications that they were logged into their accounts from new, unrecognized devices. They further allege that they had to contact banks, credit card agencies, and credit bureaus to cancel credit or debit cards and monitor checking accounts and credit, and contact insurance companies to alert them of the breach and request new account numbers.
> (Id., at 1140 [citation omitted].)

In contrast, Plaintiff here merely alleges a general statement of legal conclusion

DEFENDANT'S MOTION TO DISMISS [FRCP 12(b)(1) AND 12(b)(6)] (3:25-cv-04046-SK)

that he suffered a "concrete invasion of his legal protected rights, including the right to control the disclosure of his video viewing history," "loss of control over his personal information, and the risk of future misuse or profiling based on his viewing habit" as a result of Defendant's alleged disclosure of Plaintiff's Facebook ID and video watching history to Facebook. (Complaint, ¶7.) Plaintiff fails to allege any facts to support his conclusory allegations of injuries and the alleged future harms, unlike the plaintiffs in *Ambry*. Plaintiff does not even allege what video title was actually disclosed in his Facebook account or that he was inundated with any targeted ads as a result of the alleged disclosure. Therefore, Plaintiff cannot satisfy the second requirement of Article III standing.

Furthermore, Plaintiff alleges that it is Facebook, which actually "read, attempted to read, and/or learned the contents or meaning of electronic communications between the Subclass members and Defendant" "willfully and without the consent of all parties to the communication." (Complaint, ¶39.) An independent act of a third party Facebook does not meet the causation requirement of Article III standing.

In sum, this Court should grant Defendant 12(b)(1) Motion and dismiss Plaintiff's VPPA Claim as the Court does not have subject matter jurisdiction to adjudicate his VPPA Claim.

**V.     THE VPPA CLAIM IS SUBJECT TO DISMISSAL UNDER RULE 12(b)(6).**

In addition to failing to show that he has Article III standing, Plaintiff also fails to state a valid VPPA Claim. Two of the key elements for the VPPA claim are: "… (2) the defendant disclosed "personally identifiable information" concerning any customer" to any person (3) the disclosure was made **knowingly**." (*Mollett, supra,* 795 F.3d at1066 [emphasis added].) Accepting as true only the "well-pleaded factual allegations" (*Iqbal, supra*, 556 U.S., at 679), but rejecting as true a legal conclusion couched as a factual allegation (*Twombly*, 550 U.S., at 555.), this Court should dismiss the VPPA Claim under Rule 12(b)(6) because Plaintiff fails to allege the VPPA Claim with facial plausibility. (*Iqbal, supra*, 556 U.S., at 678.)

///

///

12

DEFENDANT'S MOTION TO DISMISS [FRCP 12(b)(1) AND 12(b)(6)] (3:25-cv-04046-SK)

**A.    Plaintiff Fails to State Sufficient Facts to Show that Defendant Disclosed His PII.**

Plaintiff fails to state a valid VPPA Claim because Plaintiff fails to state facially plausible facts to support Plaintiff's allegation that Defendant disclosed PII concerning him to Facebook. Plaintiff alleges that Defendant transmitted the URL of the video he watched and his Facebook ID. However, the URL, especially the referrer URL, does not include any information that identifies Plaintiff, and Plaintiff does not allege it does.

Furthermore, it is not plausible that Defendant transmitted Plaintiff's Facebook ID to Facebook. As explained by the court in *Solomon*, Defendant does not have access to the "c_user" cookie to obtain the Facebook ID. Only Facebook's servers can. That means it was impossible for Defendant to disclose Plaintiff's Facebook ID to Facebook or anyone else. Further, Plaintiff alleges that it is  Facebook that reads or learns the contents or meaning of the communication between Plaintiff and Defendant. One of items that Facebook can read is Plaintiff's Facebook ID from the "c_user" cookie on Plaintiff's browser, which Facebook itself placed on Plaintiff's browser. (*Solomon,* 136 F.4th, at 45.) Therefore, Plaintiff's allegations that Defendant disclosed his PII to Facebook is just not plausible to support his VPPA Claim.

Accordingly, this Court should dismiss the VPPA Claim under Rule 12(b)(6) also as Plaintiff cannot state a valid VPPA Claim when there is no disclosure of PII to Facebook. This Court should grant this 12(b)(6) Motion to dismiss VPPA claim without leave to amend because Plaintiff cannot plead around the technical limitations imposed on who can read the "c_user" cookie. Only Facebook can.

**B.    Plaintiff Cannot State Plausible Facts That Defendant Knowingly Disclosed His PII.**

Plaintiff's VPPA Claims is subject to dismissal under Rule 12(b)(6) also because Plaintiff cannot plausibly allege that Defendant knowingly disclosed Plaintiff's PII, for the third element of the VPPA Claim. Again accepting as true Plaintiff's allegation that disclosure of Plaintiff's Facebook ID and the viewing history of Plaintiff's, which Defendant did not disclose, collectively can be deemed Plaintiff's PII, Plaintiff still fails to allege facially plausible facts that

13

Defendant knowingly disclosed Plaintiff's PII.

According to the court in *Eichenberger*, Defendant could not have known that the Facebook ID allegedly disclosed identifies Plaintiff because Defendant does not have the data Facebook has to assimilate the Facebook ID with Plaintiff himself. (*Eichenberger*, 876 F.3d at 986). In other words, allegedly Defendant could have disclosed a certain individual's Facebook ID with the video viewing history of that particular Facebook ID. However, Defendant would not have known it was disclosing Plaintiff's video viewing history, or his PII, because Defendant could not identify Plaintiff from his Facebook ID. Only Facebook can. Therefore, Plaintiff did not allege sufficient facts that are plausible to survive the Rule 12(b)(6) Motion to dismiss the VPPA Claim.

**VI.    UNDER RULE 12(b)(6), PLAINTIFF'S CIPA CLAIM SHOULD BE DISMISSED.**

This Court should grant this Rule 12(b)(6) Motion to dismiss Plaintiff's CIPA Claim brought under Cal. Pen. Code § 631(a). (Complaint, ¶37.) Section 631(a) contains the following "distinct and mutuality independent patterns of conduct": (1) "intentional wiretapping," (2) "willfully attempting to learn the contents or meaning of a communication in transit over a wire," or eavesdropping, (3) "attempting to use or communicate information obtained as a result of engaging in either of the two previous activities," and (4) of anyone who "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the other three bases for liability. (*Rodriguez v. Ford Motor Co.* (S.D.Cal. 2024) 722 F. Supp. 3d 1104, 1113.)

District courts in the Ninth Circuit have dismissed a CIPA claim based on aiding and abetting a third party when a plaintiff fails to allege facts "demonstrating Defendant acted with the requisite knowledge or intent to aid and abet [ ] purported CIPA violation." (*Heiting v. Taro Pharms. United States, Inc.* (C.D.Cal. 2023) 709 F. Supp. 3d 1007, 1019.) It is also not sufficient to simply allege that the person who wiretaps "captures the electronic communications of visitors to Defendant's Website," but the allegations must also allege a breach of some duty. (*Rodriguez v. Ford Motor Co.* (S.D.Cal. 2024) 722 F. Supp. 3d 1104, 1124.) In fact, Plaintiff must allege facts to demonstrate that Defendant had "knowledge of the unlawful purpose of the perpetrator." (Id.)

14

Plaintiff here alleges that Defendant is liable for the fourth basis of aiding and abetting. (See Complaint, ¶40 ["Defendant aided, agreed with, employed, permitted, or otherwise enabled Facebook to wiretap the Subclass members using the Facebook pixel].) However, Plaintiff alleges nothing more than claiming "Defendant knew that the Facebook pixel it installed on the Website would result in the disclosure of user communication to Facebook," which, without mores, is not sufficient under *Rodriguez* because it does not demonstrate that Defendant had knowledge that Facebook had an unlawful purpose. (*Rodriguez,* 722 F. Supp. 3d, at1124.)

It is also significant to note that Plaintiff seems to allege that Defendant is liable for wiretapping as Defendant itself installed the Facebook pixel, a wiretapping device. (see Complaint, ¶38.) In fact, Plaintiff alleges that "Defendant collects and shares the personal information of its Website users through the use of the Facebook pixel," which it installed on its Website. (Complaint, ¶3.) Nevertheless, the well-established "party exception" rule applies to Defendant. Under the party exception rule, Defendant cannot be liable for CIPA for eavesdropping on its own conversation with Plaintiff or any of the Subclass Members. (See *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 607 ["[CIPA] contain[s] an exemption from liability for a person who is a 'party' to the communication...."]; *Rogers v. Ulrich* (1975) 52 Cal.App.3d 894, 898-99 ["[O]nly a third party can listen secretly to a private conversation."]; *Warden v. Kahn* (1979) Cal. App. 3d 805, 811,811 [[S]ection 631 ... has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation."].)

Therefore, this Court should dismiss Plaintiff's CIPA Claim as Plaintiff does not allege sufficient facts to meet the knowledge requirement for aiding and abetting under the fourth basis of liability under Section 631(a), and the party exception rule exonerates Defendant from a potential imposition of liability as the one who eavesdropped by wiretapping.

## III.     CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiff's Complaint in its entirety because the Court does not have subject matter jurisdiction for the VPPA Claim under Rule 12(b)(1) as Plaintiff cannot establish Article III standing; and Plaintiff fails to state plausible facts for the VPPA Claim or the CIPA Claim under Rule 12(b)(6) and, therefore, both claims should be

15

dismissed.

Dated:  July 11, 2025                              WILSON, ELSER, MOSKOWITZ,
                                                   EDELMAN & DICKER LLP

                                              By:/s/ Peter K. Chu
                                                   Peter K. Chu
                                                   Jura C. Zibas
                                                   Attorney for Defendant
                                                   SPORTSEDTV, INC.

DEFENDANT'S MOTION TO DISMISS [FRCP 12(b)(1) AND 12(b)(6)] (3:25-cv-04046-SK)