EDWARD J. WYNNE (165819)
*ewynne@wynnelawfirm.com*
GEORGE R. NEMIROFF (262058)
*gnemiroff@wynnelawfirm.com*
**WYNNE LAW FIRM**
80 E. Sir Francis Drake Blvd., Ste. 3G
Larkspur, CA 94939
Telephone: (415) 461-6400
Facsimile: (415)461-3900

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

NICK BALESTRIERI, individually and on behalf of all others similarly situated,

Plaintiff,

v.

SPORTSEDTV, INC., and DOES 1 through 10, inclusive,

Defendants.

Case No.: 3:25-cv-04046-SK

Hon. Sallie Kim, presiding
Courtroom C – 15th Floor,
San Francisco Courthouse

Complaint filed: May 9, 2025

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S (1) MOTION TO DISMISS 12(b)(2) AND 12(b)(6); AND (2) MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FORUM NON CONVENIENS OR, IN THE ALTERNATIVE, TO TRANFER VENUE**

Date: September 15, 2025
Time: 9:30 a.m.
Courtroom: Courtroom C – 15th Floor via Zoom

## TABLE OF CONTENTS


INTRODUCTION ..... 1

SUMMARY OF ARGUMENT ..... 1

MOTION TO DISMISS ..... 3

I. Defendant's Request for Judicial Notice and Incorporation by Reference Should be Denied. ..... 3

II. Plaintiff has Article III Standing. ..... 6

A. PLAINTIFF HAS ALLEGED AN INJURY IN FACT AND CAN EASILY OVERCOME DEFENDANT'S RULE 12(B)(1 CHALLENGE. ..... 6

B. DEFENDANT CONFLATES CONSTITUTIONAL AND STATUTORY STANDING AND IMPROPERLY ATTACKS THE MERITS OF PLAINTIFF'S CLAIMS WITH EXTRINSIC EVIDENCE. ..... 8

II. Plaintiff Plausibly Alleges that Defendant Violated the VPPA. ..... 11

A. DEFENDANT DISCLOSED PERSONALLY IDENTIFIABLE INFORMATION. ..... 11

1. Defendant disclosed PII by transmitting Plaintiff's FID and viewing histories to Facebook. ..... 12

2. Defendant's contrary arguments are unpersuasive. ..... 14

B. DEFENDANT ACTED KNOWINGLY. ..... 16

III. Plaintiff Sufficiently Alleges a Violation of CIPA. ..... 18

A. ELEMENTS OF LIABILITY UNDER SECTION 631(A). ..... 18

B. THE PARTY EXCEPTION DOES NOT SHIELD DEFENDANT FROM LIABILITY BECAUSE PLAINTIFF HAS ALLEGED DEFENDANT AIDED FACEBOOK IN EAVESDROPPING. ..... 18

C. PLAINTIFF HAS ADEQUATELY ALLEGED DEFENDANT AIDED OR AGREED WITH FACEBOOK'S EAVESDROPPING. ..... 18

IV. Plaintiff Requests Leave to Amend ..... 21

MOTION TO DISMISS BASED ON FORUM NON CONVENIENS AND TRANSFER ..... 21

V. Defendant's Motion to Dismiss For Forum Non Conveniens, And In The Alternative, Motion to Transfer Should Be Denied ..... 21

A. DEFENDANT HAS NOT MET ITS BURDEN TO DISMISS THIS ACTION BASED ON FORUM NON CONVENIENS. ..... 21

1. The private interest factors militate in favor of Plaintiff ..... 22

a. The relative ease of access to sources of proof is at best neutral. ..... 22

b. The availability of a compulsory process for unwilling witnesses weighs in favor of Plaintiff ..... 23

c. Defendant has offered no evidence that a judgment is easier to enforce in Florida versus California ..... 25

d. The Northern District does not present any practical problems warranting dismissal ..... 25

2. The public interest factors do not favor Defendant ..... 25

B. DEFENDANT HAS NOT MET ITS BURDEN TO TRANSFER THIS ACTION TO THE SOUTHERN DISTRICT OF FLORIDA ..... 27

1. Plaintiff's choice of forum is convenient and entitled to deference ..... 28

2. Defendant rehashes its unsupported arguments regarding convenience of the parties, witnesses and sources of proof ..... 28

3. This VPPA/CIPA action is not governed by Florida law ..... 29

4. Local interest in the controversy favors Plaintiff ..... 29

5. Relative court congestion is neutral ..... 30

VI. Conclusion ..... 30

## TABLE OF AUTHORITIES

**Cases**

*Ade v. Viki, Inc.*,
No. 23-CV-02161-RFL, 2024 WL 1880153 (N.D. Cal., Mar. 28, 2024) ............ 15

*Ambrose v. Bos. Globe Media Partners LLC*,
No. 21-CV-10810, 2022 WL 4329373 (D. Mass. Sep. 19, 2022) ............ 13, 14

*Antaris Technologies, Inc., et al. v. William E. Matthews, et al.*,
2025 WL 1939868 (N.D. Cal. July 15, 2025) ............ 22, 23, 26

*Arthur Anderson LLP v. Superior Court*,
67 Cal.App.4th 1481 (1998) ............ 20

*Augustine v. United States*,
704 F.2d 1074, 1077 (9th Cir. 1983) ............ 10

*Austin-Spearman v. AMC Network Ent. LLC*,
98 F. Supp. 3d 662, 666 (S.D.N.Y. 2015) ............ 7

*Belozerov v. Gannett Co.*,
646 F.Supp.3d 310 (D. Mass. Dec. 20, 2022) ............ 16, 17

*California v. Texas*,
141 S. Ct. 2104 (2021) ............ 9

*Cantu v. Tapestry, Inc.*,
No. 22-CV-1974-BAS-DDL, 2023 WL 4440662 (S.D. Cal. July 10, 2023) ............ 7

*Cappello v. Walmart Inc.*,
No. 18-cv-06678-RS, 2019 WL 11687705 (N.D. Cal. Apr. 5, 2019) ............ 4

*Carijano v. Occidental Petroleum Corp.*,
643 F.3d 1216 (9th Cir. 2011) ............ 21, 28

*Carolina Cas. Co. v. Data Broadcasting Corp.*,
158 F.Supp.2d 1044, (N.D. Cal. 2001) ............ 29

*Cholakyan v. Mercedes-Benz USA, LLC*,
No. CV 10-05944, 2012 WL 12861143 (C.D. Cal. Jan. 12, 2012) ............ 10

*Citigroup Inc. v. City Holding Co.*,
97 F. Supp. 2d 549 (S.D.N.Y. 2000) ............ 24

*Contact Lumber Co. v. P.T. Moges Shipping Co., Ltd.*,
918 F.2d 1446 (9th Cir. 1990) ............ 28

*Cousin v. Sharp Healthcare*,
681 F.Supp.3d 1117 (S.D. Cal. 2023) ............ 19

*Czarnionka v. Epoch Times Ass'n, Inc.*,
No. 22 CIV. 6348 (AKH), 2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022) ............ 16, 17

*Dada v. NSO Grp. Techs. Ltd.*,
2025 WL 1879527 (9th Cir. July 8, 2025) ............ 22

*Davis v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ............ 7

*Doe v. United States*,
58 F.3d 494 (9th Cir. 1995) ........ 21

*Dole Food Co. v. Watts*,
303 F.3d 1104 (9th Cir. 2202) ........ 22

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ........ passim

*Ervin v. California Network Management, Inc.*,
2025 WL 1509151 (E.D. Wash. May 27, 2025) ........ 25

*Feldman v. Star Trib. Media Co. LLC,*
659 F. Supp. 3d 1006 (D. Minn. 2023) ........ passim

*Fruitstone v. Spartan Race Inc.*,
464 F. Supp. 3d. 1268 (S.D. Fla. 2020) ........ 23

*Ganpat v. Eastern Pacific Shipping PTE, Ltd.*,
2022 WL 219052 (E.D. La. Jan. 25, 2022) ........ 24

*Harris v. Pub. Broad. Serv.*,
No. 22-CV-2456, 2023 WL 2583118 (N.D. Ga. Mar. 20, 2023) ........ 13, 14, 16

*Heerde v. Learfield Comms., LLC*,
741 F.Supp.3d 849 (C.D. Cal 2024) ........ 20

*Heiting v. Taro Pharms. United States, Inc.*,
709 F.Supp.3d 1007 (C.D. Cal. 2023) ........ 19

*In re Ambry Genetics Data Breach Litig.*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021) ........ 16

*In re Hulu Priv. Litig.*,
No. 11-CV-03764, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ........ 12, 16

*In re Hulu Priv. Litig.,*
No. C 11-03764 LB, 2012 WL 2119193 (N.D. Cal. June 11, 2012) ........ 8

*In re Hulu Privacy Litig.*,
86 F. Supp. 3d 1090 (N.D. Cal. 2015) ........ 11, 14, 15

*In re Hulu Privacy Litig.*,
No. 11-CV-03764, 2013 WL 6773794 (N.D. Cal. Dec. 20, 2013) ........ 7

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016) ........ 6, 7, 12

*In re Vizio, Inc. Consumer Privacy Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ........ 6, 8, 9, 10

*Jackson v. Fandom, Inc.*,
No. 22-cv-044234-JST, 2023 WL 4670285 (N.D. Cal. July 20, 2023) ........ 5

*Jones v. GNC Franchising, Inc.*,
211 F.3d 495 (9th Cir. 2000) ........ 27

*Khoja v. Orexigen Therapeutics, Inc.,*
899 F.3d 988 (9th Cir. 2018) ........ 4, 5

*King v. Russell*,
963 F.2d 1301 (9th Cir. 1992) .......... 22

*Kishore v. Times Internet (UK) Ltd.*,
No. 23-CV-03594-HSG, 2024 WL 4197619 (N.D. Cal. Sept. 12, 2024) .......... 10

*Lebakken v. WebMD, LLC*,
640 F. Supp. 3d 1335 (N.D. Ga. 2022) .......... 15

*Leuck v. Sustrand Corp.*,
236 F.3d at 1137 (2001) .......... 21

*Leukemia & Lymphoma Society, Inc v. Walter and Eliza Hall Institute of Medical Reserch.*,
2024 WL 3876353 (S.D.N.Y. 2024) .......... 24

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) .......... 9

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) .......... 21

*Louth v. NFL Enterprises LLC*,
No. 21-CV-00405, 2022 WL 4130866 (D.R.I. Sept. 12, 2022) .......... 13, 14

*Lueck v. Sunstrand Corp*,
236 F.3d 1137 (9th Circ. 2001) .......... 26

*Lynn v. Becton Dickinson and Company*,
2022 WL 610819 (S.D. Ohio March 2, 2022) .......... 23

*M.H. v. Done Glob Inc.*,
No. 24-cv-03040-RFL, 2025 WL 629613 (N.D. Cal. Feb. 25, 2025) .......... 18, 20

*Mack v. S. Bay Beer Distribs., Inc.*,
798 F.2d 1279 (9th Cir. 1986) .......... 4

*Manza v. Pesi, Inc.*,
No. 24-CV-690-JDP, 2025 WL 1445762 (W.D. Wis. May 20, 2025) .......... 13

*Martin v. Meredith Corp.*,
No. 22-CV-4776, 2023 WL 2118074 (S.D.N.Y. Feb. 17, 2023) .......... 9

*Mendoza v. Microsoft Inc.*,
No. C14-316-MJP, 2014 WL 4540213 (W.D. Wash. Sept. 11, 2014) .......... 7

*Metito (Overseas) Ltd. v. Gen. Elec. Co.*, 2006 WL 3230301 (S.D.N.Y. Nov. 7, 2006) .......... 24

*Mitchell v. Sonesta Int'l Hotels Corp.*,
Case No. CV 24-2603-GW-SSCx, 2024 WL 4471772 (C.D. Cal. Oct. 4, 2024) .......... 19, 20

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015) .......... 11

*Patel v. Facebook, Inc.*,
932 F.3d 1264 (9th Cir. 2019) .......... 7

*Perry v. Cable News Network, Inc.*,
854 F.3d 1336 (11th Cir. 2017) .......... 6, 7

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981) .......... 28

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) .......... 21

*Rodriguez v. Ford Motor Co.*,
722 F.Supp.3d 1104 (S.D. Cal. 2024) .......... 19

*Salebuild, Inc. v. Flexisales, Inc.*,
633 F.App'x 641 (9th Cir. 2015) .......... 24

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .......... 18, 20

*Smith v. Yeti Coolers LLC*,
754 F.Supp.3d 933, 942 (N.D. Cal. 2024) .......... 19

*Solomon v. Flipps Media, Inc.*,
136 F.4th 41 (2d Cir. 2025) .......... 13

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 6, 8

*Stark v. Patreon, Inc.*,
No. 22-CV-03131, 2022 WL 7652166 (N.D. Cal. Oct. 13, 2022) .......... 12, 14

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) .......... 9

*Sterk v. Redbox Automated Retail, LLC*,
770 F.3d 618 (7th Cir. 2014) .......... 7

*Tate v. VITAS Healthcare Corp.*,
762 F.Supp.3d 949 (E.D. Cal. 2025) .......... 19, 20

*Technologies, Inc. v. Williams E. Matthews, et al.*,
Case No. 25-cv-04048-RS, 2025 WL 1939868 (N.D. Cal. July 15, 2025) .......... 22

*Thornton v. Mindvalley, Inc.*,
No. 24-CV-00593-EKL, 2025 WL 877714 (N.D. Cal. Feb. 14, 2025) .......... 4, 5

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) .......... 6

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) .......... 5

*Williams v. Bowman*,
157 F.Supp.2d 1103 (N.D. Cal. 2001) .......... 22, 23

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 18

**Statutes**

18 U.S.C.
§ 2710(a)(3) .......... 11, 17

18 U.S.C.
§ 2710(b)(1) .......... 1, 16

18 U.S.C.
§ 2710(b)(2)(B) .......... 1

28 U.S.C.
§ 1404 .......... 27

28 U.S.C.
§ 1404(a) .......... 27

28 U.S.C.
§ 1406(a) .......... 21

28 U.S.C.
§ 1963 .......... 25

Cal. Civ. Code
§ 1798.100 .......... 29

Cal. Civ. Code
§ 1798.150 .......... 29

California Penal Code
§ 631(a) .......... passim

Federal Rule of Civil Procedure
12(b)(1) .......... passim

Federal Rule of Civil Procedure
12(b)(6) .......... passim

Federal Rule of Evidence
201(b) .......... 4

Florida Statutes
§ 112.23 .......... 29

**Other Authorities**

"*The Zoom Paradox: Schrodinger's Witness*," by Christopher J. Vidrine, Louisiana Law Review, Fall 2021, pp. 6-9 .......... 22

"*Zooming Our Way Out Of The Forum Non Conveniens Doctrine*," Columbia Law Review, by Christabel Narh, April 2023, pp. 7-10 .......... 22

## INTRODUCTION

This case arises under the Video Privacy Protection Act (VPPA), 18 U.S.C. § 2710 and the California Invasion of Privacy Act (CIPA), Cal. Penal Code § 631. Defendant SportsEdTV – a sports educational video provider – intentionally embedded the Facebook/Meta Pixel (the "Pixel") on its website, www.SportsEdTV.com (the "Website"). *See* Compl. ¶ 3. The Pixel is an invisible piece of JavaScript code that tracks the identity and behavior of Website users and transmits that information to Facebook to build information profiles that facilitate targeted advertising. *Id.* ¶¶ 3, 9, 10. The Pixel collects the user's Facebook ID ("FID") and the title of each video the user watches and sends that information to Facebook. *Id.* at ¶ 3, 9, 11, 12. Defendant knew that Pixel would collect and disclose this information but chose to embed it anyway. *Id.* ¶¶ 10, 30. Defendant never obtained the "informed, written consent" of Website users required by the VPPA. *See* 18 U.S.C. § 2710(b)(2)(B); Compl. ¶¶ 4, 7, 13, 14, 32. As a result, Defendant violated the VPPA's prohibition on "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer[.]" 18 U.S.C. § 2710(b)(1).

Plaintiff Nick Balestrieri is a victim of Defendant's misconduct. Compl. ¶ 7. He subscribed to SportsEdTV by registering for an account. *Id*. He then watched videos on Defendant's website during the same time period in which he was logged into his Facebook account. *Id*. He did not consent to Defendant disclosing his personally identifiable information. *Id.* ¶ 7, 14. Nevertheless, each time Plaintiff watched videos on Defendant's website, Defendant transmitted to Facebook his FID together with the titles of the videos he requested or obtained. *Id.* ¶¶ 1, 7, 12.

## SUMMARY OF ARGUMENT

Defendant moves to dismiss this case for lack of Article III standing under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6). The motion presents no sound basis for dismissal. Indeed, Defendant tacitly admits the sufficiency of the allegations in the Complaint by relying on extrinsic evidence from multiple declarations.

Notwithstanding Defendant's protestations to the contrary, Plaintiff easily has standing to bring his VPPA claim under binding precedent. The Ninth Circuit has held that a violation of the

VPPA is not a "bare procedural violation" but a "context-specific extension of the substantive right to privacy." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017). VPPA plaintiffs "need not allege any further harm to have standing," since "*every* disclosure of an individual's 'personally identifiable information' and video-viewing history offends the interests that the [VPPA] protects" and thus gives rise to Article III standing. *Id.* at 983-84 (emphasis in original).

Faced with that binding authority, Defendant attempts to introduce self-serving testimony from its employees and even its counsel averring that Defendant did not disclose personally identifiable information. But this argument goes to the *merits*, not subject-matter jurisdiction, so there is no basis for considering extrinsic evidence at the pleadings stage. In any event, Defendant's argument proceeds from a false premise. The Complaint clearly demonstrates that Defendant discloses the videos that its subscribers requested or obtained.

Defendant's arguments under Rule 12(b)(6) fare no better. Defendant contends that its disclosures do not include personally identifiable information. But the Complaint clearly alleges that Defendant disclosed Plaintiffs' FID together with the titles of the videos he watched. A majority of district courts to have considered this issue have held that these allegations are sufficient. *See Feldman v. Star Trib. Media Co. LLC,* 659 F. Supp. 3d 1006, 1021 (D. Minn. 2023) ("[M]ost district courts that have addressed the use of Facebook Pixel specifically reached this same result in the context of Rule 12(b)(6) motions.").

Finally, Defendant contends that it did not act knowingly. But the Complaint alleges that Defendant intentionally embedded the Pixel on the Website with knowledge of the information that it would disclose. Those allegations suffice.

Defendant's motion to dismiss Plaintiff's CIPA claim fails as well. In particular, Defendant's assertion of the "party exception" to Section 631(a) is unavailing to shield it from liability. The party exception does not apply when a defendant secretly allows a third party to eavesdrop on communications between a plaintiff and defendant. Plaintiff, here, has alleged Defendant aided or agreed with third-party Facebook's eavesdropping. Defendant's other arguments regarding the sufficiency of Plaintiff's CIPA allegations are also unavailing. Even if Plaintiff was required to allege Defendant had "knowledge of Facebook's unlawful purpose,"

Plaintiff's allegations satisfy that standard.

Defendant's Motion to Dismiss for Forum Non Conveniens, and in the alternative, Motion to Transfer to the Southern District of Florida should be denied as well. Defendant cannot point to a *single* private or public interest factor – e.g., sources of proof, compulsory process, and ease of enforcing judgments—that weighs in its favor, warranting dismissal for forum non conveniens. At best, these factors are neutral or favor Plaintiff. Defendant's arguments that the Southern District of Florida is a more convenient venue ring hollow since modern technology permits electronic transmission of documents and video conferencing, which present little to no burden to the parties and render these private interest factors "largely irrelevant." Defendant presents no evidence in support of its forum non conveniens arguments, and what evidence it does proffer belies its arguments. The Northern District of California is the most convenient forum.

Defendant's alternative Motion to Transfer similarly fails. Defendant simply rehashes its unavailing analysis of the private and public interest factors, ignoring that Plaintiff's choice of the forum, i.e., where he resides, is entitled to "strong deference." Defendant attempts a sleight of hand in arguing that most of the operative facts occurred in the Southern District of Florida; however, Defendant ignores that *most* of the operative facts occurred in the Northern District of California. It misrepresents that this action is governed by Florida law based on its Terms of Conditions, but those Terms identify Florida law as governing claims arising from or relating to the contract itself; they do not govern independent statutory claims under the VPPA or CIPA. Contrary to Defendant's unsupported assertion that the State of Florida has an interest in protecting its corporations from "copycat" lawsuits, there is no forum that has a stronger local interest than the Northern District of California. Accordingly, Plaintiff is entitled to deference in his choice of forum, and the Court should deny Defendant's alternative Motion to Transfer.

## **MOTION TO DISMISS**

### **I. Defendant's Request for Judicial Notice and Incorporation by Reference Should be Denied.**

Defendant requests judicial notice of five exhibits taken from its own website and another two screenshots from non-party Meta's website. Defendant contends that these exhibits are

"publicly available" on its website or Meta's. This is improper and Defendant's request must be denied.

As Defendant's own authority cautions,

> The overuse and improper application of judicial notice and the incorporation-by-reference doctrine, however, can lead to unintended and harmful results. Defendants face an alluring temptation to pile on numerous documents to their motions to dismiss to undermine the complaint, and hopefully dismiss the case at an early stage. Yet the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery….[Cit.] If defendants are permitted to present their own version of the facts at the pleading stage—and district courts accept those facts as uncontroverted and true—it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently "plausible" claim for relief. [Cit.] Such undermining of the usual pleading burdens is not the purpose of judicial notice or the incorporation-by-reference doctrine.

*Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 998 (9th Cir. 2018) (district court abused discretion by granting judicial notice and abused discretion for incorporating in by reference certain documents).

The court may take judicial notice of a fact that is "not subject to reasonable dispute" because it is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). This includes matters of public record. *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986) ("[O]n a motion to dismiss the court may properly look to matters beyond the complaint to matters of public record[.]").

The fact that the exhibits may be "publicly available" on SportsEdTV's website or Meta's does not make them subject to judicial notice under Rule 201 as matters of public record or as facts whose accuracy can be readily determined. "The simple act of posting something publicly on the Internet is insufficient assurance of an exhibit's accuracy." *Thornton v. Mindvalley, Inc.,* No. 24-CV-00593-EKL, 2025 WL 877714, at *2 (N.D. Cal. Feb. 14, 2025) (denying judicial notice in VPPA case of Privacy Policy, Terms & Conditions, Cookie Policy, Checkout Page disclosures, and Create Account page); *Cappello v. Walmart Inc.*, No. 18-cv-06678-RS, 2019 WL 11687705, at *3 (N.D. Cal. Apr. 5, 2019) (denying judicial notice of the purchase confirmation page, Terms of Use, Privacy Policy, and Notices on Walmart's website); *see also Jackson v.*

*Fandom, Inc.*, No. 22-cv-044234-JST, 2023 WL 4670285, at *2 (N.D. Cal. July 20, 2023) (denying the defendant's request for judicial notice webpages, Terms of Use, and Privacy Policy).

Plaintiff disputes the authenticity of these documents and their technical implications. Defendant's declarations do not establish if these were the same documents in existence when Plaintiff viewed Defendant's site. Aside from a passing reference to Defendant's Privacy Policy, Plaintiff does not cite these documents, attach them as exhibits or rely on them. Defendant's use of the Pixel and its functionality in this particular case might differ from the general documentation provided by Meta. These are core issues in dispute that are not appropriate for judicial notice. For the same reasons as other courts in Northern District have repeatedly denied judicial notice of these types of documents; so too should this Court.

Alternatively, Defendant asks the Court to incorporate each of the exhibits by reference into the Complaint. The incorporation by reference doctrine "treats certain documents as though they are part of the complaint itself. The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken – or doom – their claims." *Khoja*, 899 F.3d at 1002. "[A] defendant may seek to incorporate a document into the complaint 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.' " *Id.* at 1002 (citing *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)). The "mere mention" of a document's existence is insufficient to incorporate its contents by reference. *Id.*

Defendant's exhibits should not be incorporated by reference into the Complaint. Plaintiff has not brought a claim for breach of the Privacy Policy or the Terms and Conditions. Plaintiff attached no exhibits to his complaint, included no screenshots of any portion of Defendant's website or Meta's website, and made just one passing mention of the existence of Defendant's Privacy Policy. As such, Defendant's exhibits do not "form the basis" of the VPPA claim. *Khoja*, 899 F.3d at 1002; *Thornton,* 2025 WL 877714, at *3 (denying request for incorporation by reference of pages taken from defendant's website in VPPA case). Further, SportsEdTV submits the exhibits to establish its defenses, e.g., to show that Plaintiff's PII was not transmitted to a third party. This is not permissible at the pleading stage and is not an appropriate application of the

doctrine. "[I]f the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint. Otherwise, defendants could use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims." *Thornton,* 2025 WL 877714 at *3 citing *Khoja*, 899 F.3d at 1002.

Defendant has attempted to misuse the request for judicial notice and the incorporation by reference doctrine to argue facts that are clearly in dispute. Accordingly, the requests should be denied.

## II. Plaintiff has Article III Standing.

### A. Plaintiff has alleged an injury in fact and can easily overcome Defendant's Rule 12(b)(1) challenge.

To establish Article III standing, "a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (internal quotations omitted). To determine whether an injury is sufficiently concrete, courts ask whether the asserted injury has "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021). Every single court to consider the issue—including three federal appellate courts in recent years—has held that VPPA claims like the one asserted here satisfy this injury in fact requirement. *See, e.g., Eichenberger*, 876 F.3d at 983; *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1341 (11th Cir. 2017); *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 274 (3d Cir. 2016); *In re Vizio, Inc. Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1215-17 (C.D. Cal. 2017); *Feldman*, 659 F. Supp. 3d at 1015 ("The conclusion that a plaintiff like Mr. Feldman has suffered a concrete injury for purposes of Article III standing to assert a VPPA claim is supported by every federal circuit court that has considered the issue.").

In *Eichenberger*, the Ninth Circuit held that a violation of the VPPA is not a "bare procedural violation" but a "context-specific extension of the substantive right to privacy." 876 F.3d at 982-83. And because common law "privacy torts do not always require additional consequences to be actionable," VPPA plaintiffs "need not allege any further harm to have

standing." *Id.* at 983-84; *see also Patel v. Facebook, Inc.*, 932 F.3d 1264, 1274 (9th Cir. 2019) (quoting *Eichenberger* and reaffirming that no additional harm is required for violation of privacy statute); *Davis v. Facebook, Inc.*, 951 F.3d 1106, 1117-18 (9th Cir. 2020) (same). Therefore, "*every* disclosure of an individual's 'personally identifiable information' and video-viewing history offends the interests that the [VPPA] protects." *Eichenberger*, 876 F.3d at 983 (emphasis in original); *see also Perry*, 854 F.3d at 1340 (holding that plaintiffs "need not allege any additional harm beyond the one Congress has identified" in the VPPA); *Cantu v. Tapestry, Inc.,* No. 22-CV-1974-BAS-DDL, 2023 WL 4440662, at *4 (S.D. Cal. July 10, 2023) ("Accordingly, it is sufficient for Plaintiff to plead facts that Defendant has disclosed his information in violation of the VPPA, and nothing more.").

Here, Plaintiff alleges that Defendant disclosed his personally identifiable information in the form of his FID, along with his video-viewing history, to a third party, *i.e.*, Facebook. *See* Compl. ¶¶ 1, 3, 7. Plaintiff's alleged injury—which arises from the disclosure itself—is a concrete "injury in fact" under the VPPA, and "every court to have addressed this question has reached the same conclusion, affirming that the VPPA establishes a privacy right sufficient to confer standing through its deprivation." *Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662, 666 (S.D.N.Y. 2015); *see also Nickelodeon*, 827 F.3d at 274 ("While perhaps 'intangible,' the harm is also concrete in the sense that it involves a clear de facto injury, i.e., the unlawful disclosure of legally protected information."); *In re Hulu Privacy Litig*., No. 11-CV-03764, 2013 WL 6773794, at *5 (N.D. Cal. Dec. 20, 2013) ("*Hulu III*") (holding that anyone who meets the definition of "aggrieved person" under the VPPA demonstrates injury-in-fact). By alleging that Defendant "disclosed their personal information in violation of the VPPA, [Plaintiffs] have met their burden of demonstrating that they suffered an injury in fact." *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014); *accord Eichenberger*, 876 F.3d at 983.

The only case Defendant cites in which a district court dismissed a VPPA claim for lack of standing involved a complaint so inadequately pleaded that there was no support for the plaintiffs' claimed injury. *See Mendoza v. Microsoft Inc.*, No. C14-316-MJP, 2014 WL 4540213, at *3 (W.D. Wash. Sept. 11, 2014) ("Plaintiffs do not allege a single fact to support their allegation

that Microsoft allegedly retained and disclosed personally identifiable information."). By contrast, Plaintiff has alleged that SportsEdTV captured and transmitted his PII without his consent. *See also, In re Vizio, Inc., Consumer Privacy Litigation*, 238 F.Supp.3d 1204, 1217 (C.D. Cal. 2017) (rejecting defendant's attack on plaintiff's Article III standing under the VPPA where defendant likewise relied on *Mendoza v. Microsoft, Inc.* - just like SportsEdTV mimics here). The allegations in *Mendoza* bear no resemblance to Balestrieri's allegations here.

Defendant also cites *In re Hulu Priv. Litig.,* No. C 11-03764 LB, 2012 WL 2119193 (N.D. Cal. June 11, 2012) ("*Hulu I*") but that case supports a finding of Article III standing here. The plaintiffs there alleged that Hulu transmitted their viewing choices and PII consisting of their Facebook ID to third parties, including Facebook, without their consent. Rejecting Hulu's motion to dismiss plaintiff's VPPA claim based on Rule 12(b)(1), the court stated, "The court finds Plaintiffs' allegations here sufficiently particularized." *Hulu I*, 2012 WL 2119193, at *8. Balestrieri's allegations are likewise sufficiently particularized for purposes of Article III standing.

Defendant's only response is to argue that Plaintiff has not alleged when the violation occurred. This is both false and of no moment. Plaintiff has alleged that the violation occurred during the limitations period. Compl. ¶ 7. Defendant has pointed to no authority in support of its argument that Plaintiff's allegation is insufficient or that a plaintiff must specify the precise date the violation occurred in order to have Article III standing, and Plaintiff is certainly not aware of any such authority. Defendant then argues that Plaintiff has not alleged whether the disclosure of his PII occurred. This is simply false and ignores the allegations in the Complaint. Plaintiff clearly alleged that his PII was disclosed. Compl. ¶¶ 7, 12, 13, 14, 30, 32, 40.

### B. Defendant conflates constitutional and statutory standing and improperly attacks the merits of Plaintiff's claims with extrinsic evidence.

Defendant's arguments, although couched in terms of Article III standing, are substantive merits attacks on Plaintiff's claims and Plaintiff's statutory standing, not his constitutional standing. Article III standing addresses whether there is a "case or controversy" and requires that Plaintiff establish he has suffered an injury in fact. *Spokeo*, 578 U.S. at 342. As set forth above,

Plaintiff easily meets this burden by alleging, among other things, that Defendant disclosed his personally identifiable information and the videos that he requested or obtained to Facebook. *See* Compl. ¶¶ 1, 3, 7, 11, 12, 30.

Article III standing "does not require a demonstration that the defendant's conduct is in fact unlawful. That is a merits issue." *California v. Texas*, 141 S. Ct. 2104, 2130 (2021) (rejecting an "absurd" attempt "to transform ordinary merits questions into threshold jurisdictional questions by jamming them into the standing inquiry"). Unlike Article III standing, "statutory standing is not a question of subject matter jurisdiction but rather an element of a plaintiff's cause of action." *In re Vizio, Inc., Consumer Priv. Litig*., 238 F. Supp. 3d 1204, 1219 (C.D. Cal. 2017) (discussing statutory standing under VPPA); *see Lexmark Int'l, Inc. v. Static Control Components, Inc*., 572 U.S. 118, 128 (2014) (explaining that statutory standing depends on whether a particular plaintiff "falls within the class of plaintiffs whom Congress has authorized to sue" and thus "has a cause of action under the statute").

Here, Defendant's "standing" arguments are directed to the merits of Plaintiff's claims, not whether he has suffered a concrete injury for purposes of Article III. Defendant argues that Plaintiff's claims are based on the disclosure of the titles of webpages he visited, not the titles of the videos he watched and, therefore, are not within the scope of information protected by the VPPA.

But standing "is not defeated by the possibility that the averments [in a complaint] might fail to state a cause of action on which [plaintiffs] could actually recover." *California*, 141 S. Ct. at 2130 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998)). Thus, "whether the precise disclosure is actionable under the VPPA is a question *about the merits of [Plaintiffs'] claim*, rather than [their] ability to bring [their] case in federal court." *Martin v. Meredith Corp*., No. 22-CV-4776, 2023 WL 2118074, at *2 (S.D.N.Y. Feb. 17, 2023) (emphasis added) (denying portion of motion to dismiss for lack of standing). And as more fully set forth below, Defendant's argument that only that the titles of *webpages* are disclosed is a meritless fact-based argument. Plaintiff alleges that Defendant disclosed to Facebook the titles of the *videos* that Plaintiff requested or obtained from Defendant. *See* Compl. ¶¶ 3, 7, 12, 30.

The reason that Defendant frames its direct substantive attack as a jurisdictional challenge is no mystery—Defendant's Rule 12(b)(1) Article III standing argument is an attempt to have this Court consider extrinsic evidence. But because Defendant's arguments are directed to statutory standing and whether Plaintiff has stated a cause of action under the VPPA, they must be considered under the Rule 12(b)(6) standard. *See In re Vizio*, 238 F. Supp. 3d at 1219 ("[S]tatutory standing is properly scrutinized under Rule 12(b)(6)."). As a result, Defendant's reliance on materials outside the Complaint is improper and should be ignored or stricken. "A party mounting a Rule 12(b)(1) challenge to the court's jurisdiction may do so either on the face of the pleadings or by presenting extrinsic evidence for the court's consideration." *Cholakyan v. Mercedes-Benz USA, LLC*, No. CV 10-05944, 2012 WL 12861143, at *16 (C.D. Cal. Jan. 12, 2012). In contrast to a Rule 12(b)(1) motion, courts considering motions under Rule 12(b)(6) must accept the allegations in the Complaint as true and draw all reasonable inferences in the light most favorable to the plaintiffs. *See In re Vizio*, 238 F. Supp. 3d at 1214. Defendant's arguments are not properly brought under Rule 12(b)(1) because they are not directed at Article III standing. The Court should ignore Defendant's submitted evidence at this early stage in the proceedings, which, in any event, consists only of self-serving declarations attempting to refute the veracity of Plaintiff's allegations.

Even if Defendant's arguments were properly considered under Rule 12(b)(1), the arguments Defendant makes are so intertwined with the merits of Plaintiff's claims that the Court should defer addressing the issue until raised in a proper summary judgment motion or at trial. *See Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) ("[W]here the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a de-termination of the relevant facts on either a motion going to the merits or at trial."); *Kishore v. Times Internet (UK) Ltd.*, No. 23-CV-03594-HSG, 2024 WL 4197619, at *2 (N.D. Cal. Sept. 12, 2024) (denying motion to dismiss for lack of Article III standing where "Defendant's subject matter jurisdiction argument is intertwined with the merits of the claims" and stating, "The Court declines the invitation to decide a factual dispute at the heart of Plaintiffs' case, particularly on

the *ipse dixit* of one of Defendant's executives.”).

Defendant is, of course, aware that its challenges go to the merits of Plaintiff’s claims, not constitutional standing. Yet Defendant asks the Court to consider evidence outside the pleadings on whether it disclosed Plaintiff’s information, what information was disclosed to Facebook, and even the particular webpages that Plaintiff accessed. The Court should reject this attempted end-run of the summary judgment standard.

**II. Plaintiff Plausibly Alleges that Defendant Violated the VPPA.**

On the merits, Plaintiff has alleged each element of a VPPA violation. To state a claim under the VPPA, “a plaintiff must allege that (1) a defendant is a ‘video tape service provider,’ (2) the defendant disclosed ‘personally identifiable information concerning any customer’ to ‘any person,’ (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by section 2710(b)(2).” *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015). Defendant challenges the second and third elements. None of its arguments are persuasive.

**A. Defendant disclosed personally identifiable information.**

Defendant argues that the information it disclosed was not “personally identifiable information,” or PII. The VPPA provides that “the term ‘personally identifiable information’ includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider[.]” 18 U.S.C. § 2710(a)(3). Courts have reduced that definition to three factual elements: “1) a consumer’s identity; 2) the identity of ‘specific video materials’; and 3) the fact that the person identified ‘requested or obtained’ that material.” *In re Hulu Privacy Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015) (“*Hulu IV*”); *accord Feldman*, 659 F. Supp. 3d at 1019. The test is whether the disclosed information would allow an “ordinary person” to identify each element. *Eichenberger*, 876 F.3d at 985. Defendant’s disclosures through its Facebook pixel readily satisfy that standard. *See Feldman*, 659 F. Supp. 3d at 1021 (“[M]ost district courts that have addressed the use of Facebook Pixel specifically reached this same result in the context of Rule 12(b)(6) motions.”).

**1. Defendant disclosed PII by transmitting Plaintiff's FID and viewing histories to Facebook.**

Through the Pixel embedded on its Website, Defendant discloses to Facebook its users' FIDs together with the titles of the specific videos that they requested or obtained. *See* Compl. ¶¶ 3, 7, 9, 11. Plaintiff is a Facebook user and Defendant subscriber, so Defendant automatically sent this information to Facebook each time Plaintiff requested, obtained, or watched a Defendant video. *Id.* ¶¶ 1, 3, 7. Those disclosures include each factual component of PII.

a. *Consumers' Identity.* By sending Plaintiff's FID to Facebook, Defendant disclosed information that allows an "ordinary person" to learn Plaintiff's' identity. *Eichenberger*, 876 F.3d at 985. A wide variety of information can satisfy this prong. So, while "[n]ames and addresses" are clearly sufficient, the Ninth Circuit has also indicated that digital identifiers such as "[a] Facebook link or email address may very well readily enable an 'ordinary person' to identify an individual." *Id.* at 986 (dictum). *See also Nickelodeon*, 827 F.3d at 290 (noting that "[s]ome disclosures predicated on new technology, such as . . . customer ID numbers, may suffice").

The FID satisfies the ordinary person test because it directly corresponds to a specific user's Facebook profile. *See* Compl. ¶ 11. One need only add the FID to the end of "facebook.com/" to navigate directly to the corresponding person's Facebook account, which includes a host of personal information. *Id*. Thus, as courts in this district and others have held, a Facebook ID allows an ordinary person to discover the user's identity. *See In re Hulu Priv. Litig.*, No. 11-CV-03764, 2014 WL 1724344 at *14 (N.D. Cal. Apr. 28, 2014) ("*Hulu V*") ("The Facebook User ID is more than a unique, anonymous identifier. It personally identifies a Facebook user. That it is a string of numbers and letters does not alter the conclusion. Code is a language, and languages contain names, and the string is the Facebook user name."); *Stark v. Patreon, Inc.,* No. 22-CV-03131, 2022 WL 7652166 at *7-8 (N.D. Cal. Oct. 13, 2022) (holding that FID satisfied *Eichenberger*'s ordinary person test); *Feldman*, 659 F. Supp. 3d at 1021 (collecting cases).

In the face of Plaintiff's unambiguous allegations, Defendant resorts to unabashedly

merits-based arguments in support of its Rule 12(b)(6) motion. For instance, it argues that Defendant did not "transmit Plaintiff's Facebook ID to Facebook."[1] Mot. at 13. This is argument stands in stark contrast to Plaintiff's allegations and therefore is inappropriate and should be disregarded.

b. *Identity of the Videos.* Defendant's disclosures also allow an ordinary person to identify specific videos. The Pixel discloses the specific title of the video, along with the website's URL. *See* Compl. ¶ 3. For example, if someone watches the video "Signature Move Series—Tim Hardaway's Killer Crossover," that specific title is plainly identifiable in a string of text at the end of the URL that reads "signature-move-series-tim-hardaway-s-killer-crossover." *See id.* ¶ 12. The inclusion of a specific video title makes it straightforward for an ordinary person to connect the "URL to a particular video." *Feldman*, 659 F. Supp. 3d at 1021; *see also Harris v. Pub. Broad. Serv.*, No. 22-CV-2456, 2023 WL 2583118, at *6 (N.D. Ga. Mar. 20, 2023) (holding that disclosure of "content name" in URL was sufficient); *Ambrose v. Bos. Globe Media Partners LLC*, No. 21-CV-10810, 2022 WL 4329373, at *3 (D. Mass. Sep. 19, 2022) (holding that it was sufficient to allege that Boston Globe disclosed "information about what videos [plaintiff had] watched on the Globe website"). Indeed, Defendant's disclosures make it far easier to identify the specific video at issue than other tracking systems that courts have found to satisfy this element. *See Louth v. NFL Enterprises LLC*, No. 21-CV-00405, 2022 WL 4130866, at *3 (D.R.I. Sept. 12, 2022) (holding that a "short string of numbers that links to a particular video name" sufficiently identified specific video materials).

c. *Requested or Obtained.* Defendant's disclosures also satisfy the "requested or obtained" element of PII. This element requires that the information shows a "connection" between the consumers' identity and the particular video that they requested or obtained. *Hulu*

[1] Defendant seeks to camouflage this inherently fact-based argument by citing to *Solomon v. Flipps Media, Inc.,* 136 F.4th 41 (2d Cir. 2025). This tactic fails. What may have been a "fact" in that case is contradicted by Plaintiff's allegations here. Moreover, aside from being non-binding out-of-circuit authority that no court in the Ninth Circuit has cited, its reasoning is flawed. See, *Manza v. Pesi, Inc.*, No. 24-CV-690-JDP, 2025 WL 1445762, at *4-9 (W.D. Wis. May 20, 2025) (rejecting *Solomon* as not persuasive because, *inter alia*, it interprets the VPPA too narrowly).

*IV*, 86 F. Supp. 3d at 1095; *Feldman*, 659 F. Supp. 3d at 1020. Here, Defendant disclosed Plaintiff's FID together with the content name of the videos they requested. Compl. ¶ 3, 11, 12, 13, 30. This simultaneous, linked disclosure creates a clear connection between a specific user and a particular video. *See Harris*, 2023 WL 2583118, at *6 (holding that "Plaintiff's allegation that Defendant 'sends the content name of the video the digital subscriber watched, the URL, and the Digital subscriber's FID to Facebook[]' . . . plainly alleges the information Defendant transmits to Facebook identifies a video 'requested or obtained' by Plaintiff"). Indeed, the connection between the user and the video must be clear, as the utility of the Facebook Pixel for its intended purpose—targeted advertising—depends on its ability to link the consumers' identity to the specific videos that they requested. *See* Compl. ¶ 10, 11; *Louth*, 2022 WL 4130866, at *3 (holding that defendant used similar tracking tool to "knowingly transmit[] PII for the purpose of targeted advertising"). As a result, "connecting a Facebook ID to a specific person, a URL to a particular video, and the specific person to the particular video is a reasonably straightforward exercise." *Feldman*, 659 F. Supp. 3d at 1021. Thus, Defendant disclosed information containing each element of PII.

**2. Defendant's contrary arguments are unpersuasive.**

Defendant raises four contrary arguments. None is persuasive.

*First*, Defendant says that Plaintiff does not allege that his SportsEdTV subscription was disclosed or that he requested or obtained any particular videos from Defendant's website. This argument ignores the Complaint's allegations. Plaintiff alleges that it is Plaintiff's FID that was disclosed – not his SportsEdTV identification. It is also contradicted by the Complaint, which squarely alleges that Plaintiff's FID was disclosed to Meta along with his video watching history. Compl. ¶¶ 3, 7. Essentially, Defendant is arguing that Plaintiff is required to catalogue the title of each video he watched on Defendant's website. But the VPPA does not require such a stringent pleading standard, and the VPPA caselaw indicates that no such standard exists. *Cf. Stark,* 2022 WL 7652166 at *8 (denying motion to dismiss VPPA claim where defendant "cite[d] no authority applying that granular a test, particularly at the pleading stage"). The Court should reject Defendant's novel argument. *See Ambrose v. Bos. Globe Media Partners LLC,* No. 21-CV-10810,

2022 WL 4329373 (D. Mass. Sep. 19, 2022), at *3 (denying motion to dismiss VPPA claim where defendant's "arguments in favor of dismissal rely on factual disputes that are not appropriate for disposition at this early stage").

*Second*, Defendant argues that it does not have Plaintiff's FID so it could not have disclosed it. This argument both misses the point and argues facts. The Complaint alleges that the Pixel – that Defendant knowingly installed on its website for pecuniary gain – collects the FID and together with the user's video watching history, sends that to Meta. Compl. ¶ 1, 3, 7, 10, 11, 12. Defendant's arguments based on the disputed factual contentions of Bergonzoli are not appropriate at this stage in the proceedings as set forth above. Defendant tries to analogize this case to *Eichenberger*, but that analogy fails. Instead, this case is more akin to *Ade v. Viki, Inc.,* No. 23-CV-02161-RFL, 2024 WL 1880153 (N.D. Cal., Mar. 28, 2024). As the court in *Ade* observed, "[t]hat an individual can allegedly be identified based solely on their unique FID distinguishes this case from *Eichenberger*, where the plaintiff conceded that a Roku device serial number could not identify an individual 'unless it [wa]s combined with other data in a [third party]'s possession—data that [the defendant] never disclosed and apparently never even possessed.'" *Ade*, 2024 WL 1880153, at *2. In *Ade*, the plaintiff alleged that the Facebook ID identifies an individual's Facebook account which contains information that anyone can use to identify the user. *Ibid.* The court found that, "These allegations plausibly plead that the plaintiffs' FIDs are PII under the Ninth Circuit's 'ordinary person' standard." *Ibid.*

*Third,* Defendant argues that it was up to Facebook to "forge the connection" between Plaintiff's FID and the video watching history citing *Hulu IV,* 86 F. Supp. 3d 1090, 1096. Plaintiff has alleged that his FID and video watching history were intentionally transmitted to Facebook. Compl. ¶¶ 1, 3, 7. Also, *Hulu* is easily distinguished because it was determination at summary judgment – not a motion to dismiss. Other courts have similarly rejected the very argument SportsEdTV parrots here. *See, e.g.*, *Lebakken v. WebMD, LLC*, 640 F. Supp. 3d 1335, 1343 (N.D. Ga. 2022) (denying motion to dismiss holding, "Here, the Court is not faced with evaluating evidence that WebMD knew Facebook would combine the video viewing and identity information of its consumers; rather, the question is whether the allegations of the First Amended

Complaint plausibly state a claim under the VPPA upon which relief may be granted.”).

*Fourth*, Defendant argues that Plaintiff has not alleged *enough* facts of harm citing to *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130 (C.D. Cal. 2021). But *Ambry* does not purport to set the bar on the amount or type of allegations needed to survive a motion a dismiss. The fact that the plaintiffs in *Ambry* alleged how the data breach *in that case* affected them is of no moment here. Plaintiff has sufficiently pled that he was injured by Defendant’s conduct. Compl. ¶¶ 7, 34. Defendant has cited no case for the proposition that Plaintiff’s allegations are insufficient. Similarly meritless is Defendant’s throw-away argument that an independent act of a third party fails to meet the causation requirement for Article III. This argument ignores the fact that Defendant knowingly installed the Pixel on the Website for pecuniary gain. Compl. ¶ 1, 3, 7, 10, 11, 12. Further, Defendant’s citations to the Complaint are to Plaintiff’s allegations under CIPA – not the VPPA.

**B. Defendant acted knowingly.**

Defendant also claims that Plaintiff failed to plead the knowledge element of the VPPA. Not so.

A defendant violates the VPPA if it “knowingly discloses” personally identifiable information. 18 U.S.C. § 2710(b)(1). Under the VPPA, the “emphasis” of the knowledge element “is on disclosure[.]” *Hulu V*, 2014 WL 1724344, at *14. Courts ask whether the defendant was aware of the personally identifiable information being transmitted by the pixel, yet chose to install it anyway: “If Defendant installed the Facebook pixel knowing it transmits that information, the knowledge element of the VPPA is satisfied.” *Harris*, 2023 WL 2583118, at *7 (citing *Belozerov v. Gannett Co.*, 646 F.Supp.3d 310, 315 (D. Mass. Dec. 20, 2022); *Czarnionka v. Epoch Times Ass'n, Inc.*, No. 22 CIV. 6348 (AKH), 2022 WL 17069810, at *4 (S.D.N.Y. Nov. 17, 2022)).

Here, Defendant intentionally installed the Pixel on its Website. *See* Compl. ¶ 10. It knew that the Pixel would transmit users’ FIDs. *Id.* ¶¶ 9, 10, 11. And it knew that the very purpose of the Pixel was to track and transmit users’ activity on its Website—including the videos that they watched. *Id.* ¶¶ 1, 3, 7, 10, 11, 12, 30. Thus, Defendant had knowledge that it was disclosing personally identifiable information. *See Harris*, 2023 WL 2583118, at *7 (“Plaintiff alleges

Defendant installed the pixel for the specific purpose of trans-mitting personal viewing information whenever possible and in an automated manner. No more precise knowledge is required under the statute."); *Belozerov*, 646 F.Supp.3d at 315 (finding knowledge where plaintiff alleged "defendant chose, programmed, and intended for Facebook to receive the video content name, its URL, and, most notably, the digital subscriber's FID [and that] defendant knew that the Facebook pixel disclosed personal viewing information to Facebook."); *Czarnionka*, 2022 WL 17069810 at *4 (finding sufficient allegation "defendant's disclosures were made knowingly, as [defendant] programmed the Facebook pixel into its website code, knowing that Facebook would receive video titles and the subscriber's FID when a subscriber watched a video.").

Defendant argues that Plaintiff's allegations are not plausible because "Defendant could not have known that the Facebook ID allegedly disclosed identifies Plaintiff because Defendant does not have the data Facebook has to assimilate the Facebook ID with Plaintiff himself." Mot. p. 14. "The VPPA's text does not support [Defendant's] argument." *Feldman*, 659 F. Supp. 3d at 1022. Contrary to Defendant's assertion that it can only be held liable if it was aware of what Facebook could or would do with the information, "the VPPA doesn't care either about whether a person to whom the information is disclosed connects the identity of the viewing-person with his or her video-viewing history, or about what a person to whom information is disclosed does with the information." *Id.* That is because "[t]he connection between a VPPA plaintiff's identity and video-viewing history is established (or not) by determining whether the disclosed information is 'personally identifiable information' under 18 U.S.C. § 2710(a)(3)." *Id*. So, when analyzing the PII element, courts will consider whether the information can be "reasonably understood" as connecting a consumer with her viewing history. *Id.* "But if that question is answered affirmatively . . . that's it." *Id.* Consequently, "a VPPA plaintiff need not allege—to meet the VPPA's 'knowingly' element—that the video tape service provider knew that the person to whom personally identifiable information was disclosed would 'actually connect' the disclosed information." *Id.* Therefore, Plaintiff has sufficiently alleged the knowledge element.

### III. Plaintiff Sufficiently Alleges a Violation of CIPA.

#### A. Elements of liability under Section 631(a)

Under California Penal Code § 631(a) of the California Invasion of Privacy Act ("CIPA"), a defendant is liable if it "aids, agrees with, employs, or conspires" with a third party to eavesdrop on a plaintiff's communications. *See M.H. v. Done Glob Inc.*, No. 24-cv-03040-RFL, 2025 WL 629613, at *2 (N.D. Cal. Feb. 25, 2025). Defendant's motion to dismiss argues that (1) it was a party to the communication and thus cannot be liable for eavesdropping, and (2) Plaintiff has not plausibly alleged that Defendant had knowledge of Facebook's alleged wiretapping. Neither argument has merit.

#### B. The party exception does not shield Defendant from liability because Plaintiff has alleged Defendant aided Facebook in eavesdropping.

Defendant's assertion that it cannot be liable because it was a party to the communication fails as a matter of law. Plaintiff's claim does not rest on the theory that Defendant eavesdropped on its own communications with Plaintiff, but rather Defendant enabled a third party, Facebook, to intercept and access Plaintiff's communications. The Complaint alleges defendant "aided, agreed with, employed, permitted, or otherwise enabled Facebook to wiretap the [California] Subclass members using the Facebook pixel." Compl. ¶ 40.

The party exception does not apply when a defendant secretly allows a third party to eavesdrop on communications between plaintiff and defendant. In *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520–21 (C.D. Cal. 2021), the court rejected defendant's argument that it was shielded by the party exception after it embedded third-party tracking software (FullStory) that intercepted users' communications. Likewise, in *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1083 (C.D. Cal. 2021), defendant was held liable for enabling a third-party's Session Replay software despite being a party to the user's communications. (*Id.*) The same rule applies here: by embedding the Pixel in its Website, Defendant enabled Facebook to wiretap Plaintiff's communications, removing Defendant from the protection of the party exception.

#### C. Plaintiff has adequately alleged Defendant aided or agreed with Facebook's eavesdropping.

California Penal Code § 631(a) prohibits more than just direct wiretapping. The fourth

clause of Section 631(a) also imposes liability on any person who "aids, agrees with, employs, or conspires" with another to intercept communications.

Defendant misstates the standard for liability under the fourth clause. Contrary to Defendant's authorities, *Heiting v. Taro Pharms. United States, Inc.*, 709 F.Supp.3d 1007 (C.D. Cal. 2023) and *Rodriguez v. Ford Motor Co.*, 722 F.Supp.3d 1104 (S.D. Cal. 2024)**,** the better reasoned decisions decline to import the common law definition of "aiding and abetting" into the fourth clause, which notably omits the word "abet" but includes the phrase "agrees with." *Smith v. Yeti Coolers LLC*, 754 F.Supp.3d 933, 942 (N.D. Cal. 2024) citing *Cousin v. Sharp Healthcare*, 681 F.Supp.3d 1117, 1129-30 (S.D. Cal. 2023); *accord Tate v. VITAS Healthcare Corp.*, 762 F.Supp.3d 949, 959 (E.D. Cal. 2025) ("[T]here is no basis to read in a common law standard of aiding and abetting when the statute itself is clear.")

By using the terms "aids" and "agrees with," the California Legislature intended to impose liability against parties who merely *enable* another's wrongdoing. *Cousin*, 681 F.Supp.3d at 1130; *see also Mitchell v. Sonesta Int'l Hotels Corp.,* Case No. CV 24-2603-GW-SSCx, 2024 WL 4471772, at *9-11 (C.D. Cal. Oct. 4, 2024) (declining at pleadings stage to decide whether plaintiff was required to plead the common law elements of "aiding and abetting").

But even if Plaintiff were required to allege Defendant had "knowledge of [Facebook's] unlawful purpose" (Mtn. at 14), Plaintiff's allegations satisfy that standard. Plaintiff alleges:

- Defendant knowingly installed the Pixel on its Website in exchange for receiving valuable information from Facebook about the users of the Website, including demographic information, which allowed Defendant to target ads to users. Compl. ¶ 10.
- The Pixel intercepts communications between Plaintiff and Defendant—i.e., Plaintiff's Facebook ID and the video titles Plaintiff is watching—and transmits that information to Facebook, which Facebook also uses for targeted advertising. Compl. ¶ 11.
- Defendant knew its installation of the Pixel on its Website would result in the disclosure of its users' communications to Facebook. Complaint ¶ 40.

- Neither Defendant nor Facebook obtains the users' prior consent to Facebook's eavesdropping, and the users are unaware the eavesdropping occurs. Compl. ¶¶ 13, 41.
- Defendant's privacy policy fails to disclose that the Website is sharing the user's Facebook ID and video watching history with Facebook. Compl. ¶ 13.
- By means of the Pixel, Facebook willfully reads or learns the contents of Plaintiff's electronic communications, which violates the express terms of Section 631(a). Compl. ¶¶ 37, 39.
- By disclosing Plaintiff's Facebook ID and video watching history to Facebook, Defendant violates Plaintiff's statutorily protected right to privacy. Compl. ¶ 34.

Plaintiff's allegations are sufficient to survive Defendant's motion to dismiss. *M.H. v. Done Glob Inc.*, 2025 WL 629613, is directly on point. There, the plaintiff alleged that the defendant intentionally embedded third-party tracking technology on its website, knowing it would transmit users' communications to the third party to enhance the defendant's marketing. The court found the plaintiff stated a cause of action for "aiding a third party" under Section 631(a). 2025 WL 629613, at *2. Courts have consistently upheld Section 631(a) claims on similar facts. *See Saleh*, 562 F.Supp.2d at 521 (plaintiff adequately alleged that defendant aided the third party's eavesdropping by voluntarily embedding the third party's software which recorded the user's interactions in real time); *see also Heerde v. Learfield Comms., LLC*, 741 F.Supp.3d 849, 861-62 (C.D. Cal 2024) (plaintiffs sufficiently pleaded that defendant was liable for aiding third party eavesdropping by adding a search bar to a website without disclosing their search terms would be disclosed to third parties); *Tate*, 762 F.Supp.3d at 959 (complaint adequately alleged defendant was liable for aiding third party by giving that third party access to plaintiff's communications with defendant); *Mitchell*, 2024 WL 4471772, at, *8-9 (denying motion to dismiss because plaintiff had alleged facts showing that defendant enabled the third party's eavesdropping).

Moreover, Defendant is presumed to know the law. *See Arthur Anderson LLP v. Superior Court*, 67 Cal.App.4th 1481, 1506 (1998). Since Defendant knew Facebook was intercepting

user communications without their consent, Defendant necessarily knew of Facebook's unlawful purpose in violating Section 631(a).

**IV. Plaintiff Requests Leave to Amend**

Leave to amend should be granted unless the court "determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). To the extent the Court determines that Plaintiff has not adequately pled either cause of action, Plaintiff requests leave to amend.

**MOTION TO DISMISS BASED ON FORUM NON CONVENIENS AND TRANSFER**

**V. Defendant's Motion to Dismiss For Forum Non Conveniens, And In The Alternative, Motion to Transfer Should Be Denied**

**A. Defendant has not met its burden to dismiss this action based on forum non conveniens.**

"To prevail on a motion to dismiss based upon *forum non conveniens*, a defendant bears the burden of demonstrating an adequate alternative forum, and that the balance of private and public interest factors favors dismissal." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1244 (9th Cir. 2011); *see also, Ranza v. Nike, Inc.*, 793 F.3d 1059, 1076 (9th Cir. 2015).

The material private interest factors relevant to a *forum non conveniens* analysis are: (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive. *See, e.g., Leuck v. Sustrand Corp.*, 236 F.3d at 1137, 1145 (2001). Public interest factors include: (1) local interest of the lawsuit; (2) burden on local courts and juries; (3) congestion in the court; (4) the costs of resolving a dispute unrelated to the forum; and (5) the court's familiarity with the governing law. *Leuck*, 236 F.3d at 1145.

Pursuant to 28 U.S.C. § 1406(a), if the court determines that venue is improper, the court must either dismiss the action or, if it is in the interests of justice, transfer the case to a district or division in which it could have been brought. Whether to dismiss for improper venue, or

alternatively to transfer venue to a proper court, is a matter within the sound discretion of the district court. *See King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992). "The plaintiff's choice of forum will not be disturbed unless the 'private interest' and 'public interest' factors strongly favor trial in the foreign [venue]." *Antaris Technologies, Inc., et al. v. William E. Matthews, et al.*, 2025 WL 1939868 (N.D. Cal. July 15, 2025) (citing *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2202).) When the plaintiff is a U.S. citizen or resident, the "defendant must satisfy a heavy burden of proof," such that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Dada v. NSO Grp. Techs. Ltd.*, 2025 WL 1879527, at *2 (9th Cir. July 8, 2025)

**1. The private interest factors militate in favor of Plaintiff**

**a. The relative ease of access to sources of proof is at best neutral**

Defendant erroneously claims that the relative ease of access to sources of proof weighs in its favor. In particular, Defendant argues that all of Plaintiff's sources of proof are electronic and thus easily transferable, while suggesting that its own evidence—also electronic—is located on servers in Florida. The distinction is illusory. Both parties rely on electronic sources of proof, which are equally portable. Defendant suffers no prejudice because its unidentified sources of proof are in Florida as opposed to California.

Courts in the Northern District have acknowledged the realities of modern technology when evaluating the private interest factors in a motion to dismiss based on forum non conveniens.[2] Less than a month ago, Judge Seeborg rejected these same arguments regarding sources of proof, stating, "[i]n the digital age, access to evidence or even witnesses from a different state does not impose a large burden on the parties. *Antaris Technologies, Inc. v. Williams E. Matthews, et al.*, Case No. 25-cv-04048-RS, 2025 WL 1939868, *4 (N.D. Cal. July 15, 2025).

District courts across this country have taken a similar view. In denying the defendant's

[2] See also, "*Zooming Our Way Out Of The Forum Non Conveniens Doctrine*," Columbia Law Review, by Christabel Narh, April 2023, pp. 7-10; see also, "*The Zoom Paradox: Schrodinger's Witness*," by Christopher J. Vidrine, Louisiana Law Review, Fall 2021, pp. 6-9.

motion to dismiss, the district court in *Lynn v. Becton Dickinson and Company*, 2022 WL 610819, at *3 (S.D. Ohio March 2, 2022) stated:

> Since documents can normally be easily copied and, when they must be reviewed before copying that review is usually conducted by counsel, the location of documents is frequently only a minor consideration. Indeed, if the parties exchange documents electronically (even those originally existing only in hard copy), as is standard litigation practice in the year 2022, the documents' original location is irrelevant. Electronic production of documents requires the same amount of time and resources regardless of whether the documents originate or are received in Ohio or Utah.

*Id*. (citations omitted). Indeed, Defendant, a Florida corporation, is being defended by attorneys based in Los Angeles, California. In responding to discovery, Defendant will retrieve any electronic sources of proof that may be in Florida and transmit them to its attorneys in California.

Defendant's desired forum, the Southern District of Florida, took a similar view in *Fruitstone v. Spartan Race Inc.*, 464 F. Supp. 3d. 1268 (S.D. Fla. 2020), where it reasoned that the location of documents was "virtually irrelevant" when the defendant failed to identify any particular prejudice that may arise from having to produce documents from outside the forum. *Id*. at 1283. In short, the parties can easily transmit electronic sources of proof in the discovery process, which imposes no burden on either party. This factor is neutral.

**b. The availability of a compulsory process for unwilling witnesses weighs in favor of Plaintiff**

Regarding the second and third factors, Defendant argues that Plaintiff is the only California-based witness. Defendant claims that most factual witnesses will be based in Florida, and it will cost more to produce them in the litigation. Preliminarily, the Court should note that Defendant has identified no unwilling witnesses in Florida. *See, e.g., Antaris Technologies*, *supra*, 2025 WL 1939868, at *4 (N.D. Cal. July 15, 2025) ("Defendants do not identify unwilling witnesses located outside the forum."); *Williams v. Bowman*, 157 F.Supp.2d 1103, 1108 (N.D. Cal. 2001) (a defendant seeking to transfer a case must name witnesses, identify where they are located, and explain their anticipated testimony and relevance). In fact, besides Defendant's CEO, who is presumably based in Florida, the only other witness it has identified is its Chief Technology Officer, Lou Mazzucchelli. Mr. Mazzucchelli executed his declaration from

Madison, Connecticut. Mr. Mazzucchelli's LinkedIn profile page lists him as residing in Providence, Rhode Island. See, https://www.linkedin.com/in/loumazzucchelli/. Regardless of whether he is in Connecticut or Rhode Island, he is certainly not in Florida.

Similar to the location of sources of proof, courts have assigned little weight to the location of witnesses given the widespread availability of video conferencing and Zoom depositions. In citing a Ninth Circuit decision, the district court in *Ganpat v. Eastern Pacific Shipping PTE, Ltd.*, 2022 WL 219052, at *2 (E.D. La. Jan. 25, 2022) reasoned:

> The location of witnesses similarly carries little weight given the widespread availability of video conferencing. Indeed, '[I]n this age of robust video conferencing technology, one would expect relative travel costs to be a non-issue, regardless of the precise number of witnesses present in either locale.' This statement rings even more true in 2022, in the age of Covid-19, when persons and institutions throughout the world, including this Court, have amassed experience in conducting business via ZOOM and similar video conferencing technologies.

*Id*. (quoting *Salebuild, Inc. v. Flexisales, Inc.*, 633 F.App'x 641, 643 (9th Cir. 2015).)

Defendant's assertion that the Southern District of Florida has a less burdensome compulsory process rings hollow for several reasons. First, courts have recognized that video conferencing and remote depositions make witnesses more likely to comply with deposition subpoenas. *Leukemia & Lymphoma Society, Inc v. Walter and Eliza Hall Institute of Medical Reserch.*, 2024 WL 3876353, at *14, fn. 11 (S.D.N.Y. 2024) ("Alternatively, although Dr. Clark could not be compelled to testify at trial here, he could nonetheless provide testimony through live video conference."); *Metito (Overseas) Ltd. v. Gen. Elec. Co.*, 2006 WL 3230301, at *6 (S.D.N.Y. Nov. 7, 2006) ("[C]ourts…have recognized that modern technologies can make the location of witnesses and evidence less important to forum non conveniens analysis…."); *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000) ("[T]he unavailability of process over third-party witnesses does not compel transfer where the practical alternative of offering videotaped or deposition testimony of a given witness exists.")

Second, Defendant speculates that there is a greater likelihood of an unwilling witness residing in Florida, which would require Plaintiff to domesticate subpoenas. Defendant concludes this would unnecessarily tax the Southern District of Florida's resources. This argument is purely conjectural. Defendant has not identified any non-party witnesses that may resist service of

process. In contrast, the only non-party witness Plaintiff anticipates deposing would be Meta, which is headquartered in this judicial district. In the unlikely scenario that Meta refuses to comply with a valid subpoena, this Court's compulsory process should be sufficient to ensure Meta's compliance. *See Ervin v. California Network Management, Inc.*, 2025 WL 1509151, at *7 (E.D. Wash. May 27, 2025) ("Neither party has identified potential witnesses who might refuse to testify. This factor is therefore neutral.").

Lastly, it bears mentioning that Defendant's counsel is based in Los Angeles, California and represents Defendant, which is based in Miami, Florida. This fact alone highlights that both Parties can easily rely on modern technology to litigate this case in the Northern District of California. If Defendant needs to compel an unwilling witness, it can rely on this Court's compulsory process. Thus, the balancing of this interest weighs in favor of Plaintiff.

**c. Defendant has offered no evidence that a judgment is easier to enforce in Florida versus California**

Defendant argues that this factor weighs in its favor because it would easier to enforce a judgment in Florida. Defendant ignores that federal court judgments are enforceable under 28 U.S.C. § 1963, which allows a judgment entered in one federal district court to be registered in another federal district court by filing a certified copy of the judgment. 28 U.S.C. § 1963. This statute ensures uniformity across the states so enforcement of federal judgments is largely consistent regardless of the state. While enforcement procedures do vary across states, Defendant has offered no comparative analysis that would allow it to conclude it would be easier to enforce a judgment in Florida as opposed to California. In any event, were Plaintiff forced to enforce the judgment, he would likely retain counsel that specializes in collections. At best, this factor is neutral.

**d. The Northern District does not present any practical problems warranting dismissal**

Defendant does not present any practical problems posed by this case being litigated in the Northern District of California. Defendant simply rehashes arguments about other factors that Plaintiff has already shown lack merit.

**2. The public interest factors do not favor Defendant**

Ninth Circuit courts analyze the following public interest factors: (1) local interest of the lawsuit; (2) the court's familiarity with governing law; (3) the burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to the forum. *Lueck v. Sunstrand Corp*, 236 F.3d 1137, 1147 (9th Circ. 2001).

Addressing the first factor, which concerns the local interest of the lawsuit, Defendant asserts the interests are even. Not so. California has a strong local interest in seeking to protect the privacy rights of its citizens from an out-of-state corporation invading their privacy. *See, e.g., Antaris Technologies*, *supra*, 2025 WL 1939868, at *4 ("California has a strong interest in applying its trade secret laws to protect against misappropriation of trade secrets and in preventing torts committed within its borders."). Further, California has a strong interest based on Plaintiff's state law claim under CIPA. *Antaris Technologies*, *supra*, at *4 ("In addition, Plaintiffs' claims are brought in part under California law, favoring this forum slightly over one in Alabama.").

Defendant only obliquely addresses the other factors. Regarding the second factor, given that California has more tech companies headquartered in the state, and especially within this judicial district, the Northern District of California is more familiar with VPPA claims than the Southern District of Florida. Likewise, Plaintiff filed a CIPA claim and the Northern District is undeniably better equipped to evaluate a claim under California law than the Southern District of Florida. A search of Eleventh Circuit court cases reveals that no court in that Circuit has even *mentioned* the California Invasion of Privacy Act or its acronym in an opinion.

Defendant otherwise makes conclusory statements regarding other recognized public interest factors. It has provided no evidence that litigating this case in the Northern District will impose any undue burden on local courts or the jury pool. It has provided no evidence or argument that there is any congestion in the Northern District of California that makes the Southern District of Florida more convenient. Likewise, Defendant provides *nothing* about the costs of resolving the dispute in an unrelated forum, likely because California *is* related and presents no additional costs to Defendant other than the possibility of travel, if video conferencing is unavailable, which it is.

In sum, Defendant has not met its burden to warrant dismissal for forum non conveniens.

### B. Defendant has not met its burden to transfer this action to the Southern District of Florida

28 U.S.C. § 1404 states, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district where it might have been brought or to any district or division to which all parties have consented. *Id*. District courts have broad discretion whether to grant section 1404(a) transfer motions, but must apply an "individualized, case-by-case consideration of convenience and fairness" when adjudicating such motions. *Stewart Org v. Ricoh Corp*., 487 U.S. 22, 29 (1988).

In a motion to transfer, the "burden is on the moving party to establish that transfer will allow a case to proceed more conveniently and better serve the interests of justice." *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1131 (C.D. Cal. 2009). Analysis under section 1404 is twofold. The defendant must first establish that the matter "might have been brought" in the district to which transfer is sought. 28 U.S.C. § 1404(a). Establishing that the case "might have been brought" in the transferee forum "includes demonstrating that subject matter jurisdiction, personal jurisdiction, and venue would have been proper if the plaintiff had filed the action in the district to which transfer is sought." *Metz v. U.S. Life Ins. Co.*, 674 F. Supp. 2d 1141, 1145 (C.D. Cal. 2009).

If the case might have been brought in the transferee forum, the Court must then consider whether transfer is proper in light of the "convenience of parties and witnesses [and] in the interests of justice." 28 U.S.C. § 1404(a). The Ninth Circuit has identified several factors (the "*Jones* factors") that district courts may consider: "(1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).

### 1. Plaintiff's choice of forum is convenient and entitled to deference

When a domestic plaintiff initiates litigation in a home forum, it is presumptively convenient. *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1227 (9th Cir. 2011) ("There is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum.") (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981).) "[G]reat deference is due plaintiffs because a showing of convenience by a party who has sued in his home forum will usually outweigh the inconvenience the defendant may have shown." *Contact Lumber Co. v. P.T. Moges Shipping Co., Ltd*., 918 F.2d 1446, 1449 (9th Cir. 1990).

Here, Defendant first addresses the third factor, choice of forum, arguing "most of the operative facts" took place in the Southern District of Florida. Plaintiff, therefore, is not entitled to deference. (Opp., pp. 7-8.) This argument ignores the most important facts supporting deference. Plaintiff has filed his action in the judicial district where he resides, which makes his choice of forum "presumptively convenient." *Carijano* at 1227. Plaintiff alleges he accessed the website while in this district. The resulting injury occurred in this district. Meta—the company to which Defendant transmitted Plaintiff's PII—is also headquartered and received Plaintiff's PII in this district. (Complaint ¶ 7.) Notwithstanding some of the operative facts occurring in the Southern District of Florida, Plaintiff has filed his action in his home district, where many of the operative facts occurred, and his choice of forum is accordingly entitled to "great deference." *Contact Lumber* at 1449.

### 2. Defendant rehashes its unsupported arguments regarding convenience of the parties, witnesses and sources of proof

Defendant simply rehashes its unsupported forum non conveniens arguments, specifically the factors of convenience for the parties, compulsory process and sources of proof. Defendant offers no evidence in support of any of its conclusions and only obliquely identifies that web developers may be witnesses. Plaintiff otherwise refers the Court to arguments made in sections V.1-2 that modern technology has made geographical concerns regarding sources and proof and witness participation "largely irrelevant."

**3. This VPPA/CIPA action is not governed by Florida law**

In arguing that the Southern District is more acquainted with Florida law, Defendant mischaracterizes its Terms and Conditions' "Governing Law" provision as a forum-selection clause. (Bergonzoli Decl, Ex. C.) Importantly, it states, "[t]hese Terms shall be governed and construed in accordance with the laws of Florida, United States, without regard to conflict of law provisions." (*Id.*) This is a narrow governing law provision that is limited to claims arising from or relating to the contract itself, not independent statutory claims like the VPPA. The VPPA is a federal statute, and its application is not controlled by a contract's governing law unless the VPPA claim is contractually waived or limited, which it is not. The Northern District of California can adjudicate a VPPA claim and Plaintiff's CIPA claim under California law. This factor favors Plaintiff.

**4. Local interest in the controversy favors Plaintiff**

The Northern District of California has a stronger local interest than the Southern District of Florida. Defendant insists that all the unlawful conduct occurred in Florida. Plaintiff, however, is a citizen of California, a resident in this judicial district, he accessed Defendant's website from within this district, his privacy rights were violated by Defendant in this judicial district, and Defendant transmitted his PII to a third-party in this judicial district in Meta. This district has more than a strong connection to the underlying facts. *Carolina Cas. Co. v. Data Broadcasting Corp.*, 158 F.Supp.2d 1044, (N.D. Cal. 2001) ("[P]laintiff has shown that this district has some connection to the underlying dispute. For that reason, the court must give some deference to Plaintiff's choice of forum.") There is no other court that has *more* of a local interest than the Northern District of California.

Moreover, California has a stronger interest than Florida as evidenced by its more robust privacy laws. In 2018, California passed the California Consumer Privacy Act (CCPA), and its amendment/expansion in 2020, the California Privacy Rights Act (CPRA), Cal. Civ. Code § 1798.100. Both acts afford a private right of action. Cal. Civ. Code § 1798.150. Moreover, both acts are enforced by the California Privacy Protection Agency (CPPA), the first agency in the United States dedicated to enforcing privacy laws. In contrast, only recently in 2023 did Florida

pass a Digital Bill of Rights (FDBR). Florida Statutes § 112.23. It does not provide a private right of action, rather it is enforced by the Florida Attorney General. The FDBR is much narrower and applies only to large businesses—those with over $1 billion in revenue and data practices meeting specific criteria. *Id.*[3] California's threshold for businesses subject to the CCPA/CPRA is $25 million in gross annual revenue. California clearly has a stronger local interest in protecting its citizens' privacy rights than Florida. This factor weighs in favor of Plaintiff and against transfer.

**5. Relative court congestion is neutral**

Defendant essentially concedes that neither the Northern District of California nor the Southern District of Florida is more or less congested than the other. This factor is neutral.

Defendant has not met its burden of proof to warrant dismissal of this action based on forum non conveniens or to transfer this action to the Southern District. Defendant has not identified a private or public interest factor that weighs in its favor that would overcome the strong deference shown to Plaintiff's choice of forum here in the Northern District of California. The Court should deny Defendant's motion to dismiss for forum non conveniens, and deny Defendant's alternative motion to transfer this action to the Southern District of Florida.

## VI. Conclusion

Based on the foregoing, the Court should deny Defendant's Motions to Dismiss pursuant to Rule 12(b)(1) and 12(b)(6). Likewise, the Court should deny Defendant's Motion to Dismiss for Forum Non Conveniens, and in the alternative, Motion to Transfer.

Dated: August 8, 2025

WYNNE LAW FIRM

By: */s/Edward J. Wynne*
Edward J. Wynne
George R. Nemiroff
Attorneys for Plaintiff
Nick Balestrieri

[3] https://www.flsenate.gov/Committees/BillSummaries/2023/html/3069