Peter K. Chu (SBN 251705)
Peter.Chu@wilsonelser.com
Jura C. Zibas (SBN 217864)
*Jura.Zibas@wilsonelser.com*
**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
555 South Flower Street, Suite 2900
Los Angeles, California 90071
Telephone: (213) 443-5100
Facsimile: (213) 443-5101

Attorneys for Defendant
SPORTSEDTV, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NICK BALESTRIERI, individually and on behalf of all others similarly situated,<br>Plaintiff,<br>v.<br>SPORTSEDTV, INC., and DOES 1 through 10, inclusive,<br>Defendants. | Case No.: 3:25-cv-04046-SK<br>Hon. Sallie Kim, presiding<br>Courtroom C – 15th Floor,<br>San Francisco Courthouse<br><br>Complaint filed: May 9, 2025<br><br>**DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT PURSUANT TO FRCP 12(b)(1) AND 12(b)(6) AND MOTION TO DISMISS COMPLAINT FOR FORUM NON CONVENIENS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**<br><br>Date: September 15, 2025<br>Time: 9:30 a.m.<br>Courtroom: Courtroom C – 15th Floor via Zoom |

**TABLE OF CONTENTS**


**Page**

I. INTRODUCTION ..... 1

II. THIS COURT SHOULD TAKE JUDICIAL NOTICE, ESPECIALLY THE WEBPAGES FROM META'S WEBSITES ON META PIXEL. ..... 2

III. THE 12(B)(1) MOTION SHOULD BE GRANTED BECAUSE PLAINTIFF DOES NOT ALLEGE DEFENDANT DISCLOSED PII IN VIOLATION OF THE VPPA. ..... 3

A. Plaintiff Does Not Allege Defendant Knowingly Transmitted His PII. ..... 4

B. Plaintiff Does Not Allege the Injury He Suffered Is Particularized. ..... 5

C. Plaintiff Alleges Facebook Obtained Plaintiff's Information by Wiretapping. ..... 7

D. Plaintiff Does Not Allege a Causal Connection Between Plaintiff's Harms and Defendant's Conduct. ..... 7

IV. THIS COURT SHOULD GRANT DEFENDANT'S 12(b)(6) MOTION TO DISMISS THE VPPA CLAIM ..... 8

A. Defendant Could Not Disclose Plaintiff's PII. ..... 9

*a.* *Consumers' Identity.* ..... 9

*b.* *Identity of the Videos* ..... 9

*c.* *Requested or Obtained* ..... 10

B. Plaintiff Fails to Allege Defendant Knowingly Transmitted PII. ..... 10

IV. THIS COURT SHOULD GRANT DEFENDANT'S 12(b)(6) Motion TO DISMISS THE CIPA CLAIM. ..... 11

V. BASED ON FORUM NON CONVENIENS DOCTRINE, THIS COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT ..... 12

A. The Analysis of the Private Interests Factors Favors Dismissal. ..... 13

a. Factor 1: the relative ease of access to sources of proof ..... 13

b. Factor 2: the availability of compulsory process for unwilling witness ..... 13

c. Factor 5: the ability to enforce any judgment eventually obtained ..... 13

d. all other practical problems that make trial of a case easy, expeditious and inexpensive. ..... 14

B. The Public Interest Factors Also Favor Dismissal. ..... 14

VI. IF NOT A DISMISSAL, THIS COURT SHOULD TRANSFER THIS CASE TO FLORIDA WHERE DEFENDANT IS LOCATED. ........ 15

VII. CONCLUSION ........ 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brown v. Google LLC*, (N.D.Cal. 2021) 525 F. Supp. 3d 1049 ........ 3

*Cantu v. Tapestry, Inc.*, (S.D. Cal. July 10, 2023) No. 22-CV-1974-BAS-DDL, 2023 WL 4440662 ........ 3, 6

*Dole Food Co., Inc. v. Watts*, (9th Cir. 2002) 303 F.3d 1104 ........ 13

*Eichenberger v. ESPN, Inc.*, (9th Cir. 2017) 876 F.3d 979 ........ 3, 6, 7, 8, 11

*Freeland v. Nippon Steel Corp.*, (N.D.Cal. June 20, 2025, No. 25-cv-01240-EKL) 2025 U.S.Dist.LEXIS 117994........ 6, 7

*FTC. v. Watson Pharmaceuticals, Inc.*, (C.D. Cal. 2009) 611 F.Supp.2d 1081 ........ 16

*Gulf Oil Corp. v. Gilbert*, (1947) 330 U.S. 501........ 14

*Harris v. Pub. Broad. Serv.*, (N.D.Ga. 2023) 662 F. Supp. 3d 1327 ........ 11

*In re Ambry Genetics Data Breach Litig.*, (C.D.Cal. 2021) 567 F. Supp. 3d 1130 ........ 4

*In re Hulu Privacy Litigation*, (N.D.Cal., 2012) 2012 U.S. Dist. LEXIS 80601, 2012 WL 2119193 ........ 4, 8, 9, 10, 11

*Jewel v. National Security Agency*, (9th Cir. 2011) 673 F.3d 902 ........ 4

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000) ........ 15, 16

*Laguardia v. Designer Brands, Inc.*, (S.D. Cal. 2020) 2020 WL 2463385 ........ 16

*Lueck v. Sundstrand Corp.*, (9th Cir. 2001) 236 F.3d 1137 ........ 13

*McCarthy v. United States*, (9th Cir. 1988) 850 F.2d 558……...8

*Mendoza v. Microsoft Inc.*, (W.D.Wash. Sep. 11, 2014, No. C14-316-MJP) 2014 U.S.Dist.LEXIS 127736 ........ 4

*Mollett v. Netflix, Inc.*,
(9th Cir. 2015) 795 F.3d 1062 .......... 4, 15

*Preminger v. Peake*,
(9th Cir. 2008) 536 F.3d 1000 .......... 6

*Rodriguez v. Ford Motor Co.*,
(S.D.Cal. 2024) 722 F. Supp. 3d 1104 .......... 12

*Solomon v. Flipps Media, Inc.*,
(2d Cir. 2025) 136 F.4th 41 .......... 5, 9

*Stewart Org., Inc. v. Ricoh Corp.*,
(1988) 487 U.S. 22 .......... 15

**Statutes**

18 U.S.C. § 2710 .......... 9

18 U.S.C. § 2710(a)(3) .......... 4, 6

18 U.S.C. § 2710(b)(1) .......... 10

18 U.S.C. § 2710(c)(3) .......... 3

28 U.S.C. § 1404(a) .......... 15

**Rules**

Fed. R. Civ. P. 12(b)(1) .......... 1, 16

Fed. R. Civ. P. 12(b)(6) .......... 1, 2, 17

**Other Authorities**

https://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=202520260SB690 .......... 14

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Nick Balestrieri filed this copycat complaint alleging Defendant SportsEdTV, Inc. violated Video Privacy Protection Act ("VPPA Claim") and California Invasion of Privacy Act ("CIPA Claim"). Plaintiff pled few facts, mostly reciting the statutory language and providing conclusory statements. Defendant filed a motion to dismiss the VPPA Claim for a lack of subject matter jurisdiction under Rule 12(b)(1) ("12(b)(1) Motion") and also a motion to dismiss the VPPA Claim and the CIPA Claim under Rule 12(b )(6) ("12(b)(6) Motion"); Defendant also seeks to dismiss the Complaint pursuant to the forum non conveniens doctrine or, in the alternative, a motion to transfer venue to Florida where Defendant has its principal place of business (the "Venue Motion").

In the Opposition to Defendant's motions,[1] rather than exhausting himself string-citing 77 cases, 20 outside the Ninth Circuit, Plaintiff could have simply provided the personally identifiable information ("PII") on his Facebook page that he alleges Defendant transmitted to Facebook. That Facebook page should be presently available only to Plaintiff, if his allegations are accurate. Plaintiff does not.

The essential element of the VPPA Claim is defendant's disclosure of statutory "personally identifiable information" ("PII"). In the Opposition to the 12(b)(1) Motion, Plaintiff contends that Defendant's disclosure of PII in violation of the VPPA is sufficient to meet the requirement under Article III standing. On its face, Plaintiff alleges in his Complaint that it is the Facebook pixel that transmits the PII. Further, Defendant cannot disclose Plaintiff's PII because Defendant does not have access to Plaintiff's Facebook ID contained in the c_user cookie placed on Plaintiff's computer by Facebook. Plaintiff also fails to provide support to an allegation that Defendant knowingly transmitted Plaintiff's PII when Defendant has no access to Plaintiff's Facebook ID, ensconced in c_user cookie, accessibly only to Facebook. Therefore, Plaintiff cannot survive the 12(b)(1) Motion as Plaintiff does not plead that Defendant disclosed his PII in violation of VPPA.

---

[1] Plaintiff confuses 12(b)(1) motion by titling his brief as opposition to 12(b)(2) on the caption.

In addition, this Court also should grant the 12(b)(6) Motion to dismiss the VPPA Claim because Plaintiff fails to allege facts to support that Defendant knowingly transmitted PII.

Plaintiff also fails to state the CIPA Claim under Rule 12(b)(6) for aiding and abetting because Plaintiff does not allege Defendant had knowledge of Facebook's allegedly wrongful conduct with the information Facebook collects with its Facebook pixel.

Finally, this Court should dismiss this Complaint against a Florida corporation, which required its users to submit to the laws of Florida, under the doctrine of forum non conveniens or, in the alternative, transfer this case to Florida where Defendant resides.

## II. THIS COURT SHOULD TAKE JUDICIAL NOTICE, ESPECIALLY THE WEBPAGES FROM META'S WEBSITES ON META PIXEL.

This Court should take judicial notice of Exhibits A through G, as requested by Defendant in the Request for Judicial Notice ("RJN"). First and foremost, just as Plaintiff relied mostly on conclusory allegations in the Complaint, Plaintiff makes an inaccurate statement that "Defendant tacitly admits the sufficiency of the allegations in the Complaint by relying on extrinsic evidence from multiple declaration." (Opposition, *1:23-26.) With that one sentence, Plaintiff wants to eviscerate the jurisprudence on judicial notice. The extrinsic evidence via means of exhibits is needed because Plaintiff fails to provide adequate facts in the Complaint.

With the Exhibits F and G, Plaintiff objects on the ground that Meta (or "Facebook") may have provided different documents on the Facebook pixel's functionality. As with the Complaint, Plaintiff has no logical or documentary basis to argue that Meta will provide technical documents to its user that are different from what it provides on the website, thereby, intentionally exposing itself to lawsuits for false advertising. Exhibit E is the code Plaintiff pled that Defendant installed (Compl., ¶¶3, 9) to explain what Plaintiff himself could have provided, but did not.

With respect to the webpages and screenshots from Defendant's website https://sportsedtv.com/ (the "Website"), especially of the Terms of Use and Privacy Policy, they state that they were effective as of November 15, 2021 and July 17, 2018, respectively. Plaintiff makes a vague allegation that the statute of limitations commenced on the date the Complaint was filed, on May 9, 2025. The statute of limitations for the VPPA claim is 2 years (18 U.S.C.

§2710(c)(3) and for the CIPA Claim is one year. (*Brown v. Google LLC* (N.D.Cal. 2021) 525 F. Supp. 3d 1049, 1069.). That means these pages were effective, several years before the statute of limitations for the VPPA or CIPA began to toll. Further with respect to the Privacy Policy (RJN, Exh. D.), Plaintiff brings the issue of the availability and the terms of Defendant's privacy policy in the Complaint. In fact, Plaintiff specifically makes a claim, erroneously, that the Privacy Policy "makes no mention of the fact that the Website shares the user's Facebook ID and the video titles the user has watched with Facebook," which forms the basis of Plaintiff's Complaint. Therefore, the webpages from Defendant's Website are incorporated by reference in the Complaint.

In sum, this Court should take judicial notice of Exhibits E, F, and G, in addition to the webpages from Defendant's Website, including Exhibit D, Privacy Policy. Further, this Court may consider the Exhibits A through G, and the Declarations by Victor Bergonzoli and Lou Mazzucchelli, as well as by Peter K. Chu ("Chu Decl.," submitted for authentication purpose only) for ruling on 12(b)(1) Motion. (*McCarthy v. United States* (9th Cir. 1988) 850 F.2d 558, 560.)

## III. THE 12(b)(1) MOTION SHOULD BE GRANTED BECAUSE PLAINTIFF DOES NOT ALLEGE DEFENDANT DISCLOSED PII IN VIOLATION OF THE VPPA.

This Court should grant Defendant's 12(b)(1) Motion because Plaintiff does not allege Article III standing. Plaintiff's main argument in the Opposition is that simply alleging Defendant violated the VPPA is sufficient to meet Article III standing. However, Plaintiff himself cites several cases that state that Plaintiff must also plead **facts** that Defendant has disclosed PII in violation of the VPPA to show he suffered harms for the purpose of the Article III standing requirement. (Opposition, *6-7, citing *Cantu v. Tapestry, Inc.* (S.D. Cal. July 10, 2023) No. 22-CV-1974-BAS-DDL, 2023 WL 4440662, at *4; *Eichenberger v. ESPN, Inc.* (9th Cir. 2017) 876 F.3d 979, 983.) That means Plaintiff must still plead facts that Defendant disclosed Plaintiff's PII that violates the VPPA, in order to meet the "injury in fact" requirement under Article III standing. Furthermore, in spite of Plaintiff's convoluted argument on the difference between constitutional and statutory standing, (Opposition, *8 – 11), Defendant does not contend that Plaintiff demonstrates that "Defendant's conduct is in fact unlawful (Id., *9:4-7) or that "whether the precise disclosure is actionable under the VPPA." (Id., *9:19-22.) Even a modestly careful reading

of the Complaint demonstrates that Plaintiff does not plead that Defendant disclosed Plaintiff's PII, in and of itself, in violation of the VPPA, not whether the disclosure is actionable.

A plaintiff in a VPPA action must allege that: (1) a defendant is a "video tape service provider," (2) the defendant disclosed "personally identifiable information" concerning any customer" to any person, (3) the disclosure was made **knowingly,** and (4) the disclosure was not authorized by section 2710(b)(2)." (*Mollett v. Netflix, Inc.* (9th Cir. 2015) 795 F.3d 1062, 1066 [emphasis added].) In addition, the VPPA defines "personally identifiable information" to "include[] information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." (18 U.S.C. § 2710(a)(3).) To survive an attack on the standing, Plaintiff must offer more than mere "broad conclusory statements and formulaic recitations of the VPPA statues but must allege facts to support their allegation that Defendant allegedly retained and disclosed personally identifiable information, for example when the disclosures occurred." *Mendoza v. Microsoft Inc.* (W.D.Wash. Sep. 11, 2014, No. C14-316-MJP) 2014 U.S.Dist.LEXIS 127736, at *7 [citing *Jewel v. National Security Agency* (9th Cir. 2011) 673 F.3d 902, 908; *In re Ambry Genetics Data Breach Litig.* (C.D.Cal. 2021) 567 F. Supp. 3d 1130, 1140 [citing *Lujan,* 504 U.S. at 560] [even at the pleading stage, the plaintiff must support its allegations with fact, not merely legal conclusions]; *In re Hulu Privacy Litigation* (N.D.Cal., 2012) 2012 U.S. Dist. LEXIS 80601, 2012 WL 2119193, *8].) Here, Plaintiff's merely conclusory statement is not sufficient to confer Plaintiff with Article III standing. In fact, Plaintiff's own allegations contradict his conclusory statement.

## A. <u>Plaintiff Does Not Allege Defendant Knowingly Transmitted His PII.</u>

Even a modestly careful reading of the Complaint demonstrates Plaintiff does not satisfy the Ninth Circuit's requirement to meet Article III standing. In Paragraph 1 of the Complaint, Plaintiff alleges nothing more than a broad conclusory statement that Defendant violated the VPPA and CIPA "by knowingly disclosing to a third party, Meta Platforms, Inc. ("Facebook"), the personally identifiable information and video-watching history of users of its SportsEdTV.com website (the "Website".) (Compl., ¶1.) However, in the rest of the Complaint, Plaintiff alleges the only act knowingly completed by Defendant is to install the Facebook pixel, which Plaintiff asserts

transmitted the PII to Facebook throughout the Complaint. (Comp., ¶¶ 10, 3, 9, 11, 12, and 39.)

Plaintiff affirms that it is the Facebook pixel that "collects the user's Facebook ID (by reading a cookie on the user's computer labeled "c_user") and transmits that information to Facebook." (Comp., ¶11.) In other words, Plaintiff knows that the Facebook pixel transmits the Facebook ID to Facebook, not Defendant. Plaintiff admits that Defendant only "**caused** the Facebook IDs of Plaintiff" to be disclosed to Facebook" simply by installing the Facebook pixel. (Compl, ¶30 [emphasis added].) Defendant did not know, even if true, which Defendant denies, that Facebook pixel disclosed Plaintiff's Facebook ID and his viewing history to Facebook. Plaintiff, in fact, configured the Facebook pixel to collect the referrer URL only. (See Declaration of Lou Mazzucchelli, ("Mazzucchelli Decl."), ¶¶7-8, Exh. E; Chu Decl., Exh. G.) As such, Plaintiff contradicts his own conclusory statement that Defendant disclosed Plaintiff's PII.

Plaintiff's own allegations also support the fact that Defendant could not collect and transmit Plaintiff's Facebook ID. He plead that "[w]hen a Facebook user is logged into Facebook and accesses videos on the Website, **the Facebook pixel collects the user's Facebook ID** (by reading a cookie on the user's computer labeled "c_user") and transmits that information to Facebook." (Id., ¶11 [emphasis added].) Further, according to Plaintiff's own allegation of facts, the access to Plaintiff's Facebook ID is not available unless (1) Plaintiff first logs into his Facebook account; and (2) the cookie labeled "c_uers" is read by Facebook. (Id.; see also Rule 12(b)(1) Motion, *9:27 – 10:6, citing *Solomon v. Flipps Media, Inc.* (2d Cir. 2025) 136 F.4th 41, 45.) It is Facebook that places the c_user cookie and only Facebook can read the content of the c_user cookie, with an additional condition that Plaintiff logs on to his Facebook account before watching any video on Defendant's Website. (Id.)

In sum, Plaintiff does not allege that Defendant disclosed, or is even capable of disclosing PII, in violation of the VPPA for Plaintiff to suffer any harms because Defendant has no access to Plaintiff's Facebook ID, as pled by Plaintiff himself in the Complaint.

**B. <u>Plaintiff Does Not Allege the Injury He Suffered Is Particularized.</u>**

Notwithstanding Plaintiff's contention that a disclosure of PII in violation of the VPPA meets injury in fact requirement under Article III standing without alleging additional harm,

Plaintiff contention, and the authoritative cases he cites, do not support the requirement that the harms he suffered by the disclosure of PII in violation of the VPPA eliminates the constitutional requirement for pleading injury in fact without mores.

To satisfy the injury in fact requirement under Article III standing, the law is clear that "a grievance that amounts to nothing more than an abstract and generalized harm to a citizen's interest in the proper application of the law does not count as an 'injury in fact.' And it consequently does not show standing." (*Freeland v. Nippon Steel Corp.* (N.D.Cal. June 20, 2025, No. 25-cv-01240-EKL) 2025 U.S.Dist.LEXIS 117994, at *4-5.) A particularized injury requires that the injury "has affected the plaintiff in a 'personal and individualized way.'" (*Preminger v. Peake* (9th Cir. 2008) 536 F.3d 1000, 1005.) A "generalized grievances" is prohibited because it "primarily serves to prevent federal courts from issuing advisory opinions — a role not contemplated by the Constitution." (*Freeland, at *6.*) *Cantu v. Tapestry, Inc.* cited by Plaintiff drives home this point. The court in *Cantu* concluded that a consumer's allegation that when the plaintiff pleads facts that his data has been impermissibly disclosed in violation of the VPPA, "the **concreteness** requirement for Article III standing is satisfied." (*Cantu v. Tapestry, Inc*. (S.D.Cal. July 10, 2023, No. 22-cv-1974-BAS-DDL) 2023 U.S.Dist.LEXIS 118474, at *10, citing *Eichenberger v. ESPN* (9th Cir. 2017) 876 F.3d 979, 983.) However, the *Cantu* court is completely silent on whether said disclosure also satisfies the requirement for a particularized injury. In other words, the *Cantu* does not subsume both the concreteness requirement and the requirement for "particularized" harm for the injury-in-fact analysis.

Here, Plaintiff does not allege Article III standing because Plaintiff does not allege the injury he allegedly suffered was particularized. Plaintiff merely seeks a generalized grievance only. Plaintiff pled a general allegation that "if a **Website user** who is interested in basketball watches the SportsEdTV video entitled 'Signature Move Series—Tim Hardaway's Killer Crossover,' the Facebook pixel transmits that video title along with the user's Facebook ID to Facebook." (Compl., ¶12 [emphasis added].) The PII requires a disclosure of the information that identifies a person, as well as the information on the video requested by that person. (18 U.S.C. §2710(a)(3). However, Plaintiff does not identify a single video he watched from Defendant's

Website and makes only a generalized allegation affecting an unknown, unidentified user. Plaintiff does not allege that Defendant's alleged conduct "has affected the plaintiff in a 'personal and individualized way.'" In sum, Plaintiff "does not consequently show [Article III] standing" because he merely alleges a hypothetical and generalized grievance only. (*Freeland,* at *4-5.)

### C. <u>Plaintiff Alleges Facebook Obtained Plaintiff's Information by Wiretapping.</u>

Plaintiff contradicts his allegation that Defendant disclosed Plaintiff's PII to Facebook as he alleged Facebook obtained the information by wiretapping. Plaintiff alleges that Facebook wiretapped the communication between Defendant and Subclass Members pleading that Defendant violated California Invasion of Privacy Act ("CIPA") (Complaint, "Second Claim for Relief.) Defendant denies that it disclosed Plaintiff's video watching history by simply tracking the "referrer URL," which includes the video title. (Rule 12(b)(1) Motion, *3:16 – 26; Mazzucchelli Decl., ¶8.) However, assuming, *arguendo*, that the communication between Defendant and Plaintiff included the title of the video Plaintiff watched. The communication is between Defendant and Plaintiff only. In other words, Defendant did not disclose PII. Facebook wiretapped to obtain the video title, which Defendant did not track. Also, Facebook would have obtained the Facebook ID by reading the content of the c_user cookie. There was no disclosure by Defendant on its own. Plaintiff's statement that Defendant violated the VPPA rings hollow as his own allegations contract his conclusory statement.

### D. <u>Plaintiff Does Not Allege a Causal Connection Between Plaintiff's Harms and Defendant's Conduct.</u>

In addition to contradicting his conclusory statement that Defendant disclosed his PII and violated the VPPA, Plaintiff also fails to refute Defendant's contention that Plaintiff does not plead that his "injury is fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." (Rule 12(b)(1) Motion, *11: 10 – 12:17.) In the Ninth Circuit, PII "must include more information than that which, by itself, identifies an individual as having watched certain videos." (*Eichenberger v. ESPN, Inc.* (9th Cir. 2017) 876 F.3d 979, 984.) Undertaking the textual analysis of the VPPA and legislative intent and history, the *Eichenberger* court held that PII "means only that information that would 'readily

permit' an ordinary person to identify a specific individual's video-watching behavior." (Id.) A defendant does not disclose PII if a third party, such as Facebook, has to combine the two pieces of information, the Facebook ID and the video viewing history. (*In re Hulu Privacy Litig.*, (N.D.Cal. 2015) 86 F. Supp. 3d 1090, 1096.)

Here, Plaintiff pled that it is Facebook, which combines the Facebook ID and the video title as he pled that Facebook "read, attempted to read, and/or learned the contents or meaning of electronic communications between the Subclass members and Defendant." (Complaint, ¶39.) Other than installing the Facebook pixel, Plaintiff does not allege Defendant read, learned or transmitted Plaintiff's Facebook ID.

Plaintiff misstates his allegation in the Complaint that he alleged "Defendant transmitted to Facebook his FID **together** with the titles of the videos he requested or obtained. *Id.* ¶¶ 1, 7, 12." (Opposition, *1:19-21.) Plaintiff does not even use the word "together" in paragraphs 1, 7, 12 or anywhere in the Complaint. (See generally Compl.) Defendant can't transmit Facebook ID because it has no access to the c_user cookie. Plaintiff's Facebook ID (transmitted by Facebook pixel - by its exclusive access to the c-user cookie when Plaintiff logs into his Facebook) and the referrer URL (which does not disclose the title of the video watched by Plaintiff) are allegedly transmitted as two separate elements as Plaintiff pled each is collected separately. (See Compl., ¶¶ 9, 11, 12.) Therefore, Plaintiff cannot aver they are transmitted "together," as asserted by Plaintiff in the Opposition; and he never alleged that both were transmitted "together" in the Complaint.

In sum, Plaintiff alleges nothing more than a broad conclusory statement and formulaic recitation that that Defendant violated the VPPA. Accordingly, this Court should grant this Rule 12(b)(1) Motion to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction as Plaintiff contradicts his conclusory statement that Defendant disclosed PII in violation of the VPPA and he traces the disclosure of his PII to Facebook, not to Defendant.

## IV. <u>THIS COURT SHOULD GRANT DEFENDANT'S 12(b)(6) MOTION TO DISMISS THE VPPA CLAIM</u>

Analyzing Plaintiff's VPPA Claim under the standard of Rule 16(b)(6) should also lead this Court to dismiss the VPPA Claim for failing to state a claim for the VPPA violation. As

discussed above, Plaintiff fails to state that Defendant knowingly disclosed PII, which, by definition, must include: (1) the identity of a person and (2) his or her request or history of viewing of the video materials. (See 18 U.S.C. § 2710.)

**A. <u>Defendant Could Not Disclose Plaintiff's PII.</u>**

In spite of citation to several cases and a lengthy analysis based on the citations, Plaintiff himself contradicts that Defendant transmitted his PII. In the Opposition, Plaintiff analyzes the three elements of PII: "1) a consumer's identity; 2) the identity of 'specific video materials'; and 3) the fact that the person identified 'requested or obtained' that material." (Opposition, ¶¶11-14, citing *In re Hulu Privacy Litig.,* 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015). The allegations in the Complaint clearly render Plaintiff's analysis in favor of Defendant.

***a. Consumers' Identity.***

Plaintiff's allegation fails to demonstrate that Defendant transmits consumer's identity. First, Defendant does not have access to the content of the c_user cookie to have access to the user's Facebook ID. (*Solomon*, 136 F.4th at 45.) Plaintiff admits that it is the Facebook pixel that collects the user's Facebook ID by reading the c_user cookie. (Compl., ¶11.). Next, Plaintiff, in his own words, pled that it is the Facebook pixel itself that collects the Facebook ID and the video title "and sends that information to Facebook." (Compl., ¶¶3, 11, ); and Facebook uses the information **transmitted by the Facebook pixel.** (Compl., ¶9 [emphasis added].) Therefore, Plaintiff fails to allege that Defendant disclosed Plaintiff's PII or it even had access to Plaintiff's Facebook ID as the consumer's identity.

***b. Identity of the Videos***

Plaintiff, for the first time in this lawsuit, seems to assert a specific title of the video viewed was transmitted as a URL. Plaintiff contends that the title of the video "is plainly identifiable in a string of text at the end of the URL that reads 'signature-move-series-tim-hardaway-s-killer-crossover'," citing the paragraph 12 of the Complaint. However, Plaintiff did not use the term "URL" anywhere in the Complaint. To wit, Plaintiff never alleges that any URL was transmitted in the Complaint, and, other than just a conclusory statement, again, did not provide the specific URL for the title of the video of Tim Hardaway that was allegedly transmitted. Moreover, Plaintiff

did not allege he viewed said video. He made a general allegation that "**if a Website user** who is interested in basketball watches the SportsEdTV video entitled 'Signature Move Series—Tim Hardaway's Killer Crossover,' the Facebook pixel transmits that video title along with the user's Facebook ID to Facebook." (Compl., ¶12 [emphasis added].) Plaintiff does not identify any video he himself watched in the Complaint and the title of which could have been allegedly disclosed. He can not amend the Complaint by alleging in the Opposition that the URL with the video title was disclosed. Plaintiff's argument fails as he cannot add allegations that were absent in the Complaint in his Opposition.

***c. Requested or Obtained***

Plaintiff once again supports his argument by claiming to have alleged in the Complaint that "Defendant disclosed Plaintiff's FID together with the content name of the videos they requested. Compl. ¶ 3, 11, 12, 13, 30." (Opposition, *14.) Plaintiff did not. Plaintiff cannot amend its Complaint via the Opposition. Further, Plaintiff argues that "the connection between the user and the video must be clear, as the utility of the Facebook Pixel for its intended purpose—targeted advertising—depends on its ability to link the consumers' identity to the specific videos that they requested." (Id.) However, Plaintiff pled that the alleged "targeted advertising" was "to **potential** subscribers." (Compl., ¶10 [emphasis added].) Plaintiff is not a potential subscriber. He pled that he was already a subscriber (Compl., ¶7). Therefore, this factual element fails in relation to him.

In sum, the analysis of three factual elements of PII does not support that Defendant transmitted Plaintiff's PII, and this Court should grant the 12(b)(6) Motion.

**B. <u>Plaintiff Fails to Allege Defendant Knowingly Transmitted PII.</u>**

Plaintiff fails to allege that Defendant knowingly transmitted Plaintiff's PII. According to Plaintiff's allegations, the only conduct knowingly undertaken by Defendant is to install the Facebook. A violation of the VPPA occurs only when the defendant discloses PII knowingly. (18 U.S.C. § 2710(b)(1).) Under the VPPA, as asserted by Plaintiff, the "emphasis" of the knowledge element "is on disclosure[.]" (*In re Hulu Privacy Litig.* (N.D.Cal. Apr. 28, 2014, No. C 11-03764 LB) 2014 U.S.Dist.LEXIS 59479, at *47.) The court in *Hulu* opined that "knowingly" must be the equivalent of knowingly identifying a specific person as "having requested or obtained specific

video materials or services." (Id., 49.) More importantly, the court also affirmed that if Hulu did not know that it was transmitting both an identifier and the person's video watching information, then there is no violation of the VPPA. (Id.)

Plaintiff fails to allege that Defendant even knew the person with the specific Facebook ID requested a certain video. Defendant here does not have access to a user's Facebook ID in the c_user cookie. Further, according to the court in *Eichenberger*, Defendant could not have known that the Facebook ID allegedly disclosed identifies Plaintiff because Defendant does not have the data Facebook has to assimilate the Facebook ID with Plaintiff himself. (*Eichenberger*, 876 F.3d at 986.) Defendant could not have known it was disclosing Plaintiff's video viewing history, or his PII, because Defendant could not identify Plaintiff from his Facebook ID. Only Facebook can.

Plaintiff cites the opinion of the district court in the Eleventh Circuit in *Harris v. Pub. Broad. Serv*. (N.D.Ga. 2023) to contend that installing the pixel for the specific purpose of transmitting personal viewing information is sufficient to overcome the knowledge requirement. (*Harris v. Pub. Broad. Serv.* (N.D.Ga. 2023) 662 F. Supp. 3d 1327, 1337.) Plaintiff apparently did not find a decision in the Ninth Circuit. This Court is not required to follow *Harris* and Defendant respectfully submits that it should not. In fact, the *Harris* court left the door open to consider that "Defendant's intentionality will look different after discovery." (Id.)

In sum, Plaintiff fails to allege Defendant knowingly disclosed Plaintiff's PII – it does not know Plaintiff Facebook ID. Therefore, this Court should grant the Rule 12(b(6) Motion to dismiss Plaintiff's VPPA Claim without leave to amend as Plaintiff cannot amend the Complaint to state a valid VPPA Claim. Specifically, Plaintiff cannot change the technical nature of the c_user cookie to allege Defendant had access to Plaintiff's Facebook ID.

## IV. <u>THIS COURT SHOULD GRANT DEFENDANT'S 12(b)(6) Motion TO DISMISS THE CIPA CLAIM.</u>

This Court should grant the 12(b)(6) Motion to dismiss Plaintiff's CIPA Claim because Plaintiff fails to allege Defendant had knowledge of Facebook's unlawful purpose for wiretapping. In asserting a CIPA claim based on aiding and abetting a third party, Plaintiff must allege that Defendant had "knowledge of the unlawful purpose of the perpetrator." *Rodriguez v. Ford Motor*

*Co.* (S.D.Cal. 2024) 722 F. Supp. 3d 1104, 1124.)

As a preliminary matter, the only reason Defendant requests this Court apply the party exception rule is because " Plaintiff seems to allege that Defendant is liable for wiretapping as Defendant itself installed the Facebook pixel." (12(b)(6) Motion, *12:8-9.) Defendant's argument based on the party-exception rule is more akin to an afterthought to prevent Plaintiff from asserting Defendant itself wiretapped. As Plaintiff confirms that "Plaintiff's claim does not rest on the theory that Defendant eavesdropped on its own communications with Plaintiff, but rather Defendant enabled a third party, Facebook, to intercept and access Plaintiff's communications," Plaintiff should be precluded from asserting that argument later, if he survives the motions to dismiss, which he should not. (Opposition, *18:12-15.)

Plaintiff pled that the wrongful conduct by Facebook is its use of "the information transmitted by the Facebook pixel to deliver targeted ads to the user, thereby generating revenue for Facebook." (Compl., ¶9.) However, Plaintiff does not allege that Defendant at any time had a knowledge that Facebook allegedly made "an unlawful" use of the information transmitted by the Facebook pixel. The six allegations in the Opposition *19-20 simply list the allegations of wrongful conduct by Defendant, and not by Facebook. The allegations therefore do not help Plaintiff. Also, this Court should take judicial notice of the webpage of Defendant's Privacy Policy effective since six years ago to conclude that Plaintiff who is a subscriber knew or should have known that Defendant's Privacy Policy informs the user that Defendant may use Facebook to facilitate its service but Facebook is obligated not to disclose or use the information for any other purpose. (See REQUEST FOR JUDICIAL NOTICE, Exh. D.)

In sum, this Court should apply the ruling in *Rodriguez* and grant the 12(b)(6) Motion to dismiss Plaintiff CIPA claim without leave to amend because Plaintiff fails to allege that Defendant had a knowledge of Plaintiff's alleged wrongful use of the information received from the Facebook pixel.

**V. <u>BASED ON FORUM NON CONVENIENS DOCTRINE, THIS COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT.</u>**

The proper venue for this action is the Southern District of Florida. Plaintiff pled he is a

subscriber of the service of Defendant, which is a Florida corporation. As a subscriber, and by pleading he viewed unidentified videos from Defendant's website, this action is subject to the Governing Law provision in Defendant's Terms and Conditions. (RJN, Exh. C.)

In moving to dismiss based on forum non conveniens, the burden rests on the moving party to show: (1) that there is an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal." (*Dole Food Co., Inc. v. Watts* (9th Cir. 2002) 303 F.3d 1104, 1118.) This Court has a sound discretion to dismiss the Complaint based on forum non conveniens. (*Lueck v. Sundstrand Corp.* (9th Cir. 2001) 236 F.3d 1137, 1143.)

In applying the forum non conveniens doctrine, Plaintiff does not controvert that Florida is indeed a proper and adequate alternative forum. With Florida as the alternative forum, Plaintiff's arguments on the other factors are unavailing in opposing the instant motion to dismiss.

**A. <u>The Analysis of the Private Interests Factors Favors Dismissal.</u>**

**a. Factor 1: the relative ease of access to sources of proof**

All of Defendant's proof for defenses, including information on its Website servers and configuration of its websites and web servers or the previous log files, are located where Defendant's principal place of business is, namely in Miami, Florida. The backup tapes or hard drives of Plaintiff's web servers cannot be produced as documents. Defendant cannot simply ship any hardware that is in production. Therefore, this factor clearly favors Defendant.

**b. Factor 2: the availability of compulsory process for unwilling witness**

The availability of a video conferencing platform does not eliminate the subpoena process, requiring domestication of the subpoena, unnecessarily taxing the Florida court. Because this case is still not at issue and discovery has not started, Defendant does not specifically identify any unwilling witnesses at this time. Nevertheless, domestication of subpoenas and other procedural requirement for the compulsory process for unwilling witness in Florida, which would be inevitable, will unnecessarily tax the Florida court,  and that process will prolong the litigation.

**c. Factor 5: the ability to enforce any judgment eventually obtained**

It is not clear what Plaintiff means by Defendant is required to offer a comparative analysis. Whether Plaintiff decides to retain a counsel that specializes in collections or not, the collections

counsel must proceed in Florida to domesticate the judgment and proceed, for example, with a writ of execution. Defendant would have to start a new process in Florida court if an adverse decision is rendered in California court, which Defendant denies will occur.

**d. all other practical problems that make trial of a case easy, expeditious and inexpensive.**

Plaintiff ignores Defendant's contention that the burden and the costs for many of Defendant's employees, which would include its technical people who must travel to California for trial.

Therefore, in contrast to Plaintiff's arguments to otherwise, the private interest factors clearly favor dismissal.

**B. The Public Interest Factors Also Favor Dismissal.**

The public interest factors the courts have considered include: (1) court congestion; (2) the unfairness of burdening citizens in an unrelated forum with jury duty; (3) the interest in having localized controversies decided at home; (4) the interest in trying the case in a forum familiar with the applicable law; and (5) the interest in avoiding unnecessary conflicts of laws. (*Gulf Oil Corp. v. Gilbert* (1947) 330 U.S. 501, 508 - 509.) Offering a list with different factors, Plaintiff seems to focus on "local interest in seeking to protect the privacy rights of its citizens from an out-of-state corporation invading their privacy." (Opposition, *26:6-7.) However, Florida would have even stronger interest in protecting its citizen and business from an abusive, predatory lawsuit. In fact, a bipartisan Senate Bill 690 to curb such lawsuits has been introduced in California legislature, which demonstrates California itself has a strong interest in protecting the businesses from the CIPA claims.[2] The factors 4 and 5 both favor Defendant. Pursuant to the Terms and Conditions, this Court should rule that the laws of Florida apply to this action for Defendant's subscriber.

Plaintiff offers no evidence that the Northern District of California is more familiar with the VPPA Claim. Whether there are more technology companies headquartered in California is not relevant to resolving the issue of privacy in the VPPA Claim. Congress's purpose in enacting

[2] https://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=202520260SB690

the VPPA was simply "[t]o preserve personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials." (*Mollett v. Netflix, Inc.* (9th Cir. 2015) 795 F.3d 1062, 1065.) The laws of the Florida should be the governing law for privacy claims, whether or not there are more technology companies in Northern California.

In sum, this Court should dismiss this Complaint under forum non conveniens because: (1) there is an alternate forum in Florida; and (2) both the private and public interest factors weigh in favor of dismissal.

## VI. <u>IF NOT A DISMISSAL, THIS COURT SHOULD TRANSFER THIS CASE TO FLORIDA WHERE DEFENDANT IS LOCATED.</u>

If this Court is not inclined to dismiss the Complaint in its entirety based on Rule 12(b)(1) and (6) Motions and the motion brought under forum non conveniens, this Court should transfer this case to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a). Section 1404(a) allows a district court to "transfer any civil action to any other district or division where it might have been brought" if a transfer would promote "the convenience of parties and witnesses [and] the interest of justice." (*Stewart Org., Inc. v. Ricoh Corp.* (1988) 487 U.S. 22, 29 [internal quotation marks omitted].)

Plaintiff proposes an eight-factor test in *Jones v. GNC Franchising, Inc.* which are: "(1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). However, unlike this case, *Jones* involved a dispute over a franchise agreement, a contract dispute case. (*Jones*, at 496 ["A dispute over the agreement arose"].) Nevertheless, the factors under *Jones* also favor a transfer.

First, as with the Motion to Dismiss under forum non conveniens, Defendant satisfies the threshold issue that Florida is a proper venue. (*See* 28 U.S.C. § 1404(a); *see also Laguardia v.*

*Designer Brands, Inc.* (S.D. Cal. 2020) 2020 WL 2463385, *6.) Other factors also favor a transfer to Florida.

Next, Plaintiff's choice of forum should not be given much weight. Plaintiff's reliance on *Carijano v. Occidental Petroleum Corp.* in opposing the motion to transfer is misplaced as *Carijano* dealt with motion to dismiss under forum non conveniens. Instead, this Court should give little weight to Plaintiff's choice of forum as most of the operative facts in this case, an alleged disclosure of Plaintiff's PII by Defendant, took place in Florida where Defendant's principal place of business is. (*See FTC. v. Watson Pharmaceuticals, Inc.* (C.D. Cal. 2009) 611 F.Supp.2d 1081, 1089.)

In addition, as explained in the Motion to Dismiss under forum non conveniens, the *Jones* factors (2), (6), (7) and (8) all favor Defendant. The factor (1) does not apply. The factors (4) and (5) favor Defendant as Defendant merely operates a website on the Internet, and Plaintiff does not allege Defendant targeted California. Whereas, Plaintiff purposedly subscribed the service of Defendant, with its principal place of business in Florida, the contact which forms the basis of Plaintiff's claims. Furthermore, as Plaintiff agrees, if the relative court congestion is neutral (Opposition, *30:7), the other factors militate transferring this case to Florida. A court in Florida will be much more convenient for Defendant who is forced to defend this copycat Complaint for claims, including CIPA Claim, which even the State of California wants to minimize. Accordingly, if this Court is not inclined to dismiss this Complaint in its entirety based on the other motions to dismiss, then this Court should transfer this case to the Southern District where Defendant's business is located to minimize the costs it must expend to defend this action.

## VII. <u>CONCLUSION</u>

For the reasons Defendant set forth in its moving papers and this Reply brief, Defendant respectfully request that this Court dismiss the Complaint in its entirety, without leave to amend, on the ground that:

(1) Plaintiff does not allege he has Article III standing to confer a subject matter jurisdiction (Fed. R. Civ. P. 12(b)(1));

(2) Plaintiff fails to state the VPPA Claim and the CIPA Claim upon which relief can

be granted (Fed. R. Civ. P. 12(b)(6); and

(3) the forum non conveniens doctrine applies.

In the alternative, Defendant respectfully request this Court transfer this case to the Southern District of Florida.

Dated: August 29, 2025

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

By: /s/ Peter K. Chu
Peter K. Chu
Jura C. Zibas
Attorney for Defendant
SPORTSEDTV, INC.