UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICK BALESTRIERI,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>SPORTSEDTV, INC.,<br><br>　　　　　　Defendant. | Case No. 25-cv-04046-SK<br><br>**ORDER DENYING MOTION TO DISMISS AND MOTION TO TRANSFER**<br><br>Regarding Docket No. 11, 13 |

This matter comes before the Court upon consideration of two motions filed by SportsEdTV ("Defendant"). First, Defendant filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. No. 11.) Second, Defendant filed a motion to dismiss for *forum non conveniens*, or in the alternative, to transfer venue. (Dkt. No. 13.) This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367(a), and all parties have consented to the jurisdiction of a magistrate judge, (Dkt. Nos. 7, 15). Defendant also filed requests for judicial notice in support of its motions. (Dkt. Nos. 12, 14.) Having carefully considered the parties' papers, relevant legal authority, and the record in the case, and having had the benefit of oral argument, the Court hereby DENIES Defendant's motions for the reasons set forth below.

**BACKGROUND**

This case is one of many filed around the country seeking to hold companies liable for alleged violations of consumers' privacy arising from the use of the "Facebook Pixel" (also known as the "Meta Pixel")—"an invisible piece of JavaScript code that, when installed on a website, tracks the identity and behavior of the website's users and transmits that information to Facebook." (Dkt. No. 1, ¶ 9.) Facebook is a social media platform owned and operated by Meta Platforms, Inc. ("Meta"). (*See id.* at ¶ 1.)

Plaintiff Nick Balestrieri ("Plaintiff"), a California resident, brings this putative class action against Defendant, a Florida corporation with its principal place of business in Miami, Florida. (*Id.* at ¶¶ 1, 7-8.) Defendant operates a website that provides free instructional sports videos and related content to users worldwide. (*Id.* at ¶ 8.)

Plaintiff alleges that Defendant violated the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, and the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631, by knowingly disclosing his personally identifiable information ("PII") and video viewing history to Facebook through the Facebook Pixel. (Dkt. No. 1.) Plaintiff asserts that, when he watched videos on Defendant's website while logged into his Facebook account, the Facebook Pixel transmitted his Facebook ID and the titles of the videos he viewed to Facebook without his consent. (*Id.* at ¶¶ 7, 9-13.) He further alleges that Facebook used this information to deliver targeted advertising. (*Id.* at ¶ 9.) Plaintiff seeks to represent a nationwide class of similarly-situated subscribers of SportsEdTV whose PII was disclosed by Defendant, as well as a subclass of California residents. (*Id.* at ¶¶ 16-17.)

Plaintiff filed the Complaint on May 9, 2025. (Dkt. No. 1.) On July 11, 2025, Defendant moved to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. No. 11.) Defendant concurrently filed a motion to dismiss for *forum non conveniens*, or in the alternative, to transfer venue. (Dkt. No. 13.) Plaintiff filed an opposition on August 8, 2025, (Dkt. No. 21), and Defendant filed a reply on August 29, 2025, (Dkt. No. 22). The Court heard oral argument on September 15, 2025.

## ANALYSIS

**A.   Judicial Notice and Incorporation by Reference.**

Defendant requests the Court take judicial notice of seven exhibits, or, in the alternative, deem the exhibits incorporated by reference. (Dkt. Nos. 12, 14.) Exhibits A-D consist of screenshots from Defendant's webpages captured on July 9, 2025, depicting Defendant's "ABOUT" page, Terms and Conditions, Privacy Policy, and various webpages linking to those policies. (Dkt. No. 11-1 (Ex. A-D); Dkt. No. 13-1 (Ex. A-D).) Defendant's motions rely on these documents to argue that Plaintiff consented to the disclosure of his PII, to contend that Plaintiff agreed to a choice of law clause, and to provide background information regarding Defendant's

2

website. (Dkt. No. 11, pp. 8, 10; Dkt. No. 13, p. 8; Dkt. No. 22; pp. 2-3.) Exhibit E is a copy of the code used to insert Facebook Pixel on Defendant's website. (Dkt. No. 11-3 (Ex. E); Dkt. No. 13-3 (Ex. E).) Exhibits F and G are screenshots from Meta's developer resources explaining how Facebook Pixel functions. (Dkt. No. 11-2 (Ex. F-G); Dkt. No. 13-2 (Ex. F-G).) Defendant relies on Exhibits E-G to argue that, contrary to Plaintiffs' allegations, Defendant did not configure Facebook Pixel to track and transmit the video titles viewed by users. (Dkt. No. 11, p. 9.)

First, Defendant's exhibits are not properly subject to judicial notice. The Court may take judicial notice of a fact that is "not subject to reasonable dispute" because it is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Defendant argues that "a court may take judicial notice of 'publicly accessible websites' whose accuracy and authenticity are not subject to dispute." (Dkt. No. 12, p. 4 (misquoting *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010).) While it may be appropriate to take judicial notice of a website to show what the website communicated, it is not appropriate to take judicial notice of the contents of that website for their truth when those contents are in dispute. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth."); *Cappello v. Walmart Inc.*, No. 18-cv-06678-RS, 2019 WL 11687705, at *3 (N.D. Cal. Apr. 5, 2019) ("The simple act of posting something publicly on the Internet is insufficient assurance of an exhibit's accuracy.").

Defendant essentially requests the Court accept as facts that the webpages submitted are the ones Plaintiff viewed and that Defendant did not transmit the video titles viewed by users. Not only are those facts disputed, but they form the crux of the dispute underlying this case. (Dkt. No. 21, p. 5 ("Plaintiff disputes the authenticity of these documents and their technical implications.").); *see also Jackson v. Fandom, Inc.*, No. 22-cv-044234-JST, 2023 WL 4670285, at *2 (N.D. Cal. July 20, 2023) (denying the defendant's request for judicial notice because it was "unclear whether the webpages, Terms of Use, and Privacy Policy submitted" were the same versions the plaintiff viewed). Defendant cannot use requests for judicial to present its "own

3

version of the facts at the pleading stage." *See generally Khoja*, 899 F.3d at 998-99 (warning against the overuse of extrinsic documents at the pleadings stage).

Second, Defendant's exhibits are not incorporated by reference. "[I]ncorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Id.* at 1002. "The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Id.* "[A] defendant may seek to incorporate a document into the complaint 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'" *Id.* (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)). The "mere mention" of a document's existence, or the relevance of a document to a defense, are insufficient reasons to incorporate its contents by reference. *Id.*

As to Exhibits A-D—the screenshots of Defendant's webpages—Plaintiff does not refer to any of Defendant's webpages in his Complaint, does not mention Defendant's Terms and Conditions, and only mentions Defendant's Privacy Policy once. (Dkt. No. 1, ¶ 13.) "For 'extensively' to mean anything under *Ritchie*, it should, ordinarily at least, mean more than once." *Khoja*, 899 F.3d at 1003. These documents do not form the basis of Plaintiff's complaint. Instead, they are only relevant to Defendant's consent defense. *See id.* at 1002 ("[I]f the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint."); *see also Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1078 (N.D. Cal. 2023) (finding that the issue of whether plaintiffs actually consented is inappropriate at the pleadings stage); *Thornton v. Mindvalley, Inc.*, No. 24-CV-00593-EKL, 2025 WL 877714, at *3 (N.D. Cal. Feb. 14, 2025) (denying incorporation by reference of privacy policy, terms & conditions, and cookie policy that were submitted to establish consent defense).

As to Exhibits E-G—the Facebook Pixel code used by Defendant and the Meta developer screenshots—the Complaint does not include any part of the Facebook Pixel code or rely in any way on Meta's explanations of how Facebook Pixel functions. (Dkt. No. 1.) Defendant argues that "any documents discussing the nature, function, and capability of the Facebook pixel" are incorporated because the Complaint refers extensively to the Facebook Pixel. (Dkt. No. 12, pp. 4-

4

6.) Defendant's position appears to be that any complaint concerning software incorporates the software's underlying code and explanations of that code. That argument is contrary to law. *See generally Khoja*, 899 F.3d at 1002. Plaintiff's claims do not turn on the code or the Meta developer screenshots. Rather, Defendant submits these exhibits to create a defense. Defendant also faults Plaintiff for failing to include the Facebook Pixel code in his Complaint. However, Plaintiff is under no obligation to support his pleadings with evidence at this stage.

Defendant's requests for judicial notice and incorporation by reference are denied.

**B.     *Forum Non Conveniens* and Venue Transfer.**

Defendant asks the Court to dismiss the Complaint under the doctrine of *forum non conveniens*, or, in the alternative, to transfer this action to the Southern District of Florida, where Defendant resides. (Dkt. No. 13.) Both parties analyze the *forum non conveniens* and transfer factors separately in their briefing. (*Id.*; Dkt. No. 21.) However, the federal transfer statute, 28 U.S.C. § 1404(a), "displaces the common law doctrine of *forum non conveniens*" for transfers between federal district courts. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). Unlike *forum non conveniens*, section 1404(a) allows courts to transfer actions rather than having to dismiss them. *Wren v. RGIS Inventory Specialists*, No. C-06-5778 JCS, 2007 WL 295549, at *11 (N.D. Cal. Jan. 30, 2007) (citing *id.*). However, courts draw on *forum non conveniens* considerations when deciding whether a § 1404 transfer is appropriate. *Decker*, 805 F.2d at 843.

District courts have discretion to transfer any civil action to any other district or division where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). In considering a transfer motion, courts first determine whether venue is proper in the alternate district. *Jackson v. Tesla, Inc.*, 772 F. Supp. 3d 1111, 1118 (N.D. Cal. 2025). Then, the "defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker*, 805 F.2d at 843. Courts weigh private and public interest factors affecting the convenience of the forum. *Id.* Those factors include, but are not limited to: (1) the plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the

5

applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) relative court congestion and time to trial in each forum. *Id.*; *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1042 (S.D. Cal. 2023).

Here, the parties do not dispute that venue is proper in the Southern District of Florida. (Dkt. Nos. 13, 21.) Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). Here, there is only one Defendant, and its principal place of business is in the Southern District of Florida. (Dkt. No. 1, ¶ 8.). Accordingly, the Court moves on to consider the private and public interest factors.

### 1. Plaintiffs' Choice of Forum.

A plaintiff's choice of forum generally weighs against transfer. *See Decker*, 805 F.2d at 483. Courts afford more weight to plaintiff's choice if the plaintiff has chosen to file in his home forum, and less weight if there is evidence of forum shopping or the plaintiff represents a class spanning multiple states. *Greenley*, 684 F. Supp. 3d at 1042-43 (citations omitted). Here, Plaintiff filed in his home forum. (Dkt. No. 1, ¶ 7.) Some events occurred in this District, some events occurred in the Southern District of Florida, and some events occurred in cyberspace. The Court discerns no forum shopping. While Plaintiff represents a nationwide class, he also represents a subclass consisting of only California residents. (*Id.* at ¶¶ 16-17.) On balance, Plaintiff's choice is entitled to significant weight, only slightly reduced by Plaintiff's representation of a nationwide class.

### 2. Convenience of the Parties.

Defendant resides in Florida. (Dkt. No. 1, ¶ 8.) Plaintiff, Plaintiff's counsel, and Defendant's counsel are all located in California. (*Id.* at ¶ 7, Dkt. Nos. 13, 21.) Accordingly, the convenience of the parties factor is neutral.

### 3. Convenience of the Witnesses.

"In considering the convenience factor, courts should consider not only the number of witnesses located in the respective districts, but also the nature and quality of their testimony in

relationship to the issues in the case." *Greenley*, 684 F. Supp. 3d at 1043 (quotation marks and citations omitted). "[T]o show inconvenience to witnesses, the moving party should state the witnesses' identities, locations, and content and relevance of their testimony." *Id.* (citations omitted).

Defendant does not carry its burden to state the witnesses' "identities, locations, and content and relevance of their testimony." *See id.* (citations omitted). Instead, Defendant states only that it "would have to call more witnesses, including web developers, and would have more witnesses called by Plaintiff, compare to Plaintiff [sic]" and "[m]ost, if not all, of the witnesses are in Florida where Defendant's business is located." (Dkt. No. 14, p. 14.) Further, Plaintiff makes a similar showing that it intends to depose employees of Meta, which is headquartered in this District. (Dkt. No. 21, p. 25.) Moreover, advances in videoconferencing technology and the corresponding growth of remote depositions has rendered the location of witnesses less important in an analysis of a motion to transfer. *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998) ("[T]he location of the evidence and witnesses . . . is no longer weighed heavily given the modern advances in communication and transportation."); *Salebuild, Inc. v. Flexisales, Inc.*, 633 F. App'x 641, 643 (9th Cir. 2015) ("[I]n this age of robust video conferencing technology, one would expect relative travel costs to be a non-issue, regardless of the precise number of witnesses present in either locale.") (quoting *In re Herbert,* Nos. CIV. 13–00452 DKW, CIV. 13–00705 DKW, 2014 WL 1464837, at *6 (D. Haw. Apr. 14, 2014))); *Antaris Techs., Inc. v. Matthews*, No. 25-CV-04048-RS, 2025 WL 1939868, at *4 (N.D. Cal. July 15, 2025) ("In the digital age, access to evidence or even witnesses from a different state does not impose a large burden on the parties.").

As Defendant has not carried its burden to demonstrate witness inconvenience, this factor is neutral.

**4.     Ease of Access to Evidence.**

"Ease of access to evidence is generally not a predominate concern in evaluating whether to transfer venue because 'advances in technology have made it easy for documents to be transferred to different locations.'" *Byler v. Deluxe Corp.*, 222 F. Supp. 3d 885, 906 (S.D. Cal.

7

2016) (quoting *Metz v. U.S. Life Ins. Co. in City of New York*, 674 F.Supp.2d 1141, 1148 (C.D. Cal. 2009)). Access to evidence may still be relevant where the evidence cannot be moved or requires site inspection. That is not the case where, as here, the evidence is electronic. Defendant's argument that "the backup tapes or hard drives of Plaintiff's [sic] web servers cannot be produced as documents" is unavailing. (Dkt. No. 22, p. 13.) Defendant has not explained why backup tapes and hard drives will be relevant to this litigation, and the Court cannot glean any need for this evidence. *See Ickes v. AMC Networks Inc.*, No. 23-CV-00803-SI, 2023 WL 4297577, at *5 (N.D. Cal. June 30, 2023) (noting that most evidence would be electronically available in analogous Facebook Pixel case); *Carroll v. La-Z Boy Inc.*, No. 22-CV-08961-JSW, 2023 WL 2699984, at *2 (N.D. Cal. Mar. 29, 2023) (same). The access to evidence factor is neutral.

### 5. Familiarity of Each Forum with Applicable Law.

Plaintiff alleges violations of federal and California law. (Dkt. No. 1.) Both the Northern District of California and the Southern District of Florida are equally familiar with federal law. The Southern District of Florida is competent to apply California law. However, California district courts are naturally more familiar with California law than district courts in other states. *See Greenley*, 684 F. Supp. 3d at 1043. Accordingly, this District is most familiar with the law at issue.

Defendant relies on its Terms and Conditions specifying Florida choice of law to argue that Florida courts are more familiar with the applicable law. (Dkt. No. 15, p. 14; *see also* Dkt. No. 13-1 (Ex. C) p. 26 ("These Terms shall be governed and construed in accordance with the laws of Florida, United States, without regard to its conflict of law provisions.") As discussed above, the Court has denied judicial notice or incorporation by reference of Defendant's Terms and Conditions. Further, even if Florida law applies to the construction of Defendant's Terms and Conditions, Plaintiff's claims do not arise out of Defendant's Terms and Conditions. Rather, Plaintiff's claims arise out of federal and California statutes. Accordingly, this factor weighs against transfer.

/ / /

### 6. Feasibility of Consolidation of Other Claims.

This factor considers whether judicial economy will be served by transferring a case to a forum where related cases are pending. *See Greenley*, 684 F. Supp. 3d at 1045. The parties have not identified any related cases pending in either this District or the Southern District of Florida. (Dkt. Nos. 13, 21, 22.) Therefore, this factor is neutral.

### 7. Local Interest in the Controversy.

The consideration of local interest takes into account both the "local interest in having localized controversies decided at home" and the "unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981) (internal quotations omitted). Generally, "districts all over the country are interested" in "a nation-wide putative class-action." *Huntsman v. Sw. Airlines Co.*, No. 19-CV-00083-PJH, 2019 WL 3254212, at *5 (N.D. Cal. July 19, 2019). However, California has a particularly high interest in enforcing its consumer privacy law. *See Greenley*, 684 F. Supp. 3d at 1044-45 (explaining that California has a demonstrated interest in privacy stemming from the California Constitution's guarantee of privacy rights and the "breadth and depth" of California's privacy statutes). On the other hand, the Southern District of Florida has an interest in adjudicating disputes involving a business headquartered within its jurisdiction. *See Walters v. Famous Transports, Inc.*, 488 F. Supp. 3d 930, 941 (N.D. Cal. 2020) ("[T]here is in fact a local interest in of [sic] citizens in deciding matters pertaining to businesses that are headquartered in the state."). On balance, the Court concludes that this factor is neutral.

### 8. Relative Court Congestion.

Both parties argue that this factor is neutral. (Dkt. No. 13, p. 15; Dkt. No. 21, p. 30.) Considering the Court's own docket, the Court finds that it can adjudicate this matter expediently and efficiently. *See Huntsman*, 2019 WL 3254212, at *5. This factor weighs against transfer.

### 9. Balancing.

Plaintiff's choice of forum, the Court's familiarity with California law, and the Court's ability to adjudicate this matter expediently disfavor transfer. All other factors are neutral. Accordingly, the Court DENIES Defendant's motion to dismiss or transfer this action.

9

### C. Standing.

Defendant moves to dismiss Plaintiff's VPPA claim under Federal Rule of Civil Procedure 12(b)(1) on the grounds that Plaintiff lacks standing under Article III of the U.S. Constitution to bring his VPPA claim. (Dkt. No. 11, pp. 13-18.) To establish Article III standing, Plaintiff must show three elements: (1) an injury-in-fact via "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) causation—the injury must be "fairly . . . trace[able] to the challenged action of the defendant"; and (3) redressability—meaning that it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (quotation marks and citations omitted). Defendant argues that Plaintiff has not satisfied the first two elements of injury or causation. (Dkt. No. 11, pp. 13-18.)

#### 1. Injury.

Defendant argues that Plaintiff has not suffered a "concrete" injury. (Dkt. No. 11, pp. 13-18.) A concrete injury is "real, and not abstract." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citation omitted). Concrete harms include "traditional tangible harms, such as physical harms and monetary harms." *Id.* at 425. Intangible injuries may be concrete if they have a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," such as "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.*

Disclosure of private information that would be "highly offensive to a reasonable person" bears a close relationship to traditional common law privacy torts. *See id.*; *Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 993, 996 (9th Cir. 2023) (citing Restatement (Second) of Torts § 652B (intrusion upon seclusion)); *see also id.* § 652D ("One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.").

In 2017, the Ninth Circuit held that "the VPPA identifies a *substantive* right to privacy that suffers *any time* a video service provider discloses otherwise private information." *Eichenberger*

10

*v. ESPN, Inc.*, 876 F.3d 979, 983-84 (9th Cir. 2017).  The court reasoned that the VPPA "protects generally a consumer's substantive privacy interest in his or her video-viewing history" such that "*every* disclosure of an individual's 'personally identifiable information' and video-viewing history offends the interests that the statute protects." *Id.* at 983.  There, the plaintiff alleged that a streaming service violated the VPPA by disclosing the plaintiff's device serial number and the identity of the videos he watched.  *Id.* at 981.  The court rejected the defendant's argument that the plaintiff lacked Article III standing, but dismissed the plaintiff's VPPA claim on the merits on the grounds that the plaintiff's device number did not constitute PII.  *Id.* at 982, 985-86.

In 2021, the Supreme Court decided *TransUnion*, clarifying that legislative "creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III . . . ." 594 U.S. at 426.  *TransUnion* thus rejected the idea that violation of a privacy statute is per se an injury-in-fact.  *Id.*  In *TransUnion*, the Court addressed circumstances where a defendant's violation of the Fair Credit Reporting Act did not inflict concrete harm on the plaintiff: the plaintiffs' credit files contained misleading alerts, but no injury occurred because those alerts were never disseminated.  *Id.* at 433-39.

Unlike the Fair Credit Reporting Act, it is not possible to establish a violation of the VPPA without causing actual harm to the plaintiff's privacy interests.  By its terms, *every* violation of the VPPA requires the disclosure of a consumer's personally identifiable information and video-viewing history.  *See Eichenberger*, 876 F.3d at 984 ("[E]very 18 U.S.C. § 2710(b)(1) violation presents the precise harm and infringes the same privacy interests Congress sought to protect by enacting the VPPA." (quotation marks and citation omitted, cleaned up))  And *every* disclosure of video-viewing history is analogous to the common law tort of public disclosure of private facts—a "highly offensive" disclosure of no "legitimate concern to the public."  Restatement (Second) of Torts § 652D.  To understand why disclosure of video-viewing history is so offensive, one need only look back to the enactment of the VPPA.  The VPPA was enacted in response to the publication of a list of 146 films rented by then-Supreme Court nominee Robert Bork's and his family from a video store.  *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citing S.

11

1   Rep. No. 100–599, at 5 (1988)). Members of the Judiciary Committee "denounced the
2   disclosure," calling it "outrageous" and lamenting that movies "are a window into our loves, likes
3   and dislikes" and reflect "the most intimate occurrences of the home." <u>Personal Privacy with
4   Respect to Videotapes, Audiovisual Materials, and Library Materials or Services: Hearings on S.
5   2361 before the Senate</u>, 134 Cong. S16312-01 (1988). That Defendant does not challenge
6   Plaintiff's standing to bring his CIPA claim—premised on the same disclosure of video viewing
7   information—underscores the obvious point that disclosure of video viewing information is a
8   concrete injury.

9         It follows that the Ninth Circuit has declined to revisit *Eichenberger* in the wake
10  of *TransUnion*. In *Popa v. Microsoft Corp.*, __F.4th__, 2025 WL 2448824 (9th Cir. Aug. 26,
11  2025), the court held that an alleged violation of Pennsylvania's wiretapping law did not give rise
12  to a concrete injury because the information collected did not reveal private information. *Id.* at *5.
13  The court distinguished *Eichenberger* because it "accounted for the individual circumstances
14  giving rise to the plaintiffs' alleged injuries rather than simply greenlighting a per se rule for
15  privacy statutes." *Id.* at *8. While the court acknowledged that "we might analyze [the VPPA]
16  differently today, especially after the Supreme Court's decision in *TransUnion*," it did not
17  explicitly or implicitly overturn *Eichenberger*. *Id.* The Ninth Circuit and its district courts have
18  continued to cite *Eichenberger* with approval following *TransUnion*. *E.g., Jones v. Ford Motor
19  Co.*, 85 F.4th 570, 574 (9th Cir. 2023) (per curiam); *Morgan v. Twitter, Inc.*, No. 23-3764, 2025
20  WL 1248821, at *2 (9th Cir. Apr. 30, 2025); *Edwards v. MUBI, Inc.*, 773 F. Supp. 3d 868, 877
21  (N.D. Cal. 2025); *Cantu v. Tapestry, Inc.*, No. 22-CV-1974-BAS-DDL, 2023 WL 4440662, at *4
22  (S.D. Cal. July 10, 2023). Further, other federal courts of appeals considering the issue post-
23  *TransUnion* have concluded that disclosure of video-viewing history constitutes a concrete injury.
24  *Pileggi v. Washington Newspaper Pub'g Co., LLC*, 146 F.4th 1219, 1227 (D.C. Cir. 2025) (citing
25  *Eichenberger*); *Salazar v. Paramount Glob.*, 133 F.4th 642, 647 (6th Cir. 2025) (same); *Salazar v.
26  Nat'l Basketball Ass'n*, 118 F.4th 533, 544 (2d Cir. 2024) (same). All three of these cases
27  considered disclosures of video-viewing history through the Facebook Pixel.
28        In sum, the requirement of concrete injury for Article III standing is satisfied when a

consumer alleges that his video viewing history has been impermissibly disclosed in violation of the VPPA.  *See Eichenberger*, 876 F.3d at 983-84; *see also Edwards*, 773 F. Supp. 3d at 877 (finding concrete injury where the plaintiffs alleged that the defendant "discloses users' ["PII"] to Meta via the Meta Tracking Pixel in violation of the VPPA.").  Here, Plaintiff alleges that "Defendant knowingly installed the Facebook pixel on [its] Website," the Facebook pixel collected users "Facebook ID" and "the title of each video the user watches," and the Facebook pixel "transmit[ed] that information to Facebook."  (Dkt. No. 1, ¶¶ 9-13.)  Thus, Plaintiff has alleged that his data was impermissibly disclosed in violation of the VPPA.  *See Eichenberger*, 876 F.3d at 983-84.  These allegations are sufficient to demonstrate a concrete injury.

Defendant also faults Plaintiff for not alleging exactly when the violations occurred or which video titles were disclosed.  (Dkt. No. 11, p. 14.)  Defendant cites no cases supporting such a particular pleading requirement, and the weight of authority demonstrates that such specific pleading is not required.  *E.g., Edwards*, 773 F. Supp. 3d at 877; *Cantu*, 2023 WL 4440662, at *4.

Next, Defendant argues that Plaintiff has not alleged a "particularized" injury because his PII was not *actually* disclosed.  (Dkt. No. 11, pp. 15-16.)  The Court will not consider these arguments as part of Defendant's Rule 12(b)(1) motion because they attack the merits of Plaintiff's VPPA claim, not his standing to sue.  *See Cantu*, 2023 WL 4440662, at *7 n.5.  Moreover, in advancing this argument, Defendant relies on exhibits that the Court has declined to judicially notice or incorporate by reference, as discussed above.

Plaintiff has alleged a concrete injury.

**2.    Fairly Traceable.**

"[P]laintiffs must show that the injury is causally linked . . . to the [defendant's] alleged misconduct, and not the result of misconduct of some third party not before the court."  *Wash. Env't Couns. v. Bellon*, 732 F.3d 1131, 1141 (9th Cir. 2013).  Defendant argues that Plaintiff has not sufficiently connected Defendant's conduct with harm, and that another actor, Meta, is the actor who caused Plaintiff's harm.  (Dkt. No. 11, pp. 17-18.)  These arguments are unavailing.  This case does not involve an attenuated causal chain.  The harm—disclosure of Plaintiff's PII— would not have occurred but for Defendant's alleged use of the Facebook Pixel.  Meta could not

13

have accessed this information if Defendant had not shared the information with it. Plaintiff has sufficiently alleged a privacy injury fairly traceable to Defendant's actions. *See also Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 911 n.9 (S.D. Cal. 2020) ("Courts have consistently found, with little or no discussion, that concrete injuries based on violations of privacy-related statutes are also . . . fairly traceable . . . .").

Plaintiff has alleged causation, and given that there is a concrete injury, Defendant's arguments about standing are not persuasive.

### D.    Failure to State a Claim.

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. On a motion to dismiss under Rule 12(b)(6), the Court construes the allegations in the complaint in the light most favorable to the non-moving party and takes as true all material allegations in the complaint. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986) (per curiam).

Even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted, cleaned up). Rather, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *id.* at 556-57).

#### 1.    VPPA

To state a claim for unlawful disclosure under the VPPA, "a plaintiff must allege that (1) a defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any customer' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by section 2710(b)(2)." *Mollett*, 795 F.3d at 1066.

14

Defendant argues that Plaintiff failed to plead the second and third elements. (Dkt. No. 11, pp. 19-20.)

### i. Personally Identifiable Information.

"'[P]ersonally identifiable information' means only that information that would 'readily permit an ordinary person to identify a specific individual's video-watching behavior.'" *Eichenberger*, 876 F.3d at 985 (quoting *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 267 (3d Cir. 2016)). PII includes information that "standing alone, identifies a person" as well as information that is "capable of" identifying a person. *Id.* at 984.

Plaintiff alleges that Defendant transmitted his Facebook ID "by reading a cookie on the user's computer labeled 'c_user,'" with which "any ordinary person can look up the user's Facebook profile and name." (Dkt. No. 1, ¶¶ 3, 11.) Defendant argues that an ordinary person would not be able to discern Plaintiff's Facebook ID from the c_user cookie. (Dkt. No. 11, p. 19.) The Second Circuit adopted this reasoning to dismiss a VPPA claim based on Facebook Pixel technology. *Solomon v. Flipps Media, Inc.*, 136 F. 4th 41, 54-55 (2d Cir. 2025). There, the plaintiff's complaint included "exemplar screenshots" depicting the 29 lines of code transmitted from defendant to Facebook via Facebook Pixel. *Id.* at 54. The court found it implausible that an ordinary person would discern the plaintiff's Facebook ID from this code. *Id.* Further, the court found it implausible that an ordinary person would know how to use a Facebook ID to access a person's Facebook profile, comparing a Facebook ID to the device code found insufficient in *Eichenberger*. *Id.* at 54-55.

However, *Solomon* is neither on point nor controlling. First, while the *Solomon* complaint included information about the code used to transmit the Facebook ID, Plaintiff's complaint contains no such detail, and the Court has rejected Defendant's effort to introduce the Facebook Pixel code, as discussed above. Plaintiff alleges that the Facebook Pixel "collects the user's Facebook ID . . . and sends that information to Facebook." (Dkt. No. 1, ¶ 3.) At this early stage, the Court must treat these non-conclusory factual allegations in the Complaint as true. *See Sanders*, 794 F.2d at 481.

Second, *Solomon* is contrary to the weight of authority in this Circuit. "Most, if not all,

courts to address the question have found at the pleading stage that Facebook IDs are PII." *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023) (collecting cases); *see also Garcia v. Bandai Namco Ent. Am. Inc.*, No. 8:25-CV-00967-DOC-PVC, 2025 WL 2451033, at *8 (C.D. Cal. Aug. 7, 2025) (declining to follow *Solomon*); *see also Eichenberg*, 876 F.3d at 986 ("[a] Facebook link... may very well readily enable an 'ordinary person' to identify an individual."). Whether an ordinary person can identify the Facebook ID from the Pixel code or use that Facebook ID to access a Facebook profile are questions of fact best reserved for a jury, or at the very least, summary judgment. *See Garcia*, 2025 WL 2451033, at *8 ("Considering how code is the primary communication medium for data sharing technologies and a growing proportion of the public has the technological fluency to discern information from lines of code, particularly with the advent of artificial intelligence tools, the Court finds it plausible that an ordinary person could identify Plaintiff based on the information shared by Defendant's Facebook Pixel technology.").

Some courts have held that Facebook IDs are plausibly PII only if the plaintiff also alleges their Facebook page included information that could be used to readily identify them and/or is publicly accessible. *See Ghanaat*, 689 F.Supp.3d at 720 (dismissing VPPA claim with leave to amend "because [plaintiffs] d[id] not allege their Facebook pages contain[ed] any personal information, such as their names or email addresses."); *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 857-58 (C.D. Cal. 2024) ("Plaintiffs fail to allege their PII was disclosed because they do not identify what information on their Facebook pages, if any, was viewable and could be used to identify them."). Other courts have declined to adopt "that granular a test" and have found sufficient allegations that "'[a]nyone who possesses an [Facebook ID] may use this number to quickly and easily locate, access, and view the corresponding Facebook profile,' which in turn can reveal a user's name or other personal information." *Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 853 (N.D. Cal. 2022).

Here, Plaintiff does not allege that his Facebook profile contains identifying information and is publicly accessible. Instead, he alleges that "With [the Facebook ID], any ordinary person can look up the user's Facebook profile and name." (Dkt. No. 1, ¶ 11.) The Court find that

16

1  Plaintiff's allegations here are sufficient to establish that his Facebook ID is plausibly PII under

2  *Twombly*. Additional details supporting the designation of Facebook IDs as PII are not required at

3  this stage.

4        Defendant also faults Plaintiff for not alleging that his video-viewing history and Facebook

5  ID were disclosed "together." (Dkt. No. 22, p. 8.) The Court declines to impose a "magic words"

6  requirement. Moreover, Plaintiff's allegations suggest the video-viewing history and Facebook ID

7  were disclosed together. (Dkt. No. 1, ¶ 12 ("the Facebook pixel transmits that video *title along*

8  *with* the user's Facebook ID to Facebook.").)

9        In sum, Plaintiff alleges that an ordinary person could use his Facebook ID to determine

10 his identity, and Defendant's arguments to the contrary rely on evidence not before the Court on

11 this motion to dismiss. The Court therefore finds that Plaintiff has sufficiently alleged that the

12 information disclosed was PII.

### ii.  Knowledge.

14       The VPPA prohibits only a "knowing" disclosure. 18 U.S.C. § 2710(b)(1). Allegations

15 that a defendant knew the Facebook Pixel would transmit Facebook IDs and video viewing history

16 but chose to install it anyway satisfy the knowledge element at the pleading stage. *Ghanaat*, 689

17 F. Supp. 3d at 721 ("[A]llegations that defendant knowingly used the Pixel, [sic] provided FIDs

18 and URLs to Meta sufficiently alleges a knowing disclosure."); *Fan v. NBA Props. Inc.*, No. 23-

19 CV-05069-SI, 2024 WL 1297643, at *2 (N.D. Cal. Mar. 26, 2024) (finding sufficient allegations

20 that "defendants chose to install the Meta Tracking Pixel on the nbatopshot.com website to

21 enhance their 'advertising campaigns,' decided which 'events' to have recorded and transmitted,

22 and 'knowingly disclosed Plaintiff and Class members' PII because they used that data to build

23 audiences on Meta and retarget Plaintiff and Class members for Defendants' advertising

24 campaigns.'"). Plaintiff alleges that "Defendant "knowingly installed the Facebook pixel on the

25 Website" and "knowingly caused the Facebook IDs of Plaintiff and the Class to be disclosed to

26 Facebook." (Dkt. No. 1, ¶¶ 10, 30.) These allegations are sufficient to establish the "knowing"

27 disclosure element.

28       Defendant argues that it "would not have known it was disclosing" Plaintiff's PII because

it cannot identify Plaintiff's Facebook ID from the c_user cookie and "[o]nly Facebook" can identify Plaintiff from his Facebook ID.  (Dkt. No. 11, p. 20.)  This argument is derivative of Defendant's contention that Facebook IDs are not PII, which is a factual dispute not suitable for resolution on a motion to dismiss.  Defendant relies on *In re Hulu Priv. Litig.* ("*Hulu*"), No. C 11–03764 LB, 2014 WL 1724344, (N.D. Cal. Apr. 28, 2014), a summary judgment case, for the proposition that defendant must have known "that it was transmitting both an identifier and the person's video watching information."  (Dkt. No. 11, p. 10 (citing *id.* at *15.).)  However, *Hulu* actually rejected the argument Defendant makes here about its ability to understand the information transmitted, explaining, "Hulu may not have been able to read Facebook's cookies, but if it knew what they contained and knew that it was transmitting PII—that is, information that 'identifies a person as having requested or obtained specific video materials or services,' 18 U.S.C. § 2710(a)(3)—then Hulu is liable under the VPPA." *Hulu*, 2014 WL 1724344, at *15.

Defendant's motion to dismiss Plaintiff's VPPA claim is DENIED.

**2.    CIPA.**

CIPA "broadly prohibits the interception of wire communications and disclosure of the contents of such intercepted communications."  *Tavernetti v. Sup. Ct. of San Diego Cnty.*, 583 P.2d 737, 739 (Cal. 1978).  Section 631(a) of CIPA creates four avenues for relief:

> (1) where a person "by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection . . . with any telegraph or telephone wire, line, cable, or instrument";
>
> (2) where a person "willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit";
>
> (3) where a person "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained"; and
>
> (4) where a person "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above."

Cal. Penal Code § 631(a).  Plaintiff invokes the fourth avenue of relief, alleging that Defendant "aided, agreed with, employed, permitted, or otherwise enabled Facebook to wiretap the Subclass members using the Facebook pixel."  (Dkt. No. 1, ¶ 40.)  Defendant argues that Plaintiff's claim

18

1  fails because Plaintiff did not "allege facts to demonstrate that Defendant had 'knowledge of the
2  unlawful purpose of the perpetrator.'" (Dkt. No. 11, p. 20 (quoting *Rodriguez v. Ford Motor Co.*,
3  722 F. Supp. 3d 1104, 1124 (S.D. Cal. 2024))).

4      Although the language of section 631(a)(4) does not explicitly include an intent
5  requirement, courts have generally interpreted the statute to require "both knowledge of the
6  conduct that will violate the statute and a purpose of aiding, agreeing with, or employing the third
7  party to commit those acts." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942 (N.D. Cal.
8  2024). Allegations that a defendant intended to collect and disclose information are sufficient to
9  plead intent. *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024) (finding sufficient
10 allegations of intent where the plaintiffs alleged that "Defendant intentionally utilized tracking
11 technologies to collect, use, and distribute Plaintiffs' sensitive information to third parties like
12 Facebook" and "intentionally configured the Pixels to capture" the plaintiffs' information); *Doe v.
13 Tenet Healthcare Corp.*, No. 1:23-CV-01106-DC-CKD, 2025 WL 1635956, at *15 (E.D. Cal.
14 June 9, 2025) (finding sufficient allegations of intent where the plaintiffs alleged "that Defendants
15 chose to install Meta Pixel on their Web Properties and by installing Meta Pixel, Defendants
16 assisted Meta with intercepting the PHI and PII of Defendants' patients without their
17 authorization."). Here, Plaintiff alleges that Defendant "knowingly installed the Facebook pixel
18 on the Website" and "knowingly caused the Facebook IDs of Plaintiff and the Class to be
19 disclosed to Facebook." (Dkt. No. 1, ¶¶ 10, 30.) Accordingly, Plaintiff has sufficiently pled
20 intent.

21     Defendant's reliance on *Rodriguez* is misplaced. There, the plaintiff failed to allege that
22 the eavesdropper (LivePerson) actually engaged in behavior that constitutes wiretapping because
23 "Plaintiff does not allege that Defendant knew that LivePerson was using the chat data beyond
24 storing it for Defendant or that LivePerson was distributing the chat data to Meta." 722 F. Supp.
25 3d at 1124. Here, in contrast, Plaintiff did allege "that Facebook uses the information transmitted
26 by the Facebook pixel to deliver targeted ads to the user, thereby generating revenue for
27 Facebook." Defendant also relies on its Privacy Policy to argue that Plaintiff consented to
28 disclosure, (Dkt. No. 22, p. 12), which the Court will not consider at this stage.

Defendant's motion to dismiss Plaintiff's CIPA claim is DENIED.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss for *forum non conveniens* or transfer venue is DENIED, and Defendant's motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) is DENIED.

**IT IS SO ORDERED**.

Dated: September 16, 2025



_____
SALLIE KIM
United States Magistrate Judge

20