United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NICK BALESTRIERI,
Plaintiff,
v.
SPORTSEDTV, INC.,
Defendant.

Case No. 25-cv-04046-SK

**ORDER GRANTING MOTION FOR CLASS CERTIFICATION AND GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Regarding Docket No. 45

This matter comes before the Court upon consideration of the unopposed motion for preliminary approval of a class action settlement filed by Plaintiff Nick Balestrieri ("Plaintiff"). (Dkt. No. 45.) This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367(a). Plaintiff and Defendant SportsEdTV, Inc. ("Defendant") (collectively, the "Parties") consented to magistrate judge jurisdiction. (Dkt. Nos. 7, 15.) The parties negotiated the settlement before formal class certification.[1] Upon careful consideration of the motion for preliminary approval, relevant legal authority, case record, and oral argument, the Court GRANTS Plaintiff's motion for the reasons set forth below.

## I. BACKGROUND

### A. Factual Allegations

On May 9, 2025, Plaintiff, a California resident, commenced this putative class action, alleging that Defendant violated the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, and the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631. (Dkt. No. 1,

[1] Settlements negotiated before formal class certification are subject to a "higher level of scrutiny." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

United States District Court
Northern District of California

Complaint ¶¶ 25–43.) Plaintiff alleges that Defendant knowingly disclosed his and putative class members' personally identifiable information ("PII") and video-viewing history to third party Meta Platforms, Inc. ("Facebook[2]") through the Facebook Pixel. (*Id.* ¶ 2.) Facebook Pixel is "an invisible piece of JavaScript code that, when installed on a website, tracks the identity and behavior of the website's users and transmits that information to Facebook." (*Id.* ¶ 9.) Plaintiff asserts that, when he watched videos on Defendant's website SportsEdTV.com while logged into his Facebook account, the Facebook Pixel transmitted his Facebook ID and the titles of the videos he viewed to Facebook without his consent. (*Id.* ¶¶ 7, 9–13.) He further alleges that Facebook used this information to deliver targeted advertising. (*Id.* ¶ 9.)

Plaintiff seeks to represent a nationwide class of similarly situated subscribers of SportsEdTV whose PII was allegedly disclosed by Defendant, as well as a subclass of California residents. (*Id.* ¶¶ 16–17.) Since Plaintiff commenced this action, the parties have fully briefed a motion to dismiss and a motion to transfer. (Dkt. Nos. 11, 13, 21, 22.) Following the Court's denial of both motions, (Dkt. No. 27), the parties conducted informal discovery, which "enabl[ed] Plaintiff to fairly evaluate the strengths and weaknesses of his claim." (Dkt. No. 45-1 at 22.)[3]

On February 16, 2026, the parties engaged in private mediation, which resulted in the settlement agreement before the Court in the instant motion. (*Id.* at 8.) On April 1, 2026, Plaintiff filed the instant motion for preliminary approval of a class action settlement. (Dkt. No. 45.) As noted above, the parties negotiated the settlement before formal class certification. The Court heard oral argument on May 11, 2026.

**B. Settlement Agreement**

In March 2026, the parties entered into a class action settlement agreement ("Settlement Agreement" or "SA"). (Dkt. No. 45-2, Declaration of Edward J. Wynne ("Wynne Decl."), Exhibit 1.) The key terms are as follows:

<u>Settlement Class</u>: The settlement class is defined as the following: Defendant's 1,264 subscribers who reside in the United States whom Defendant has identified through its records as

[2] Facebook is a social media platform owned and operated by Meta Platforms, Inc. (*See* Dkt. No. 1 at ¶ 1.)

[3] Pinpoint citations are to the ECF-generated page numbers.

having watched videos on Defendant's Website during the period of May 9, 2023 to May 16, 2025. (SA § 1.31.) Defendant has represented that of the 1,264 Class Members, 265 are California residents. (Dkt. No. 45-2, Wynne Decl., ¶ 22.)

Settlement Class Representative: The Settlement Class Representative is defined as the Plaintiff. (Dkt. No. 45-1 at 10; Dkt. No. 45-2, Wynne Decl., Exhibit C § 2.)

Settlement Class Member: A Settlement Class Member is defined as any person who falls within the definition of the Settlement Class who has not submitted a valid request for exclusion. (SA § 1.32.)

Settlement Class Counsel: The Settlement Class Counsel is defined as Edward J. Wynne of the Wynne Law Firm and James F. Clapp of Clapp Legal APC. (SA § 6.1.)

Class Period: The Class Period is defined as: the time period between May 9, 2023 and May 16, 2025. (SA § 1.31.)

Settlement Fund: The Settlement Fund is defined as the non-reversionary cash fund that shall be established by or on behalf of Defendant in the total amount of five hundred thousand dollars ($500,000.00 USD) to be deposited into the Escrow Account according to the schedule set forth herein, plus all interest earned thereon. (SA § 1.33.)

Net Settlement Fund: The Net Settlement Fund is defined as the amount of money in the Settlement Fund after deductions for the Settlement Administration Expenses, the Incentive Award to the Class Representative, and the Fee and Cost Award to Class Counsel. (SA § 1.34.) The Net Settlement Fund is estimated to be approximately $349,800 after deductions for Attorneys' Fees and Costs, the Incentive Award, and the Settlement Administration Expenses, all of which are subject to Court approval. (SA § 1.34.)

Service Award(s): The Service Award is defined as the incentive/service award for the Settlement Class Representative as approved by the Court. (SA §§ 1.17, 7.3.)

Attorneys' Fees and Expenses Award: The Attorneys' Fees and Expenses Award is defined as funds that may be awarded by the Court to Settlement Class Counsel to compensate Settlement Class Counsel for its fees, costs, and expenses in connection with this action and the Settlement. Funds are made from the Settlement Fund and should the Court award less than the amount sought by Class Counsel, the difference in the amount sought and the amount ultimately

awarded shall remain in the Settlement Fund for distribution to eligible Settlement Class Members. (SA § 7.1.)

Settlement Administrator and Settlement Administrator Fee: The proposed Settlement Administrator is Simpluris. (SA § 1.30.) Simpluris has a capped fee of $15,200. (Dkt. No. 45-2, Wynne Decl., ¶ 27.)

Settlement Administration Expenses: Settlement Administration Expenses are defined as: expenses incurred by the Settlement Administrator in providing Notice, processing claims, responding to inquiries from members of the Settlement Class, mailing checks for Approved Claims, and related services. The Settlement Administration Expenses shall be paid out of the Settlement Fund. (SA § 1.29.)

Notice Date: The Notice Date is defined as the date upon which the Class Notice is first disseminated, which shall be no later than thirty (30) days after the Preliminary Approval Order is issued. (SA § 1.19.)

Release of Claims: The Release of Claims is defined as the following: Class Members will release Defendant from claims arising out of the facts alleged in the complaint for violations of VPPA and CIPA based on Defendant's alleged disclosure to third parties of information, which may be deemed PII, including, without limitation, such information which identifies a person as having requested or obtained specific video materials or services, allegedly without permission. (SA § 1.26.)

Settlement Benefits: Payments to Class Members who submit Claim Forms will be divided on a pro rata basis. (SA § 2.1(b)-(c).) California Class Members are entitled to twice the pro rata share due to the additional claim under California law. (*Id.*)

To the extent within 90 days after the date of issuance of payment any checks issued to a Settlement Class Member are not cashed or there remain residual funds from failed electronic payments, such uncashed check funds and residual funds from failed electronic payments shall be redistributed on a pro rata basis to all Settlement Class Members who cashed checks during the initial distribution and who received their electronic payments, but only to the extent each Settlement Class Member would receive at least $10.00 in any such secondary distribution and if otherwise feasible. (SA § 2.1(e).)

To the extent each Settlement Class Member would receive less than $10.00 in any such secondary distribution or if a secondary distribution would be otherwise infeasible (as determined by the Settlement Administrator or by mutual agreement of the Parties), any uncashed check funds shall, subject to Court approval, be paid to a cy pres beneficiary mutually selected by the Parties and approved by the Court. (*Id.*)

Further, Defendant has deactivated the Facebook Pixel on its website so that no user information, whether PII or not, is transmitted to Facebook. (SA § 2.2.) Additionally, Defendant will not knowingly share information which identifies a person as having requested or obtained specific video materials or services with third parties, except as permitted by the VPPA. (*Id.*) Defendant will remain bound by the obligations of § 2.2 of the Settlement Agreement unless and until the VPPA is amended, repealed, or otherwise invalidated (including by judicial decision on the use of website pixel technology by the United States Supreme Court or any federal court of appeals). Furthermore, solely with respect to customers who provide California addresses to Defendant, Defendant will remain bound by the obligations in this § 2.2 of the Settlement Agreement unless and until Cal. Civ. Code § 1799.3 and/or CIPA are amended, repealed, or otherwise invalidated (including by judicial decision on the use of website pixel technology by the California Supreme Court or the U.S. Supreme Court). (SA § 2.2.)

<u>Opt-Out Procedure</u>: To exercise the right to be excluded, a person in the Settlement Class must timely send a written request for exclusion to the Settlement Administrator as specified in the Notice, providing their name and address, their signature, the name and number of the case, and a statement that they wish to be excluded from the Settlement Class for purposes of this Settlement. (SA § 4.5) To be valid, a request for exclusion must be postmarked or received by the date specified in the Notice, which is 45 days after the Notice Date or such other date ordered by the Court. (*Id.*; § 1.20)

## II. ANALYSIS

### A. Class Certification

#### 1. Legal Standard

The plaintiff bears the burden of showing by a preponderance of the evidence that class certification is appropriate under Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v.*

*Dukes*, 564 U.S. 338, 350–51 (2011). Class certification is a two-step process. First, a plaintiff must establish that each of the four requirements of Rule 23(a) is met: numerosity, commonality, typicality, and adequacy of representation. *See id.* at 349. Second, a plaintiff must establish that at least one of the bases for certification under Rule 23(b) is met. Where, as here, a plaintiff seeks to certify a class under Rule 23(b)(3), it must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"The criteria for class certification are applied differently in litigation classes and settlement classes." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019). When deciding whether to certify a litigation class, a district court must consider manageability at trial. *Id.* However, this concern is not present when certifying a settlement class. *Id.* at 556–57. In deciding whether to certify a settlement class, a district court "must give heightened attention to the definition of the class or subclasses." *Id.* at 557.

**2. Rule 23(a) Certification**

The Court finds that all the requirements of Rule 23(a) are met for the Proposed Settlement Class:

- **Numerosity.** Joinder of the 1,264 estimated Settlement Class Members would be impracticable. The Settlement Class Members are sufficiently numerous for certification.
- **Commonality.** Common questions of law and fact derive from Plaintiff's allegations that Defendant disclosed his and other Class Members' PII through the Meta pixel and by making this information available to third parties without consent. (*See* Dkt. No. 45-1 at 13.)
- **Typicality.** Plaintiff's claims are both factually and legally similar to those of the putative Settlement Class because like Plaintiff, all Settlement Class Members were subscribers of Defendant who viewed videos on Defendant's website while logged into their Facebook accounts, allegedly had their personal identifiers and video-viewing

information disclosed in the same manner and as part of the same alleged practice. (Dkt. No. 45-1 at 14.) Furthermore, Plaintiff seeks the same remedies as the Settlement Class Members. (*Id.*)

- **Adequacy of Representation.** The Court is unaware of any actual conflicts of interest in this matter, and no evidence in the record suggests that either Plaintiff or Proposed Class Counsel have a conflict with other Settlement Class Members. (Dkt. No. 45-2, Wynne Decl., ¶ 29.) Proposed Class Counsel is also highly experienced in class actions. (*See id.*, ¶¶ 3–12; Dkt. No. 45-3, Declaration of James F. Clapp ("Clapp Decl."), ¶¶ 2–4.) For these reasons, the Court finds that proposed Class Counsel and Plaintiff has prosecuted this action vigorously on behalf of the putative Settlement Class to date and will continue to do so.

**3. Rule 23(b)(3)**

The Court also finds that the predominance and superiority requirements of Rule 23(b)(3) are met for the Proposed Settlement Class:

- **Predominance.** The Court concludes that common questions predominate here because each claim arises from a core set of uniform factual allegations applicable to all Class Members and because the key issues in this case are amenable to resolution on a class-wide basis. In addition, the common question of whether Defendant, by means of the Facebook Pixel, collected Plaintiff's and the Settlement Class Members' PII and disclosed said information to third parties, including Meta, without their consent, thereby violating the VPPA and/or CIPA, predominates over any individual questions.
- **Superiority.** A class action in this case enables the most efficient use of the Court's and attorneys' resources and reduces costs to the Class Members by allocating costs among them. Further, this forum is appropriate because one of the two claims has been brought under California law on behalf of California residents. Lastly, "manageability is not a relevant consideration in the settlement approval context." *Kishore v. Times Internet* (Uk) Ltd., No. 23-CV-03594-HSG, 2026 WL 1097749, at *4 (N.D. Cal. Apr. 22, 2026).

/ / /

**4. Class Representative and Class Counsel**

Because the Court finds that Plaintiff meets the commonality, typicality, and adequacy requirements of Rule 23(a), the Court GRANTS the motion for class certification for the following class: Defendant's 1,264 subscribers who reside in the United States whom Defendant has identified through its records as having watched videos on Defendant's Website during the period of May 9, 2023 to May 16, 2025.

The Court also APPOINTS Plaintiff Nick Balestrieri as Settlement Class Representative. When a court certifies a class, it must also appoint class counsel. Fed. R. Civ. P. 23(c)(1)(B). Counsel have investigated and litigated this case since its inception and have submitted declarations detailing their expertise in representing plaintiffs in class actions, including data privacy class actions. (*See* Dkt. No. 45-2, Wynne Decl., ¶¶ 3–12; Dkt. No. 45-3, Clapp Decl., ¶¶ 2–4.) *See* Fed. R. Civ. P. 23(g)(1)(A) (listing factors courts must consider when appointing class counsel). Accordingly, the Court appoints Edward J. Wynne of the Wynne Law Firm and James F. Clapp of Clapp Legal APC as Class Counsel.

**B. Preliminary Approval of Class Action Settlement**

Because the Court finds that class certification is appropriate, the Court next considers whether it should preliminarily approve the parties' class action settlement.

**1. Legal Standard**

Federal Rule of Civil Procedure 23(e) governs preliminary approval of class action settlements. Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled ... only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

Where, as here, the parties reach a class action settlement prior to class certification, district courts apply "a higher standard of fairness and a more probing inquiry than may normally

be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (quotations omitted). Such settlement agreements "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). A more "exacting review is warranted to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Roes*, 944 F.3d at 1049 (quotations omitted).

Courts may preliminarily approve a settlement and notice plan to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies. *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018) (citation omitted). Courts lack the authority, however, to "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (quotation and citation omitted).

**2. Analysis**

The instant settlement appears fair, non-collusive, non-preferential, within the range of possible final approval, and does not contain any obvious deficiencies. The settlement was a product of arm's length negotiation before a mediator and does not appear to benefit those who participated in the mediation at the expense of any other parties. In light of the minimal monetary recovery that would be realistically recoverable by individual Settlement Class Members and the immediate benefits offered to the Class, preliminary approval of the Settlement Agreement is warranted.

**a. Evidence of Conflicts and Signs of Collusion**

The first factor the Court considers is whether there is evidence of collusion or other conflicts of interest. *See Roes*, 944 F.3d at 1049. The Ninth Circuit has directed district courts to

look for "subtle signs of collusion," which include whether counsel will receive a disproportionate distribution of the settlement, whether the parties negotiate a " 'clear sailing' arrangement (i.e., an arrangement where defendant will not object to a certain fee request by class counsel)," and whether the parties agree to a reverter that returns unclaimed funds to the defendant. *Id.*

Here, Class Counsel is requesting 25% of the Settlement Fund—the Ninth Circuit's benchmark. (SA § 7.1); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). The Settlement Agreement, therefore, does not provide that Class Counsel should "receive a disproportionate distribution of the settlement." *See Roes*, 944 F.3d at 1049. Second, the Settlement Agreement does not include a clear sailing arrangement. Finally, any unawarded fees do not revert to Defendant, but instead go back to the Class. (SA § 7.1.) At the final approval stage, the Court will independently assess the reasonableness of Plaintiff's fee request, evaluating Plaintiff's billing records, the benefits obtained for the class, and the risks of further litigation. *See Hanlon*, 150 F.3d at 1029.

**b. Preferential Treatment**

The Court next considers whether the Settlement Agreement provides preferential treatment to any Class Members. The Ninth Circuit has instructed that district courts must be "particularly vigilant" for signs that counsel have allowed the "self-interests" of "certain class members to infect negotiations." *In re Bluetooth Headset*, 654 F.3d at 947. Under Rule 23(e), the Settlement Agreement must "treat class members equitably relative to each other." Fed. R. Civ. P. 23. For that reason, courts in this district have consistently stated that preliminary approval of a class action settlement is inappropriate where the proposed agreement "improperly grant[s] preferential treatment to class representatives." *Lenovo*, 2018 WL 6099948, at *8 (quotations omitted).

The Court concludes that the Settlement Agreement satisfies this standard for purposes of preliminary approval. The Settlement Agreement authorizes Class Counsel to apply for a Class Representative Incentive Award of $10,000. (SA § 7.3.) The Court will ultimately determine whether the Class Representative is entitled to such an award and the reasonableness of the amount requested. Incentive awards "are intended to compensate class representatives for work

done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Plaintiffs must provide sufficient evidence to allow the Court to evaluate this award "individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, ... [and] the amount of time and effort the plaintiff expended in pursuing the litigation.' " *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (quotation omitted).

At the final fairness hearing, the Court will consider the evidence presented and evaluate the reasonableness of any incentive award request. Since the proposed incentive award here is not per se unreasonable, the Court finds that this factor weighs in favor of preliminary approval. *See Rodriguez*, 563 F.3d at 958 (finding that "[i]ncentive awards are fairly typical in class action cases" and "are discretionary" (emphasis omitted)); *Reed v. 1-800 Contacts, Inc.*, 2014 WL 29011, at *10 (awarding $10,000 in incentive award to named plaintiff in CIPA class action).

**c. Settlement Within Range of Possible Approval**

The third factor the Court considers is whether the settlement is within the range of possible approval. To evaluate whether the settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Lenovo*, 2018 WL 6099948, at *8 (quotation omitted). "it is well-settled law that a proposed settlement may be acceptable even though it amounts only to a fraction of the potential recovery that might be available to class members at trial." *Foster v. Adams and Associates, Inc.*, No. 18-cv-02723-JSC, 2021 WL 4924849, at *6 (N.D. Cal. Oct. 21, 2021). This requires the Court to evaluate the strength of Plaintiffs' claims.

Defendant's total exposure to the non-California Class Members is $3,497,000, and its exposure to the California Class Members is $1,325,000. (Dkt. No. 45-1 at 21.) The Net Settlement amount is estimated to be approximately $349,800. (*Id.*) Under the terms of the Settlement Agreement, every California Class Member would receive $457.55, and every non-California Class Member would receive $228.77, assuming 100% participation rate amongst the Class. Non-California Class Members have access to a monetary pool of approximately

United States District Court
Northern District of California

$228,548.19 while the California Class Members have access to a $121,251.79 monetary pool. (Dkt. No. 45-2, Wynne Decl., ¶ 22.) The proposed monetary relief is in line with approved settlements in data privacy class actions within this District. *See In re Google Referrer Header Priv. Litig.*, No. 10-CV-04809-EJD, 2023 WL 6812545, at *2 (N.D. Cal. Oct. 16, 2023) (granting final approval of class action settlement where each participating class member would yield an average recovery of approximately $7.16 per class member)

Moreover, the Settlement Agreement provides non-monetary relief. Defendant has deactivated the Facebook Pixel on its website so that no user information, whether PII or not, is transmitted to Facebook. (SA § 2.2.) Additionally, Defendant will not knowingly share information which identifies a person as having requested or obtained specific video materials or services with third parties, except as permitted by the VPPA. (*Id.*) Importantly, Plaintiff also argues that the risk in continued litigation is extremely high and the Class Members could ultimately end up with nothing if litigation moves forward. (Dkt. No. 45-1 at 20.) Given these risks and the fact that the settlement amount is on par with other data privacy class action settlements, the Court finds that the settlement amount is within the range of possible approval.

**d. Obvious Deficiencies**

Lastly, the Court considers whether there are obvious deficiencies in the Settlement Agreement. Because the Court finds no obvious deficiencies, this factor weighs in favor of preliminary approval.

* * *

In sum, having weighed the relevant factors, the Court preliminarily finds that the Settlement Agreement is fair, reasonable, and adequate. Accordingly, the Court GRANTS preliminary approval. The Court DIRECTS the parties to include both a joint proposed order and a joint proposed judgment when submitting their motion for final approval. The proposed order should thoroughly address all of the topics set forth in the Northern District's Procedural Guidance for Class Action Settlements.[4]

[4] *See* Procedural Guidance for Class Action Settlements, https://cand.uscourts.gov/rules-forms-fees/northern-district-guidelines/procedural-guidance-class-action-settlements (updated Sept. 5, 2024).

## III. PROPOSED CLASS NOTICE PLAN

For Rule 23(b)(3) class actions, "the court must direct to the class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Individual notice must be sent to all class members "whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). District courts have "broad power and discretion vested in them by [Rule 23]" in determining the contours of appropriate class notice. See *Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979). With respect to the notice's content, the notice must clearly and concisely state in plain language:

(if) the nature of the action;

(ii) the definition of the class certified;

(iii) the class claims, issues, or defenses;

(iv) that a class member may enter an appearance through an attorney if the member so desires;

(v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members[.]

Fed. R. Civ. P. 23(c)(2)(B).

Here, the Parties have agreed, subject to Court approval, to have the Settlement Administrator Simpluris (1) email notice to all Class Members, and (2) if the email address bounces back and no new email address can be determined, mail the Notice to the Class Member after updating the address through the U.S. Postal Service's National Change of Address database. (SA § 4.1(b), (d).) Class Members will receive reminder Notices both thirty days prior to the Claims Deadline and seven days prior to the Claims Deadline. (SA § 4.1(c).) In addition, the Settlement Administrator will establish an interactive website where Class Members can (1) obtain the Notice and other important documents about the case; and (2) submit their Claim Form. (SA § 4.1(e).)

The Proposed Notice, however, does not "make clear that the court can only approve or deny the settlement and cannot change the terms of the settlement" as required under the Northern

District's Procedural Guidance for Class Action Settlements. Guidance § 5. Furthermore, to better enable class members to review the anticipated motion for attorneys' fees and the motion for a Class Representative Incentive Award, Class Counsel shall include language in the notice: (1) indicating the deadline for filing the attorneys' fees motion and request for Plaintiff's award; and (2) informing class members how to access the motion and supporting materials. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993–94 (9th Cir. 2010) (holding that under Rule 23(h), class members must be given a full and fair opportunity to examine and object to attorneys' fees motion).

The Court concludes that with these changes, the proposed notice provides the best notice practicable under the circumstances and fully complies with due process and Federal Rule of Civil Procedure 23.

## IV. CONCLUSION

The Court GRANTS the motion for class certification for the following class: Defendant's 1,264 subscribers who reside in the United States whom Defendant has identified through its records as having watched videos on Defendant's Website during the period of May 9, 2023 to May 16, 2025.

The Court APPOINTS Plaintiff Nick Balestrieri as Settlement Class Representative. The Court APPOINTS Edward J. Wynne of the Wynne Law Firm and James F. Clapp of Clapp Legal APC as Class Counsel.

The Court GRANTS Plaintiff's motion for preliminary approval of class action settlement. The parties' Settlement Agreement satisfies the higher level of scrutiny applied to negotiated settlements before formal class certification. The Court APPOINTS Simpluris as the Settlement Administrator and directs it to comply with the terms of the Settlement Agreement.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

United States District Court
Northern District of California

| **Event** | **Deadline** |
|---|---|
| Funding Deadline | 10 business days after Court's entry of Preliminary Approval Order |
| Defendant to provide Settlement Class list to Settlement Administrator and Class Counsel for Notice dissemination | 14 days after Court's entry of Preliminary Approval Order |
| Settlement Website Activated | 14 days after Court's entry of Preliminary Approval Order |
| Defendant to provide Notice on a website administered by Settlement Administrator | 14 days after Court's entry of Preliminary Approval Order |
| Notice Date | 30 days after Court's entry of Preliminary Approval Order |
| First Reminder | 30 days before Claims Deadline |
| Second Reminder | 7 days before Claims Deadline |
| Claims Deadline | 45 days after Notice |
| Motion for Attorneys' Fees, Costs, and Service Award | 35 days before the Objection / Exclusion Deadline |
| Opposition to Motion for Attorneys' Fees, Costs, and Service Award | No more than 30 days after the Motion for Attorneys' Fees deadline |
| Objection/Exclusion Deadline | 60 days after Notice[5] |
| Reply in Support of Motion for Attorneys' Fees, Costs, and Service Award | 14 days after the Opposition to Motion for Attorneys' Fees deadline |
| Deadline to Cure Deficiency in Claim Form | 21 days after Notice of Deficiency |
| Production of Claim Forms and Objections/Exclusions to Counsel for Defendant and Plaintiff | 30 days after Deadline to submit Claim Form and Objection/Exclusion Deadline |
| Motion for Final Approval | 14 days prior to hearing on Motion for Final Approval |
| Final Approval Hearing | February 8, 2027 at 9:30 a.m. via Public Zoom Webinar. |
| Funding Date | 30 days after Court's entry of Final Approval Order |
| Effective Date | 1 business day after order granting final approval becomes final |
| Payment of Class Counsel Fees and Costs | 5 days after Effective Date |
| Payment of Incentive Award | 5 days after Effective Date |
| Payment to Class | 15 days after Effective Date |
| Stale Date for Settlement Checks | 90 days after issuance of settlement checks |

/ / /

/ / /

[5] The Court orders a 60-day time frame to opt out after the notice date. A 45-day time frame to opt out after the notice is mailed is insufficient. *See Livingston v. MiTAC Digital Corp.*, No. 18-CV-05993-JST, 2019 WL 8504695, at *6 (N.D. Cal. Dec. 4, 2019) (gathering cases).

United States District Court
Northern District of California

The parties are further DIRECTED to implement the proposed class notice plan and procedure described above. The parties are ORDERED to file either (1) a joint status report notifying the Court of its progress in selecting a cy pres beneficiary, or (2) a Notice of Proposed Cy Pres Recipient within 60 days of the entry of this Order. The parties are also DIRECTED to submit a stipulation and proposed order tracking the schedule above, filled in with actual dates, within two weeks of the entry of this Order.

**IT IS SO ORDERED**.

Dated: June 26, 2026

SALLIE KIM
United States Magistrate Judge